**20-3855**

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

---

DEBBIE-ANN BROMFIELD-THOMPSON,

Plaintiff-Appellant,

v.

AMERICAN UNIVERSITY OF THE CARIBBEAN,

MANIPAL EDUCATION AMERICAS, LLC,

NATIONAL BOARD OF MEDICAL EXAMINERS

Defendants-Appellees.

---

On Appeal from the United States District Court
for the Southern District of New York

---

Brief of Debbie-Ann Bromfield-Thompson

Debbie-Ann Bromfield-Thompson, pro se
1405 Kennedy Street, N.W.
Washington, D.C. 20011
Telephone: 202-538-7338

Pro se Appellant obtained substantial assistance from an attorney in preparing this brief.

## TABLE OF CONTENTS

Pages

Table of Contents……………………………………………….2

Table of Authorities……………………………………………3

Statement of Subject Matter and Appellate Jurisdiction…..6

Statement of the Issues Presented for Review…………….9

Statement of the Case…………………………………..10

Statement of the Facts……………………………………13

Summary of the Arguments………………………………..25

Argument………………………………………………26

Conclusion……………………………………………..40

Certificate of Compliance……………………………….41

Certificate of Service……………………………………42

# Table of Authorities

*Brandon Cleveland and Isiah Jackson v. Caplaw Enterprises,* 448 F.3d 518 (2d Cir. 2006)...........................27

*Branum v. Clark,* 927 F.2d 698, 705 (2d Cir. 1991)...............27

*Burda Media, Inc. v.Viertel,* 417 F.3d 292, 298 (2d Cir. 2005)...............................................................26

*City of Chicago v. Matchmaker Real Estate Sales Ctr., Inc.,* 982 F.2d 1086, 1097-98 (7th Cir. 1982)..............................33

*Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 Led 2d 80 (1957)...................................................................27

*Dickerson v. Napolitano,* 604 F.3d 732, 740 (2d Cir. 2010)......26

*Gramercy Equities v. Dumont,* 72 N.Y. 2d 560, 534 N.Y.S. 2d 908, 911 531 N.E. 629 (1988)...........................................34

*Herbert Construction Company v. Continental Ins. Co.,* 931 F.2d 989 (2d Cir. 1991)..............................................36

*Highland Capital Mgmt., LP v. Schneider,* 607 F.3d 322, 327 (2d Cir. 2010)...............................................................32

*Irish Lesbian&Gay Org. v. Giuliani,* 143 F.3d 638, 644 (2d Cir. 1988)...............................................................29

*Itel Containers Intl. Corp., et al. v. Atlantrafix Express Ltd, et al.,* 909 F.2d (2d Cir. 1990)..................................................37

*Lynch v. City of New York,* 589 F.3d 94, 99 (2d Cir. 2009).........26

*Meilleur v. Strong,* 682 F.3d 56, 61 (2d Cir. 2012)..................26

*Paetz v. SHB Commodities, Inc.,* 115 F.3d 1082,
1088 (2d Cir. 1997)...................................................32

*SCS Communications, Inc. v. Hemick Co.,* 360 F. 3d 329
342 (2d Cir. 2004).....................................................35

*Sheppard v. Beeman,* 187 F.3d 147, 150 (2d Cir. 1994)............27

*Whitney v. City Bank, N.A.,* 782 F. 29 1106
1115-16 (2d Cir. 1986).................................................35

*Zappata v.City of New York,* 502 F.3d 192,197 (2d Cir. 2007)......26

*Ian Hernandez v. Chef Diet Delivery, LLC 81 AD 3d 596, 915
N.Y.S. 2d (2011)........................................................38*

## STATUTES

Section 504 of the Rehabilitation Act of 1973...........................7

29 U.S.C. Sections 701 and 794........................................7

29 U.S.C. Section 705 of the American With Disabilities Act
of 1990.................................................................7

42 U.S.C. Sections 12111, 12201-12204 and 12210.................7

28 U.S.C. Section 1291..................................................8

28 U.S.C. Section 1331..................................................8

# RULES

FRCP Rule 12(b)(5)……………………………………………………7

FRCP Rule 12(b)(6)……………………………………………………7

NYCPLR 311……………………………………………………………7

## STATEMENT OF SUBJECT MATTER
## AND APPELLATE JURISDICTION

Appellant brought suit against American University of Antigua (AUA) and Manipal Education Americas, LLC  seeking redress for unlawful discrimination on the basis of disability under the Rehabilitation Act and the American With Disabilities Act  in the United States District Court for the Southern District of New York.  American University of Antigua (AUA) is an offshore medical school located and incorporated  on the Island of Antigua, but maintains an office at 1 Battery Plaza, 33rd Floor, 33rd Floor, New York, New York 10004, which purpose is to serve as a central location to organize clinical rotations for students whom have completed their first 2 years of education on the Island of Antigua.  Manipal Education Americas, LLC acts as an agent of AUA, and also maintains an office at 1 Battery Plaza, 33rd Floor, New York, New York, 10004.

Appellant was never a student in Antigua because she had completed her first two years of course work at a different offshore medical school

prior to transferring to AUA in the Fall of 2010. Upon transferring to AUA, Appellant completed her first clinical rotation in New York City in 2010 under the direct supervision of AUA.

Although Appellant is a resident of Washington, D.C., she has had hundreds of contact with AUA and MEA's New York City office over the course of 6 years as reflected in emails and telephone calls with administrators located at the address at 1 Battery Plaza, New York, New York 10004. That office scheduled all of Appellant's clinical rotations and exams (except for a few rotations that Appellant scheduled on her own). At the time of Appellant's termination from the school she was 3 credit hours shy of graduation and obtaining her MD. She had attained a 3.65 GPA out of the maximum 4.0.

Appellant's Complaint was predicated on Section 504 of the Rehabilitation Act of 1973; Section 29 U.S.C., Sections 701 and 794, et seq; 29 U.S.C. Section 705(201); and the American With Disabilities Act of 1990, 42 U.S.C. 12111, et seq and 42 U.S.C. Sections 12201-12204 and 12210.

The district court dismissed Appellant's claims against AUA pursuant to FRCP Rule12(b)(5) (insufficient service of process) and entered a

dismissal against MEA, LLC pursuant to FRCP Rule 12(b)(6) (failure to state a claim upon which relief may be granted).

This appeal is from a final order as the district court has dismissed Appellant's claims without prejudice. Because the statute of limitations on Appellant's dismissed claims has expired, they cannot be timely refiled. Therefore, the district court's order is final as to the dismissed claims. The district court declined to rule on defendant's dismissal on grounds of *forum non conveniens* and jurisdictional claims.

The district court's jurisdiction was also predicated on 28 U.S.C. Section 1331, et seq., because a "substantial part of the events or omissions giving rise to the claim" occurred from AUA/MEA, LLC's office in New York City.

Judge Jessee Furman issued his Opinion and Order and Judgment on October 13th, 2020. Appellant noted her appeal on November 12th, 2020.

This court has jurisdiction pursuant to 28 U.S.C. Section 1291.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1.     The trial Court abused its discretion by dismissing Appellant's claims against American University of Antigua ("AUA") for insufficient service of process.

2.     The trial Court committed plain error by failing to properly consider and evaluate documentary evidence in the form of photographs taken on the day of service and showing that MEA held itself out as an agent of AUA, and therefore, service was proper.

3.     Whether under legal principal/agency principles AUA is estopped from contesting service.

4.     The trial court plainly erred in prematurely dismissing MEA, LLC from the lawsuit on the ground of failure to state a claim given that AUA and MEA, LLC may have been engaged in a "joint venture" with respect to the operation of the medical school. AUA  also presented documents showing an "independent contractor" relationship with AUA.

## STATEMENT OF THE CASE

On June 27th, 2019 Appellant filed a Complaint against American

University of Antigua and its agent Manipal Education Americas, LLC and

the National Board of Medical Examiners, alleging discrimination under the

Rehabilitation and the American With Disabilities Acts in the United States

District Court for the Southern District of New York.  American University of

Antigua, Inc., is a corporation organized under the laws of Antigua and

Barbuda, a foreign country located in the Caribbean ("AUA").  Manipal

Education Americas, LLC, is a New York Limited Liability Company

("MEA").  (App. at 72).The Complaint also alleged various New York state

tort, contract, and disability discrimination claims which were dismissed and

not germane to this appeal.

Judge Jessee M. Furman presided over the case.  On October 4th,

2019 Appellant served both AUA and MEA,LLC which service was

accepted by Anita O'Brien in the legal department of both entities.  (App. at

65).  On  November 11th, 2019 NBME filed a motion to dismiss on

jurisdictional grounds.  On November 13th, 2019  the Court ordered

Appellant to file an amended complaint by December 23, 2019 to cure any deficiencies identified in NBME's complaint. The court noted that "Plaintiff will not be given any further opportunity to amend the complaint to address issues raised by the motion to dismiss." (App. at 6)

On November 18th, 2019, the Court gave AUA/MEA, LLC and NBME an opportunity to file a consolidated response, and instructed "If Plaintiff believes that the pleading of additional facts will cure deficiencies identified in either NBME's motion to dismiss or American University and Manipal's motion to dismiss, or both, then Plaintiff should include those facts in an amended complaint to be filed by January 13th, 2020. Plaintiff will not be given any further opportunity to amend the complaint to address issues raised by either motion." (App. at 7).

On December 4th, 2020 AUA/Manipal Education Americas, LLC filed its Motion to Dismiss and Memorandum of Law In Support thereto. On January 14th, 2020 Bromfield-Thompson filed her First Amended Complaint. On February 4th, 2020 both NBME and AUA/MEA, LLC filed separate motions to dismiss the First Amended Complaint. On March 5th, 2020 Bromfield-Thompson filed her Opposition.

On October 13th, 2020 Judge Furman issued an Order and

Judgment as follows: (1) dismissing all claims against AUA without prejudice for insufficiency of service; dismissing all claims against NBME for lack of personal jurisdiction; and dismissing all claims against MEA for failure to state a claim. The Court declined to sua sponte grant Bromfield-Thompson leave to amend, noting that Bromfield-Thompson had not sought leave to amend nor "did she suggest that she possesses additional facts that could cure the defects in her dismissed complaint." Furthermore, the Court stated that he had warned that no further opportunity would be given "to amend the complaint to address issue(s) raised by the motion(s) to dismiss." (Apps. at 23, 29-30 ).

Although the Court dismissed the claims against all the defendants without prejudice, the statute of limitations has run on all claims set forth in the dismissed complaint.

On November 12th, 2020 Bromfield-Thompson filed her Notice of Appeal. (App. at 32).

Bromfield-Thompson's brief will set forth arguments regarding the dismissal of claims against AUA/MEA, LLC only.

Bromfield-Thompson and NBME has agreed that they will enter into a

stipulated dismissal of her appeal relating to NBME.

## STATEMENT OF FACTS

On January 5th, 2010 AUA, an offshore medical school located on the Island of Antigua, admitted Bromfield-Thompson to its medical school as a 5th semester transfer student from St. Matthews University, an offshore medical school located on the Island of Grand Cayman. (App. at 33). Although Plaintiff was accepted for the May 20th, 2010 semester, her admission was deferred until the Fall of 2010 because AUA was unable to grant her request to commence clinical rotations at their New York City site which was closer to her residence in Washington, D.C. (App. at 46) Ultimately, in the Fall of 2010 Bromfield-Thompson began her rotation at AUA/MEA New York City site at Wycoff hospital in internal medicine.

On December 14th, 2010 Bromfield-Thompson sought accommodation from AUA/MEA to sit the shelf exam. (App. at 33)AUA/MEA were unsure about what to do because it was the first time a student had requested accommodation to take the exam, and

they had no department or personnel on board in the United States to

handle accommodation requests.  It was suggested that Bromfield-

Thompson should contact Dr. Rice in the country of Antigua because

he was the person who taught psychology courses at that AUA/MEA

school.  Bromfield-Thompson contacted Dr. Rice and sent him via

facsimile a 28-page report from her clinical psychologist detailing her

need for accommodation. (App. at 33). Bromfield-Thompson took and

passed the ICM exam after being granted accommodation of time and

a half.  (App. at 47).

Bromfield-Thompson waited roughly seven months to obtain her

next rotation because AUA/MEA lacked sufficient sites for its clinical

rotations in the United States.  (App. at 47). Bromfield-Thompson

began a clinical rotation in Family Medicine at Maryland General

Hospital in July 2011 which ended in October 2011. (App. at 47).

Bromfield-Thompson was scheduled to begin her next clinical rotation

in November 2012, a wait of a little more than a year because AUA/

had limited clinical sites for its students.  (App. at 47-48).Prior to

the start of the clinical rotation Bromfield-Thompson was contacted by her clinical coordinator, Maria Pimentel, from New York City, who told her that the rotation had to be cancelled in favor of students whose graduation were imminent. Bromfield-Thompson was not assigned any other clinical rotation until September 2012, an eleven month wait. (App. at 48).

Because AUA had few sites for clinical rotations Bromfield-Thompson sought and was able to obtain clinical rotations in Baltimore, Maryland. (App. at 47).Thus, even though Bromfield-Thompson began attending AUA/MEA for clinical programs beginning in the Fall of 2010, she was only assigned two clinical rotations by AUA in a 2-year span. (App. at 47). By the time AUA started assigning clinical rotations to Bromfield-Thompson on a consistent basis, the school had changed policies by instituting a requirement that all students should sit shelf exams and the Comprehensive Clinical Shelf Exam (CCSE) (App. at 47).The shelf exams and CCSE exam were old exams sold to the school by NBME, which in turn used these exams to measure students proficiency in a

variety of subject areas before allowing students to sit for the official exams administered by NBME. When Bromfield-Thompson became eligible to take her shelf exam, she discovered that no arrangements had been made for accommodations at the exam site, despite the fact that AUA/MEA had a 28-page report detailing her need for accommodation on file. When she asked that the exam be re-scheduled she was told by AUA/MEA personnel in New York City office that the school had not received her notice in time to do so. Bromfield-Thompson took the exam without appropriate accommodation and failed. (App. at 48). Bromfield-Thompson notified the Dean of Clinical Science, Dr. Peter Bell, in AUA/ MEA's New York City office about AUA's failure to recognize that she needed accommodation even though she had submitted a report to them. (App. at 48). Subsequently, AUA/MEA arranged for proper accommodation and Bromfield-Thompson re-took the exam and passed with a score that exceeded the minimum score required by AUA/MEA. The same was true with respect to the OB/GYN exam

whereupon being given appropriate accommodation Bromfield-Thompson achieved a passing grade in excess of the minimum required by AUA/MEA. (App. at 48).

As a result of Bromfield-Thompson's complaints regarding her lack of accommodation AUA/MEA instituted a new policy to the effect that students seeking accommodation were required to notify the administration within 5 business days from the start of any clinical rotations or exams.

On June 11th, 2015 Bromfield-Thompson was administratively withdrawn from AUA/MEA. (App. at 48). The reason for the withdrawal was vigorously disputed. AUA contended that Bromfield-Thompson had to be withdrawn because a student who has been inactive for more than 6 months is subject to administrative withdrawal. Bromfield-Thompson challenged the decision because her second child was born in June 2015 and in the period leading up to the birth she was unable to travel for clinical rotations. (App. at 48).

On June 17th, 2015 AUA/MEA re-admitted Bromfield-Thompson to the medical school, but set forth the condition that she was required

to complete the remaining requirements for graduation no later than "March 31, 2016," a daunting schedule given Bromfield-Thompson's disability and AUA/MEA's unreliability in arranging for accommodation and in assigning clinical rotations on a regular basis. (App. at 48). AUA/MEA also conditioned Bromfield-Thompson's re-admission on passage of the CCSE practice exam with a score of at least 79 in order to be certified to sit the USMLE Step 2 CK. (Apps. 48-49). Pursuant to AUA/MEA's written policy at the time Bromfield-Thompson was able to sit the exam for an **unlimited** number of times until passage. (App. at 34). The policy was later modified to three attempts students  for who entered their 4th year in 2015, but this modification did not apply to Bromfield-Thompson. According to AUA/MEA, failure to satisfy the requirements by the set date would result in dismissal. (App. at 47). The new requirements imposed by AUA/MEA  were not in effect at the time Bromfield-Thompson had enrolled with the school.  Bromfield-Thompson was of the belief that AUA was planning to retaliate against her for having vigorously

advocated for reasonable accommodation.

Bromfield-Thompson failed the exam on her first three attempts (8-22-2014, 10-24-2014, and 8-28-2015). (App. at 48).These failures were attributable to the fact that Bromfield-Thompson was accommodated with only one and a half time the duration of the exam. Bromfield-Thompson's clinical report on file with AUA/MEA had recommended up to double time for the taking of all exams. Recognizing that her failure had nothing to do with her level of preparation, Bromfield-Thompson contacted Dr. Bell, Dean of Clinical Studies in New York City, who advised her to contact Dr. Rice on the Island of Antigua. (App. at 34-35). Bromfield-Thompson wrote to Dr. Rice seeking double time who in turn responded that she needed to justify the request with recent testing certifying that she was dyslexic. To expedite the process, Bromfield-Thompson sent a letter to Dr. Rice from her clinical psychologist justifying the need for double time. Dr. Rice granted the request provisionally pending receipt of the full report. Dr. Rice communicated his approval through AUA's New York City office, but it came too late for Bromfield-Thompson to sit the

CCSE exam with double time. (App. at 48).Like the first report in

2010, the full report from Dr. Rachna Varia was sent to Dr. Rice in

October 2015.

On November 25th, 2015 Bromfield-Thompson took the CCSE

exam for the first time with double time accommodation which was

unlike the previous three attempts which had given her one and a half

extended time. Bromfield-Thompson sat the exam for 9 straight hours

without breaks in between and suffered excruciating pain in her feet in

the last two hours, resulting in Bromfield-Thompson

guessing a significant number of answers just to get through the

exam. (App. at 35). According to the proctor at the NBME sponsored

site, she was not allowed to take breaks. (App. at 35).After

Bromfield-Thompson was notified that she did not attain the required

score on the exam, she contacted NBME directly to complain about

the conditions under which she had previously taken the exam:either

not being given sufficient time or in the one instance when she was

given double time she got no breaks in between. NBME explained

that the USMLE Step 2 CK exam which mirrored the practice exam in length and complexity was given over a 2-day period, and suggested that Plaintiff contact AUA/MEA to determine whether AUA would be willing to find a site where Bromfield-Thompson could take the exam over a 2-day period. NBME promised that it would proctor such an exam.

On January 15th, 2016,Cheri Kershen, Manager NBME Test Administration, copied Bromfield-Thompson on a letter she had sent to AUA describing the procedures under which Bromfield-Thompson was able to sit the CCSE exam over a 2-day period (App. at 59). According to Ms.Kershen, AUA/MEA could attempt to make arrangements with an NBME approved site for Bromfield-Thompson to sit the exam. AUA/MEA was unable to locate an approved site. Dr. Peter Bell, Dean of Clinical Science for AUA/MEA, referred Bromfield-Thompson to AUA's Ombudsman to assist in finding a site, but he had no understanding but he was unable to do so. Dr. Bell also referred the matter to Dr. Juli Valtschanoff, AUA's Chief Proctor in Antigua, someone with whom Bromfield-Thompson had never before

interacted.  Dr. Valtschanoff sent Bromfield-Thompson an email

stating that he was unable to locate a site for taking the exam over a

2-day period, and advised her to "take the exam like any other student

needing accommodation."  (App. at 50).

Because of AUA's delay in finding a site to accommodate

Bromfield-Thompson, the March 31st deadline imposed by AUA/MEA

for completion of all exams and courses became unrealistic.

Consequently, Dr. Bell extended the deadline to July 31st, 2016. (App.

at 50). It took AUA/MEA 8 months from the time of Bromfield-

Thompson's last unsuccessful attempt (November 25th, 2019) to

schedule the exam with breaks.  (App. 50-51). Bromfield-Thompson

took the exam on July 1st, 2016.  This came about as a result of an

arrangement with NBME, AUA/MEA New York City office, and the pro

metric center located in Virginia to add more than double time to

enable Bromfield-Thompson to take breaks.  The way the plan was

designed to work was that an extra one hour and four minutes would

be built into the exam to enable Bromfield-Thompson to take breaks.

However, the exam which was computerized would not stop running during these breaks.  Although Bromfield-Thompson believed that the plan was flawed, she felt she had little choice but to go along given the deadline for completion imposed by AUA/MEA.  (App. 51-52).

On July 1st, 2016 Bromfield-Thompson took the exam and sat for 11 hours at a desk which had a large metal sheet underneath which blocked her from stretching her legs.  When Bromfield-Thompson took breaks the exam continued to run and when she returned to continue the exam the screen would go blank.  Each time Bromfield-Thompson would notify the proctor of the problem whereupon the proctor would call in to the technical department for assistance.  Each time Bromfield-Thompson returned from a break she had to be patted down, an ordeal that caused her to panic even more because these extra delays caused time to run even more. (App. at 50-51).

Despite the extra time allotted, Bromfield-Thompson experienced fatigue and pain which convinced her even more that the practice exam ought to have been given under the same conditions as the official exam:2 days of 4 hours each day with breaks in between with the clock stopped during breaks.  (App. 51).

At the end of the July 1st, 2016 double time exam, the proctor gave

Bromfield-Thompson a card to call with a prometric number to call in the

event someone needed to verify the issues that arose during the taking of

the exam.  Although this information was furnished to AUA/MEA there is no

indiction that anyone called Prometric for verification.  Bromfield-Thompson

received a score of 72 on the exam, seven points short of the 79 required

for passing.  (App. 52).

Bromfield-Thompson sent a letter to AUA/MEA explaining that the

decision to have her sit an exam for an 11 hour period with breaks while the

exam ran was not reasonable accommodation.  She received the following

letter from Kristal Booth, Registrar for AUA:

> I am sorry to hear of the personal issues you faced with this exam.
> AUA's  efforts (along with NBME and Prometric to accommodate your
> testing needs have been more than reasonable and unfortunately
> we are unable to accommodate another attempt at this exam.  This
> email is to confirm that based on your recent score, you have been
> dismissed from the University.  You will receive a formal letter of
> dismissal from the Promotions Committee within 1-2 days.  If you wish
> to appeal this decision, you may do so at this time.

In response, Bromfield-Thompson sent an email noting that this was the

first time that AUA/MEA had given a "halfway decent…but less than ideal

accommodation" with respect to the CCSE practice exam.  Bromfield-

Thompson accused the school of basing its approach to accommodation on "trial and error." Bromfield-Thompson characterized the efforts at accommodating her as flawed because of the failure to accommodate her over a 2-day period as was recommended by NBME. (APP. at 61).

Bromfield-Thompson appealed AUA/MEA's decision to dismiss her from the medical school. On July 17th, 2016 the AUA Appeals Committee acknowledged receipt of the appeal. However, the merits of Bromfield-Thompson's appeal were never addressed. At the time of Bromfield-Thompson's dismissal she had incurred student loan debts in excess of $200,000.00 in pursuit of her medical license.

## SUMMARY OF THE ARGUMENTS

A.    **The district court's warning that Bromfield-Thompson would be given just one opportunity to amend her complaint to cure deficiencies  appeared to be a warning as to the substance of the complaint as opposed to a procedural deficiency that required serving or re-serving a foreign corporation outside the geographical boundaries of the United States.**

B.    **AUA ought to be estopped from disclaiming service because MEA, LLC acted as their agent under legal principles of principal/ agent and had the actual or apparent authority to accept service on behalf of AUA.**

C.    **MEA, LLC had the apparent authority to accept  service on behalf of AUA.**

**D.    The trial court plainly erred in dismissing MEA, LLC from the lawsuit for failing to state a claim upon which relief may be granted given that AUA and MEA, LLC may have been engaged in a "joint venture" with respect to operation of the medical school.  Additionally, AMEA, LLC has acknowledged an "independent contractor relationship" with AUA.**

## ARGUMENT

## Standard of Review

A  district court's dismissal for improper service pursuant to FRCP Rule 12(b)(5) is reviewed under the abuse of discretion standard.  A district court has abused its discretion if it has 1) based its ruling on an erroneous view of the law, (2) made a clearly erroneous assessment of the evidence, or (3) rendered a decision that cannot be located within the range of permissible decisions.  *Lynch v. City of N.Y.,* 589 F.3d 94, 99 (2d Cir. 2009). *Dickerson v. Napolitano,* 604 F.3d 732, 740 (2d Cir. 2010).  If a defendant moves to dismiss  under Rule 12(b)(5) the plaintiff bears the burden  of showing adequate service. *Burda Media, Inc. v. Viertel,* 417 F.3d 292, 298 (2d Cir. 2005).  Thus, a district court will not be reversed for inadequate service unless the appellant can advance some colorable excuse for neglect.  *Meilleur v.*

*Strong,* 682 F.3d 56,61 (2d Cir. 2012); *Zapata v. City of N.Y.,* 502 F.3d 192,197 (2d Cir. 2007). A district court abuses its discretion when, among other things, it dismisses a complaint *sua* sponte for lack of service without first giving notice to the plaintiff nor providing an opportunity for her to show good cause for the failure to timely effect service. *Zapata,* 502 F.3d at 197.

Dismissal under Rule 12(b)(6) for failure to state a claim triggers *de novo* review. *Brandon Cleveland* and *Isiah Jackson* v. *Caplaw Enterprises,* 448 F.3d 518 (2d Circuit 2006).Thus, the court must accept the factual allegations in the complaint as true, unless it appears that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir. 1994) *citing Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L.Ed.2d 80 (1957). This standard is applied particularly strictly when the plaintiff complains of a civil rights violation. *Irish Lesbian & Gay Org. v. Giuliani,* 143 F.3d 638, 644 (2d Cir. 1998) *citing Branum v. Clark,* 927 F.2d 698, 705 (2d Cir. 1991).

**The district court's warning to Bromfield-Thompson that**

**she would only be given one opportunity to amend her complaint appeared to be a warning as to the substance of the complaint as opposed to a procedural deficiency that required serving or re-serving a foreign corporation outside the geographical boundaries of the United States.**

On November 18th, 2019 the district court warned Bromfield Thompson: "If Plaintiff believes that the pleading of additional facts will cure deficiencies identified in either NBME's motion to dismiss or American University and Manipal's motion to dismiss or both, then Plaintiff should include those facts in an amended complaint to be filed by January 13th, 2020. Plaintiff will not be given any further opportunity to amend the complaint to address issues raised by either motion." (App. at 7). Thus, Plaintiff interpreted this warning as relating to deficiencies concerning the substance of her complaint, not to the procedural technicality of the adequacy of service. In fact, on January 14th, 2020 Bromfield-Thompson filed her First Amended Complaint in which she made substantive changes. (App. at 9).

On February 4th, 2020 AUA filed its motion to dismiss in which it raised the issue of inadequate service. In response, Bromfield-Thompson proffered an affidavit from the process server averring that

he did effectuate personal service on AUA by visiting 1 Battery Park Plaza and handing the summons and complaint to Anita O'Brien at the offices of AUA and MEA, LLC. (App. at 65). Bromfield-Thompson's response also attached two photographs that the process server had taken around the time of service. (App. at 66-67). One photograph is "time-stamped" around the time he served AUA/MEA, LLC. (App. 66).

The court did not render its decision on AUA's motion to dismiss until October 12th, 2020 (of course the COVID virus was raging in New York City throughout this period), some 8 months after the last pleading had been filed. Indeed, Bromfield-Thompson believed that she had heeded the court's warning by filing an amended complaint and by furnishing photographs and an affidavit from the process server affirming that he had served MEA, LLC which had acted as an agent for AUA in receipt of the summons and complaint. See *Irish Lesbian & Gay Org. v. Giualin,* 143 F.3d 644, *supra.* Thus, throughout this period of time, Bromfield-Thompson was of the belief that she had effected valid service on AUA. In other words, Bromfield-Thompson

was of the view that she had satisfied the court's concerns.  In this regard, the court abused its discretion in dismissing the complaint without granting Bromfield-Thompson leave to amend to the extent the court found the service on AUA to be insufficient.  Significantly, AUA had also argued *forum non conveniens*, claiming that Antigua was the proper forum to adjudicate Bromfield-Thompson's Rehabilitation and American With Disabilities claims, supposedly because  Antigua had similar statutes.  This argument was preposterous given that Bromfield-Thompson had no contact whatsoever with Antigua and given that the scheduling of the exam and all interactions with Bromfield-Thompson took place through AUA's agent, MEA, LLC from the New York office.

**AUA ought to be estopped from disclaiming service because  MEA acted as their agent under legal principles of principal/agent and had the actual or apparent authority to accept service on AUA's behalf.**

A picture is worth a thousand words.  The following words are emblazoned in large print on the entrance to AUA/MEA's office:

MANIPAL EDUCATION
AMERICAS, LLC

AGENT FOR
AUA
AMERICAN UNIVERSITY OF ANTIGUA

As stated previously, App. 66 was time stamped showing that the

photograph was taken around the time the process server effectuated

service.   When the process server arrived at AUA/MEA offices he told

the receptionist that he had legal papers for both AUA and MEA, LLC.

(App. at 64). At this point, the receptionist disappeared to the back

office and one Ms. Anita O'Brien appeared.  At no point did she

explain that she had no authority to accept service on behalf of AUA.

Under New York Civil Practice Law and Rules Section 311 service

may be effected upon any domestic or foreign corporation, to an

officer, director, managing or general agent, or cashier or assistant

cashier or to any other agent authorized by appointment or by law to

receive service….".  NY CPLR Section 311(2015).  Here, MEA, LLC

was appointed to receive service as is indicated by them having held

themselves out as agents for AUA.   Accordingly, it is irrelevant

whether AUA actually had an office at the location.

Actual authority is created by direct manifestations from the principal to the agent, and the extent of the agent's authority is interpreted in the light of all circumstances attending those manifestations, including the customs of business, the subject matter, and any formal agreement between the parties, and the facts of which both parties are aware. *Highland Capital Mgmt. LP v. Schneider,* 607 F.3d 322, 327 (2d Cir. 2010), citing *Peltz v. SHB Commodities, Inc.,* 115 F.3d 1082, 1088 (2d Cir. 1997). Over the course of a 6-year period various Deans, Clinical Coordinators, and other AUA staff corresponded with Bromfield-Thompson (hundreds of emails) and in virtually every instance listed MEA, LLC as agents of AUA. (See eg., App. 68-73). Nothing in the correspondence received by Bromfield-Thompson or for that matter in the interaction with the process server indicated that MEA, LLC role as agent for AUA was in any way circumscribed. Hence, the conclusion that MEA, LLC had the actual authority to receive service on behalf of AUA is reasonable.

However, in the court below AUA submitted a copy of its Service

Agreement with MEA, LLP., with an Attachment labelled "Schedule A."
That agreement contains a forum selection clause as New York.  It
states in Clause 1(f) that the relationship between the parties is one of
"independent contractors, and neither party is an employee or
agent…"  (App. at 74-79). This agreement is at odds  with MEA, LLC
holding itself out as an agent of AUA in all its correspondence with
Bromfield-Thompson, as well as placing a notice at its entrance door
that it serves as AUA's agent. *Brandon Cleveland  and Isiah Jackson
v. Caplaw Enterprises,* 448 F.2d 518 (2006) citing  *City of Chicago v.
Matchmaker Real Estate Sales Ctr., Inc.* 982 F.2d 1086, 1097-98 (7th
Cir. 1982) ( contracting language establishing an "independent
contractor" relationship insufficient to preclude finding of agency).
Here, the "independent contractor" language in the service agreement
is not dispositive of the issue of agency under these circumstances.

Schedule A which is attached to the Service Agreement shows
the breadth of MEA, LLC's responsibilities. (App. at 80-82).  This
includes "orientation services; registrar services; selecting clinical

sites; furnishing financial aid services; maintaining accounting; purchasing information technology services; obtaining business licenses; coordinating travel; maintaining student records; selecting the academic Provost and Clinical Chairman; acting as bursar; obtaining insurance for AUA;and providing such other services " and AUA and MEA may agree from time to time." (App. 80-82). Although accepting or receiving "service" is not explicitly stated in Schedule A, it is not explicitly disclaimed either. Therefore, it is not a stretch to say that accepting service may be a duty that MEA was able to perform and which activity does fall within the ambit of the catchall provision in #12 of Schedule A. In any event, it does not matter, given that MEA,LLC has explicitly notified Bromfield-Thompson in all its correspondence that it acted as agent for AUA. If there was no agency notice on its entrance door at the time the process server entered, this may have been a closer case. If Ms. O'Brien had stated that she was willing to accept service for MEA, LLC, but not for AUA a different situation would have been created as Bromfield-Thompson would have had to pursue a different form of service (perhaps

international service) in order to ensure that her case would not be dismissed.  Given the totality of these circumstances,  AUA was served through its agent, MEA, LLP, which had actual authority to accept service.

Defendant proffered the service agreement in the district court as if that sole document was dispositive of the service issue. However, the opposite is true.  Since AUA has no offices in New York City it relies on its agent, MEA, LLC to oversee a panoply of responsibilities including its students who leave the Island of Antigua to pursue their clinical studies in the United States.  As previously stated, Bromfield-Thompson has never been to Antigua either for orientation or for course work.  Her orientation took place in New York City. She had transferred directly into the clinical program operated out of New York City under the auspices of MEA, LLC as agent for AUA. (App. 83).

**MEA, LLC had the apparent authority to accept service on behalf of AUA**

AUA has been properly served under the doctrine of apparent authority.   Recovery based on apparent authority does not require

that the third party have inquired into the scope of the agent's authority. *Whitney v. Citibank, N.A.,* 782 F.2d 1106, 1115-16 (2d Cir. 1986) (absent awareness of facts indicating that a partner is acting beyond the scope of his real or apparent authority, a third party is not obligated to investigate the matter further or search for some limitation on that partner's authority). *Herbert Construction Company v. Conti nental Insurance Company,* 931 F.2d 989 (2d. Cir. 1991). Here, given that MEA, LLC had advertised that it was AUA's agent, the process server was under no obligation to inquire as to any limitations regard ing agency given the absence of any disclaimer from Ms. O'Brien that she was not authorized to accept service. *id.* Furthermore, at no point during Bromfield-Thompson's course of dealings with AUA did they ever convey that MEA, LLC was not their agent. In fact, they made the opposite affirmations: listing MEA, LLC on all their correspondence with Bromfield-Thompson.

**The trial court plainly erred in prematurely dismissing MEA, LLC from the lawsuit on the ground of failure to state a claim upon which relief may be granted given that AUA and MEA, LLC may have been engaged in a "joint venture" or "independent**

**contractor" relationship with respect to the operation of the med-
ical school.**

Under New York law, a "joint venture" "is in a sense a partnership

for a limited purpose, and it has long been recognized that the legal

consequences of a joint venture are equivalent to those of a

partnership." *Itel Containers International Corporation, et al.* v.

*Atlantrafix Express Service Ltd, et al.,* 909 F.2d (2d Cir. 1990, quoting,

*Gramercy Equities v. Dumont,* 72 N.Y.2d 560, 534 N.Y.S. 2d 908, 911,

531 N.E. 629 (1988).   In order to form a joint venture, the following

must be present: (1) acts manifesting the intent of the parties (2)

mutual contribution to the joint venture undertaking; (3) each must

make a contribution of property, financing, skill, knowledge, or effort;

(4) each must have some degree of control over the venture; there

must be a provision for sharing both profit and losses.  *SCS*

*Communications, Inc. v. Hemick Co., Inc.,* 360 F.3d 329, 341 (2d Cir.

2004).

MEA, LLC contract with AUA has all the hallmarks of a joint

venture agreement, notwithstanding the disclaimer in Clause 7(f)

stating that they are not operating a joint venture. As was previously noted, the agreement disclaimed the existence of an agency relationship but the parties in all respects conducted themselves as a principal and agent to the extent where MEA, LLC even included the term"agent for AUA" in correspondence with Bromfield-Thompson and on the entrance to its office at 1 Battery Park, New York, New York. Clearly then, the terms of the service agreement is not dispositive as to their relationship.

Alternatively, if this court nevertheless chooses to hold that MEA, LLC is an "independent contractor" under the actual terms of the agreement, then it stands to reason that MEA, LLC is directly liable to Bromfield-Thompson under the Rehabilitation and American With Disabilities Acts. This is so, because in the years that Bromfield-Thompson believed she was interacting with AUA regarding her clerkships and requests for accommodation it was MEA, LLC making the decisions in their capacity as independent contractors, and not AUA, if their scheme of reasoning is taken to its logical extremes. See *Ian Hernandez v. Chefs Diet Delivery, LLC* 81 A.D. 3d 596, 915 N.Y.S.

2d (2011). In *Hernandez*, the lower court was reversed for relying

exclusively on documentary evidence to establish independent

contractor status. The court noted that the existence of a contract

delineating the parties' status ought to be considered, but was not

dispositive.

To the extent that MEA, LLC is solely liable to Bromfield-

Thompson as an "independent contractor", it does not mean that AUA

is off the hook since there are legitimate legal issues as to whether

AUA is liable for having engaged in fraudulent misrepresentations

regarding Bromfield-Thompson's acceptance to the medical school.

In this regard, Bromfield-Thompson should have been allowed to file

an amended complaint re-defining the status of each defendant. The

service agreement was filed in relation to AUA and MEA, LLC's Motion

to Dismiss the First Amended Complaint. Accordingly, Bromfield-

Thompson discovered the existence of the "independent contractor"

relationship too late to include that fact into her amended complaint.

As previously stated, the court was adamant that no further amended

complaints would be entertained.

MEA, LLC  should not have been dismissed from the case pending discovery on the issue of its true relationship with AUA.

## CONCLUSION

Wherefore, Bromfield Thompson respectfully requests that this Honorable Court enter a reversal of the district court's Judgment and find that  MEA, LLC acted as an agent for AUA when it accepted service.  This Court should also reverse the district court's Judgment that Bromfield-Thompson failed to state a claim upon which relief may be granted with respect to  the dismissal of MEA, LLC since MEA, LLC and AUA both agreed under the terms of their Service Agreement that MEA was an independent contractor.  Thus, all decisions regarding Bromfield_Thompson's lack of accommodation and termination from AUA were carried out by MEA, LLC. Alternatively, to the extent the Court finds that service upon MEA,LLC was insufficient to serve AUA, this court should nevertheless reverse the district court and remand the case with instructions to permit Bromfield-Thompson to file an amended complaint to the extent she is

able to perfect service.  AUA/MEA, LLC attached  the service agree

ment to their motion to dismiss Bromfield-Thompson's First Amended

Complaint  and by then it was too late to file any additional amended

complaint based  on information learned from the service agreement

since the trial court  had already made it clear that once plaintiff filed

an amended complaint there would be no further opportunity to

amend.


Respectfully submitted,

Debbie-Ann Bromfield-Thompson
1405 Kennedy Street, N.W.
Washington, D.C. 20011

Tel: 202-538-7338

**Pro Se Certificate of Compliance with**

**Word or Page Limits Adapted from Federal Rules of Appellate Procedure Form 6**

A document filed with the Court must not be longer than the Federal Rules of Appellate Procedure or the Court's Local Rules permit.  Check the box for the document you are filing and state the number of words or pages.

☒    **Brief** contains _7,269_ words.  [14,000 word limit - LR 32.1(a)(4)(A)], or
       **Brief** contains _____ pages.  [30 page limit - FRAP 32(a)(7)(A)]

☐    **Reply Brief** contains _____ words.  [7,000 word limit - LR 32.1(a) (4)(B)], or
       **Reply Brief** contains _____ pages.  [30 page limit - FRAP 32(a)(7)(A)]

☐    **Writ of Mandamus/Prohibition** contains _____ words.  [7,800 word limit - FRAP 21(d)(1)], or
       **Writ of Mandamus/prohibition** contains _____ pages.  [30 page limit - FRAP 21(d)(2)]

☐    **Motion** or **Response to the Motion** contains _____ words.  [5,200 word limit - FRAP 27(d)(2)(A)], or
       **Motion** or **Response to the Motion** contains _____ pages.  [20 page limit - FRAP 27(d)(2)(B)]

☐    **Reply to the Motion** contains _____ words.  [2,600 word limit - FRAP 27(d)(2)(C)], or
       **Reply to the Motion** contains _____ pages.  [10 page limit - FRAP 27(d)(2)(D)]

☐    **Petition for Panel or En Banc Hearing** contains _____ words.  [3,900 word limit - FRAP 35(b)(2)(A)], or
       **Petition for Panel or En Banc Hearing** contains _____ pages.  [15 page limit - FRAP 35(b)(2)(B)]

☐    **Petition for Panel Rehearing** contains _____ words.  [3,900 word limit - FRAP 40 (b)(1)], or
       **Petition for Panel Rehearing** contains _____ pages.  [15 page limit - FRAP 40 (b)(2)]

February 2017

## UNITED COURT OF APPEALS
## SECOND CIRCUIT

**DEBBIE-ANN BROMFIELD-THOMPSON**

### APPELLANT,

**DOCKET NO. 20-3855**

**v.**

**AUA/MEA, LLC,**

### APPELLEES.

## <u>CERTIFICATE OF SERVICE</u>

I Debbie-Ann Bromfield-Thompson, I hereby certify under

penalty of perjury, that on February 25th, 2021 I served Appellant's

Brief in the above captioned case upon the following counsel:

prepaid, on the following counsel:

Robert A. Burgoyne, Esq., (counsel for NBME)
Perkins Coie, LLP
Suite 600
700 13th Street, NW
Washington, DC 20005

Evelyn Yue Pang, Esq (counsel for NBME)
Perkins Coie, LLP
22nd Fl.
1155 Avenue of the Americas
New York, NY 10036

Robb William Patry, Esq., (counsel for AUA/MEA, LLC)
Hughes Hubbard & Reed LLP
1 Battery Plaza
New York, NY 10004

Amina Hassan, Esq., (Counsel for AUA/MEA, LLC)
Hughes Hubbard & Reed
1 Battery Park Plaza

New York, NY 10004

Debbie-Ann Bromfield-Thompson

EVERALD THOMPSON
(202) 538-7338
THE UPS STORE #5801
1300 MONROE ST NW
WASHINGTON DC 20010-3452

5 LBS        1 0
SHP WT: 5 LBS
DATE: 25 FEB 202

SHIP UNITED STATES COURT OF APPEALS
TO:  SECOND CIRCUIT
     40 FOLEY SQ

NEW YORK  NY 10007-1502



NY 102 9-10

UPS NEXT DAY AIR SAVER  1P
TRACKING #: 1Z 3E6 81A 13 7751 0932



BILLING: P/P

REF #2: AP

ISH 13.00F ZZP 450 42.5U 01/2021