**20-3855**

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

DEBBIE-ANN BROMFIELD-THOMPSON,

Plaintiff-Appellant,

v.

AMERICAN UNIVERSITY OF THE CARIBBEAN,

MANIPAL EDUCATION AMERICAS, LLC,

NATIONAL BOARD OF MEDICAL EXAMINERS,

Defendants-Appellees.

RECEIVED
2021 FEB 26 PM 12:40
U.S. COURT OF APPEALS

On appeal from the United States District Court
for the Southern District of New York

Appendix of Appellant Debbie-Ann Bromfield-Thompson

Debbie-Ann Bromfield-Thompson
1405 Kennedy Street, N.W.
Washington, DC 20011
202-538-7338

# TABLE OF CONTENTS

SDNY docket.....................................................................1

J Furman Opinion and Order.......................................16

Judgment.......................................................................30

Notice of Appeal.........................................................32

Declaration of Bromfield-Thompson...........................33

First Amended Complaint.............................................37

Cheri Kershen letter.......................................................59

Dismissal letter...............................................................60

Letter to Registrar...........................................................61

Affidavit of I. August Wilson (process server).......................64

Proof of Service...............................................................65

Photograph of AUA's Building.........................................66

Photograph of AUA/MEA's Office......................................67

Letter showing MEA's agency..........................................68

Letter showing MEA's agency..........................................71

Letter showing MEA's agency..........................................72

Letter showing MEA's agency..........................................73

Service Agreement.........................................................74

Schedule A..........................................................................80

Appendix A.........................................................................83

Certificate of Service..........................................................84

CM/ECF NextGen Version 1.2 https://ecf.nysd.uscourts.gov/cgi-bin/DktRpt.pl?72556853207284

CLOSED,APPEAL,ECF,PRO-SE

**U.S. District Court**
**Southern District of New York (Foley Square)**
**CIVIL DOCKET FOR CASE #: 1:19-cv-06078-JMF**

Bromfield-Thompson v. American University of Antigua/Manipal Education Americas, LLC et al
Assigned to: Judge Jesse M. Furman
Cause: 42:12132 Americans with Disabilities Act - Discrimination

Date Filed: 06/27/2019
Date Terminated: 10/13/2020
Jury Demand: None
Nature of Suit: 446 Civil Rights: Americans with Disabilities - Other
Jurisdiction: Federal Question

**Plaintiff**

**Debbie-Ann Bromfield Thompson** represented by **Debbie-Ann Bromfield Thompson**
1405 Kennedy Street NW
Washington, DC 20011
202-534-9164
Fax: 202-640-1914
Email: debibromfield@hotmail.com
PRO SE

V.

**Defendant**

**American University of Antigua/Manipal Education Americas, LLC**
*1 Battery Plaza, 33rd Fl., New York, NY 10004*
*also known as*
GCLR, LLC

**Defendant**

**NBME**
*3750 Market Street, Philadelphia, PA 19104*

represented by **Evelyn Yue Pang**
Perkins Coie LLP
1155 Avenue of the Americas
22nd Floor
New York, NY 10036
212-261-6875
Email: EPang@perkinscoie.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Caroline Mew**
Perkins Coie LLP

700 Thirteenth Street, NW
Ste 600
Washington, DC 20005
202-654-1767
Fax: 202-624-9551
Email: cmew@perkinscoie.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**American University of Antigua**
*TERMINATED: 01/14/2020*

represented by **Robb William Patryk**
Hughes Hubbard & Reed LLP (NY)
One Battery Park Plaza
New York, NY 10004
(212) 837-6861
Email: robb.patryk@hugheshubbard.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amina Hassan**
Hughes Hubbard & Reed LLP (NY)
One Battery Park Plaza
New York, NY 10004
(212) 837-6793
Fax: (212) 299-6793
Email: hassan@hugheshubbard.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Manipal Education Americas, LLC**
*TERMINATED: 01/14/2020*

represented by **Robb William Patryk**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amina Hassan**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 06/27/2019 | 1 | COMPLAINT against American University of Antigua/Manipal Education Americas, LLC, NBME. (Filing Fee $ $400.00, Receipt Number 465401238729) Document filed by Debbie Ann Bromfield-Thompson. (sac) (Entered: 07/01/2019) |
| 06/27/2019 | 2 | NOTICE OF PRO SE APPEARANCE by Debbie Ann Bromfield-Thompson. (sac) (Entered: 07/01/2019) |
| 06/27/2019 | | Case Designated ECF. (sac) (Entered: 07/01/2019) |

APP. 2

| | | |
|---|---|---|
| 07/30/2019 | | NOTICE OF CASE REASSIGNMENT to Judge Jesse M. Furman. Judge Unassigned is no longer assigned to the case. (bcu) (Entered: 07/30/2019) |
| 07/30/2019 | | Magistrate Judge Barbara C. Moses is so designated. Pursuant to 28 U.S.C. Section 636(c) and Fed. R. Civ. P. 73(b)(1) parties are notified that they may consent to proceed before a United States Magistrate Judge. Parties who wish to consent may access the necessary form at the following link: http://nysd.uscourts.gov/forms.php. (bcu) (Entered: 07/30/2019) |
| 07/30/2019 | 4 | ORDER: Plaintiff, who is proceeding pro se, paid the filing fees to commence this action. The Clerk of Court is directed to issue summonses as to Defendants American University of Antigua and NBME. Plaintiff is directed to serve the summons and complaint on each Defendant within 90 days of the issuance of the summons. If within those 90 days, Plaintiff has neither served Defendants nor requested an extension of time to do so, the Court may dismiss the claims against Defendants under Rules 4 and 41 of the Federal Rules of Civil Procedure for failure to prosecute. The Clerk of Court is directed to mail a copy of this order to Plaintiff, together with an information package. The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. Cf. Coppedge v. United States, 369 U.S. 438, 444-45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue). SO ORDERED. (Signed by Judge Jesse M. Furman on 7/30/2019) (ne) Transmission to Pro Se Assistants for processing. (Entered: 07/30/2019) |
| 07/31/2019 | | SUMMONS ISSUED as to American University of Antigua/Manipal Education Americas, LLC, NBME. (nb) (Entered: 07/31/2019) |
| 07/31/2019 | 5 | INFORMATION PACKAGE MAILED to Debbie Ann Bromfield-Thompson 1405 Kennedy Street, NW Washington, DC 20011, at, on 7/31/2019 Re: 4 Order of Service. The following document(s) were enclosed in the Service Package: a copy of the order of service or order to answer and other orders entered to date, the individual practices of the district judge and magistrate judge assigned to your case, Instructions for Litigants Who Do Not Have Attorneys, Notice Regarding Privacy and Public Access to Electronic Case Files, a flyer about the free legal assistance clinic located in the Thurgood Marshall Courthouse (only in non prisoner cases), a Motions guide, a notice that the Pro Se Manual has been discontinued, a Notice of Change of Address form to use if your contact information changes, a handout explaining matters handled by magistrate judges and consent form to complete if all parties agree to proceed for all purposes before the magistrate judge, a form for you to complete if you consent to receive filings electronically (only in nonprisoner cases), one or more summonses (only if you have paid the fee in person or if the judge has ordered that a summons be issued to you) - 2 copies of Summons(es) mailed. (nb) (Entered: 07/31/2019) |
| 10/23/2019 | 6 | NOTICE OF APPEARANCE by Evelyn Yue Pang on behalf of NBME. (Pang, Evelyn) (Entered: 10/23/2019) |

APP. 3

| | | |
|---|---|---|
| 10/23/2019 | 7 | LETTER MOTION for Extension of Time to File *Response to the Complaint* addressed to Judge Jesse M. Furman from Evelyn Y. Pang dated October 23, 2019. Document filed by NBME.(Pang, Evelyn) (Entered: 10/23/2019) |
| 10/23/2019 | 8 | AFFIDAVIT OF SERVICE of Notice of Appearance and Letter Motion Requesting Extension of Time to Respond to Complaint served on Plaintiff Debbie-Ann Bromfield Thompson on October 23, 2019. Service was made by First Class Mail. Document filed by NBME. (Pang, Evelyn) (Entered: 10/23/2019) |
| 10/23/2019 | 9 | ORDER granting 7 Letter Motion for Extension of Time to File. Application GRANTED. Defendant's deadline to answer, move to dismiss, or otherwise respond to the Complaint is November 11, 2019. The Clerk of Court is directed to terminate ECF No. 7 and mail a copy of this Order to Plaintiff. SO ORDERED. (Signed by Judge Jesse M. Furman on 10/23/19) (yv) Transmission to Docket Assistant Clerk for processing. (Entered: 10/24/2019) |
| 10/23/2019 | | Set/Reset Deadlines: NBME answer due 11/11/2019. (yv) (Entered: 10/24/2019) |
| 10/24/2019 | | Mailed a copy of 9 Order on Motion for Extension of Time to File, to Debbie Ann Bromfield-Thompson 1405 Kennedy Street, NW Washington, DC 20011. (vba) (Entered: 10/24/2019) |
| 10/28/2019 | 11 | SUMMONS RETURNED EXECUTED. Summons and Complaint served. American University of Antigua/Manipal Education Americas, LLC served on 10/4/2019, answer due 10/25/2019. Service was accepted by Anita O'Brien, Legal Dept. Document filed by Debbie Ann Bromfield-Thompson. (sc) (Entered: 10/30/2019) |
| 10/28/2019 | 12 | SUMMONS RETURNED EXECUTED. Summons and Complaint served. NBME, served on 10/4/2019, answer due 10/25/2019. Service was accepted by Barbara Miriello, Agent in Charge. Document filed by Debbie Ann Bromfield-Thompson. (sc) (Entered: 10/30/2019) |
| 10/30/2019 | 10 | ORDER TO SHOW CAUSE. It is hereby ORDERED that Plaintiff communicate with the Court, in writing, as to why Plaintiff has failed to serve the summons and Complaint on American University within the 90 days prescribed by Rule 4(m) of the Federal Rules of Civil Procedure, or, if Plaintiff believes that American University has been served, when and in what manner such service was made. If the Court does not receive any communication from Plaintiff by November 20, 2019, showing good cause why such service was not made within the 90 days, the Court will dismiss the case as to American University without further notice. Finally, Plaintiff is directed (1) to notify American University's attorneys in this action by serving upon each of them a copy of this Order and (2) to file proof of such notice with the Court by November 13, 2019. If unaware of the identity of counsel for American University, Plaintiff must forthwith send a copy of this Order to that party personally. The Clerk of the Court is directed to mail a copy of this Order to Plaintiff. SO ORDERED. (Signed by Judge Jesse M. Furman on 10/30/19) (yv) Transmission to Docket Assistant Clerk for processing. (Entered: 10/30/2019) |

APP. 4

| | | |
|---|---|---|
| 10/30/2019 | | Mailed a copy of 10 Order to Show Cause, to Debbie Ann Bromfield-Thompson 1405 Kennedy Street, NW Washington, DC 20011. (vba) (Entered: 10/30/2019) |
| 10/31/2019 | 13 | ORDER TO SHOW CAUSE: Accordingly, it is hereby ORDERED that American University show cause why it has failed to answer or respond to the Complaint by November 14, 2019. Failure to demonstrate good cause could result in the entry of a default judgment. Plaintiff is directed (1) to notify American University's attorneys in this action by serving upon each of them a copy of this Order and (2) to file proof of such notice with the Court by November 11, 2019. If unaware of the identity of counsel for American University, Plaintiff must forthwith send a copy of this Order to that party personally. The Clerk of the Court is directed to mail a copy of this Order to Plaintiff. SO ORDERED. (Signed by Judge Jesse M. Furman on 10/31/2019) (ks) Modified on 12/19/2019 (ks). (Entered: 10/31/2019) |
| 10/31/2019 | | Transmission to Docket Assistant Clerk. Transmitted re: 13 Order to Show Cause, to the Docket Assistant Clerk for case processing. (ks) (Entered: 10/31/2019) |
| 11/01/2019 | | Mailed a copy of 13 Order to Show Cause, to Debbie Ann Bromfield-Thompson 1405 Kennedy Street, NW Washington, DC 20011. (vba) (Entered: 11/01/2019) |
| 11/08/2019 | 19 | PRO SE CONSENT TO RECEIVE ELECTRONIC SERVICE. The following party: Debbie Ann Bromfield-Thompson consents to receive electronic service via the ECF system. Document filed by Debbie Ann Bromfield-Thompson.(sc) (Entered: 11/12/2019) |
| 11/08/2019 | 20 | AFFIDAVIT OF SERVICE of Order to Show Cause, served on American University of Antigua/Manipal Education Americas, LLC a/k/a GCLR on 11/5/19. Service was accepted by American University of Antigua/Manipal Education Americas, LLC, 1 Battery Plaza, 33rd Floor, New York, NY 10004 via Federal Express. Document filed by Debbie Ann Bromfield-Thompson. (sc) (Entered: 11/12/2019) |
| 11/11/2019 | 14 | MOTION to Dismiss . Document filed by NBME.(Pang, Evelyn) (Entered: 11/11/2019) |
| 11/11/2019 | 15 | DECLARATION of Cheri M. Kershen in Support re: 14 MOTION to Dismiss .. Document filed by NBME. (Pang, Evelyn) (Entered: 11/11/2019) |
| 11/11/2019 | 16 | MEMORANDUM OF LAW in Support re: 14 MOTION to Dismiss . . Document filed by NBME. (Pang, Evelyn) (Entered: 11/11/2019) |
| 11/11/2019 | 17 | PROPOSED ORDER. Document filed by NBME. Related Document Number: 14 . (Pang, Evelyn) **Proposed Order to be reviewed by Clerk's Office staff.** (Entered: 11/11/2019) |
| 11/11/2019 | 18 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. No Corporate Parent. Document filed by NBME.(Pang, Evelyn) (Entered: 11/11/2019) |
| 11/12/2019 | | *****NOTICE TO COURT REGARDING PROPOSED ORDER. Document No. 17 Proposed Order was reviewed and approved as to form.** (dt) (Entered: 11/12/2019) |

APP. 5

| | | |
|---|---|---|
| 11/12/2019 | 21 | AFFIDAVIT OF SERVICE of Notice of Motion to Dismiss, Declaration of Cheri M. Kershen in Support, Memorandum of Law in Support, Proposed Order and Rule 7.1 Corporate Disclosure Statement served on Pro Se Plaintiff on November 11, 2019. Service was made by First Class Mail. Document filed by NBME. (Pang, Evelyn) (Entered: 11/12/2019) |
| 11/12/2019 | 22 | MOTION for Caroline M. Mew to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-18040829. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by NBME. (Attachments: # 1 Affidavit of Caroline M. Mew In Support, # 2 Certificates of Good Standing, # 3 Proposed Order)(Mew, Caroline) (Entered: 11/12/2019) |
| 11/12/2019 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 22 MOTION for Caroline M. Mew to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-18040829. Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (vba)** (Entered: 11/12/2019) |
| 11/13/2019 | 23 | ORDER granting 22 Motion for Caroline M. Mew to Appear Pro Hac Vice (HEREBY ORDERED by Judge Jesse M. Furman)(Text Only Order) (Furman, Jesse) (Entered: 11/13/2019) |
| 11/13/2019 | 24 | ORDER, It is hereby ORDERED that Plaintiff shall file any amended complaint by December 23, 2019. If Plaintiff believes that the pleading of additional facts will cure deficiencies identified in the motion to dismiss, Plaintiff should include those facts in the amended complaint. Plaintiff will not be given any further opportunity to amend the complaint to address issues raised by the motion to dismiss. If Plaintiff does amend, by January 20, 2020, Defendant shall: (1) file an answer; (2) file a new motion to dismiss; or (3) file a letter on ECF stating that it relies on the previously filed motion to dismiss. If Defendant files an answer or a new motion to dismiss, the Court will deny the previously filed motion to dismiss as moot. If no amended complaint is filed, Plaintiff shall serve any opposition to the motion to dismiss by December 23, 2019. Defendant's reply, if any, shall be served by January 13, 2020. At the time any reply is served, the party represented by counsel shall supply the Court with one, double-sided courtesy hard copy of all motion papers by mailing or delivering them to the Thurgood Marshall United States Courthouse, 40 Centre Street, New York, New York. Finally, the Clerk of the Court is directed to mail a copy of this Order to Plaintiff. SO ORDERED. (Amended Pleadings due by 12/23/2019., Motions due by 1/20/2020.) (Signed by Judge Jesse M. Furman on 11/13/19) (yv) Transmission to Docket Assistant Clerk for processing. (Entered: 11/13/2019) |
| 11/13/2019 | | Mailed a copy of 24 Order, Set Deadlines, to Debbie Ann Bromfield-Thompson 1405 Kennedy Street, NW Washington, DC 20011. (vba) (Entered: 11/13/2019) |
| 11/14/2019 | 25 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. Identifying Corporate Parent Manipal Education Americas, LLC for American University of Antigua. Document filed by American University of Antigua.(Patryk, Robb) (Entered: 11/14/2019) |

APP. 6

| | | |
|---|---|---|
| 11/14/2019 | 26 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. Identifying Corporate Parent Manipal Academic Services International for Manipal Education Americas, LLC. Document filed by Manipal Education Americas, LLC.(Patryk, Robb) (Entered: 11/14/2019) |
| 11/14/2019 | 27 | RESPONSE TO ORDER TO SHOW CAUSE re: 13 Order to Show Cause,,,. Document filed by American University of Antigua, Manipal Education Americas, LLC. (Patryk, Robb) (Entered: 11/14/2019) |
| 11/14/2019 | 28 | DECLARATION of Leonard A. Sclafani in Opposition re: 13 Order to Show Cause,,,. Document filed by American University of Antigua, Manipal Education Americas, LLC. (Patryk, Robb) (Entered: 11/14/2019) |
| 11/14/2019 | 29 | NOTICE OF APPEARANCE by Amina Hassan on behalf of American University of Antigua, Manipal Education Americas, LLC. (Hassan, Amina) (Entered: 11/14/2019) |
| 11/14/2019 | 30 | NOTICE OF APPEARANCE by Robb William Patryk on behalf of American University of Antigua, Manipal Education Americas, LLC. (Patryk, Robb) (Entered: 11/14/2019) |
| 11/18/2019 | 31 | ORDER, All Defendants shall confer and submit a joint letter by November 25, 2019, indicating whether and to what extent they can consolidate their responses to the Complaint in a single amended motion to dismiss or answer. If Defendants indicate that they can and will file a (revised) consolidated motion to dismiss, that motion shall be due on December 20, 2019. Upon its filing, the Court will deny NBME's prior motion as moot. If Plaintiff believes that the pleading of additional facts will cure deficiencies identified in the consolidated motion, Plaintiff should include those facts in an amended complaint, to be filed by January 20, 2020. Plaintiff will not be given any further opportunity to amend the Complaint to address issues raised in the motion to dismiss. If Plaintiff does not file an amended complaint, Plaintiff shall file any opposition to the consolidated motion by January 20, 2020, and Defendants shall file any reply by January 27, 2020. If, on the other hand, Defendants indicate in their joint letter that they cannot fully consolidate their responses to the Complaint, then American University and Manipal shall answer, move to dismiss, or otherwise respond to the Complaint by December 9, 2019. If American University and Manipal file an answer, then the briefing schedule for NBME's motion to dismiss set forth in the Court's prior Order at ECF No. 24 shall remain in effect. If, however, American University and Manipal file their own motion to dismiss, then the following consolidated briefing schedule shall apply instead: If Plaintiff believes that the pleading of additional facts will cure deficiencies identified in either NBME's motion to dismiss or American University and Manipal's motion to dismiss, or both, then Plaintiff should include those facts in an amended complaint, to be filed by January 13, 2020. Plaintiff will not be given any further opportunity to amend the Complaint to address issues raised by either motion. If Plaintiff does not file an amended complaint, Plaintiff shall file a single, consolidated opposition to both American University and Manipal's motion to dismiss and NBME's motion to dismiss by January 13, 2020, and Defendants shall file their replies by January 20, 2020. The Clerk of the Court is directed to mail a copy of this Order to Plaintiff. SO ORDERED. (American |

| | | |
|---|---|---|
| | | University of Antigua answer due 12/9/2019; American University of Antigua/Manipal Education Americas, LLC answer due 12/9/2019; Manipal Education Americas, LLC answer due 12/9/2019; NBME answer due 12/9/2019.) (Amended Pleadings due by 1/20/2020., Motions due by 12/20/2019., Responses due by 1/20/2020, Replies due by 1/27/2020.) (Signed by Judge Jesse M. Furman on 11/18/19) (yv) Transmission to Docket Assistant Clerk for processing. (Entered: 11/18/2019) |
| 11/19/2019 | | Mailed a copy of 31 Order, Set Deadlines, to Debbie Ann Bromfield-Thompson 1405 Kennedy Street, NW Washington, DC 20011. (vba) (Entered: 11/19/2019) |
| 11/25/2019 | 32 | JOINT LETTER addressed to Judge Jesse M. Furman from Robb W. Patryk dated 11/25/2019 re: Response to the Courts November 18, 2019 Order (ECF No. 31). Document filed by American University of Antigua, Manipal Education Americas, LLC.(Patryk, Robb) (Entered: 11/25/2019) |
| 11/26/2019 | 33 | ORDER, As indicated in the Order at ECF No. 31, American University and Manipal shall answer, move to dismiss, or otherwise respond to the Complaint by December 9, 2019. If American University and Manipal file a motion to dismiss, as they indicate in their recent letter, then Plaintiff shall file by January 13, 2020, either (1) an amended complaint pleading any additional facts that Plaintiff believes will cure deficiencies identified in NBME's motion to dismiss and American University and Manipal's motion to dismiss or (2) a consolidated opposition brief responding to both motions to dismiss. If Plaintiff files an opposition brief, Defendants shall file their replies by January 20, 2020. The Clerk of the Court is directed to mail a copy of this Order to Plaintiff. SO ORDERED. (Amended Pleadings due by 1/13/2020., Responses due by 1/13/2020, Replies due by 1/20/2020.) (Signed by Judge Jesse M. Furman on 11/26/19) (yv) Transmission to Docket Assistant Clerk for processing. (Entered: 11/26/2019) |
| 11/26/2019 | | Mailed a copy of 33 Order, Set Deadlines, to Debbie Ann Bromfield-Thompson 1405 Kennedy Street, NW Washington, DC 20011. (aea) (Entered: 11/26/2019) |
| 12/03/2019 | 34 | LETTER addressed to Judge Jesse M. Furman from Robb W. Patryk dated December 3, 2019 re: Additional Pages for Motion to Dismiss. Document filed by American University of Antigua, Manipal Education Americas, LLC.(Patryk, Robb) (Entered: 12/03/2019) |
| 12/04/2019 | 35 | MEMO ENDORSEMENT on re: 34 Letter filed by American University of Antigua, Manipal Education Americas, LLC. ENDORSEMENT: Application GRANTED. (Signed by Judge Jesse M. Furman on 12/4/2019) (mro) (Entered: 12/04/2019) |
| 12/09/2019 | 36 | MOTION to Dismiss . Document filed by American University of Antigua, Manipal Education Americas, LLC.(Patryk, Robb) (Entered: 12/09/2019) |
| 12/09/2019 | 37 | MEMORANDUM OF LAW in Support re: 36 MOTION to Dismiss . . Document filed by American University of Antigua, Manipal Education Americas, LLC. (Patryk, Robb) (Entered: 12/09/2019) |

APP. 8

| | | |
|---|---|---|
| 12/09/2019 | 38 | DECLARATION of Vernon Solomon in Support re: 36 MOTION to Dismiss .. Document filed by American University of Antigua, Manipal Education Americas, LLC. (Patryk, Robb) (Entered: 12/09/2019) |
| 12/09/2019 | 39 | DECLARATION of Leonard A. Sclafani in Support re: 36 MOTION to Dismiss .. Document filed by American University of Antigua, Manipal Education Americas, LLC. (Attachments: # 1 Exhibit 1)(Patryk, Robb) (Entered: 12/09/2019) |
| 12/09/2019 | 40 | DECLARATION of Amina Hassan in Support re: 36 MOTION to Dismiss .. Document filed by American University of Antigua, Manipal Education Americas, LLC. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Text of Proposed Order)(Patryk, Robb) (Entered: 12/09/2019) |
| 01/07/2020 | 41 | LETTER from Debbie Ann Bromfield-Thompson dated 1/3/2020 re: I am urgently requesting approval of my consent to file as I have a motion due in the Court on January 13th, 2019. Document filed by Debbie Ann Bromfield-Thompson.(vn) (Entered: 01/09/2020) |
| 01/07/2020 | 42 | MOTION FOR PERMISSION FOR ELECTRONIC CASE FILING Debbie Ann Bromfield-Thompson to participate in electronic case filing in this case. Document filed by Debbie Ann Bromfield-Thompson. (vn) (Entered: 01/09/2020) |
| 01/10/2020 | 43 | ORDER granting 42 MOTION for Permission for Debbie Ann Bromfield-Thompson to participate in electronic case filing in this case. Application GRANTED. The Clerk of Court is directed to terminate ECF No. 42 and mail a copy of this Order to Plaintiff. SO ORDERED. (Signed by Judge Jesse M. Furman on 1/10/2020) (jca) Transmission to Docket Assistant Clerk for processing. (Entered: 01/10/2020) |
| 01/10/2020 | | Mailed a copy of 43 Order on Motion for Permission for Electronic Case Filing, to Debbie Ann Bromfield-Thompson 1405 Kennedy Street, NW Washington, DC 20011. (vba) (Entered: 01/10/2020) |
| 01/14/2020 | 44 | DECLARATION of Debbie Ann Bromfield-Thompson, in opposition to re: 36 MOTION to Dismiss . Document filed by Debbie Ann Bromfield-Thompson. (sc) (Entered: 01/16/2020) |
| 01/14/2020 | 45 | FIRST AMENDED COMPLAINT, re: amending 1 Complaint against American University of Antigua/Manipal Education Americas, LLC, NBME.Document filed by Debbie Ann Bromfield-Thompson. Related document: 1 Complaint.(sc) (Entered: 01/16/2020) |
| 01/14/2020 | 46 | EXHIBITS(Exhibit List), re: 45 Amended Complaint. Document filed by Debbie Ann Bromfield-Thompson.(sc) (Entered: 01/16/2020) |
| 01/21/2020 | 47 | ORDER: By February 4, 2020, Defendants shall: (1) file an answer; (2) file a new motion to dismiss; or (3) file a letter on ECF stating that they rely on their previously filed motion to dismiss. If Defendants file an answer or a new motion to dismiss, the Court will deny the relevant previously filed motion to dismiss as moot. SO ORDERED., American University of Antigua/Manipal Education Americas, LLC answer due 2/4/2020; NBME answer due 2/4/2020.( Motions due |

| | | |
|---|---|---|
| | | by 2/4/2020.) (Signed by Judge Jesse M. Furman on 1/21/2020) (ama) (Entered: 01/21/2020) |
| 01/22/2020 | 48 | LETTER addressed to Judge Jesse M. Furman from Robb W. Patryk dated January 22, 2020 re: Additional Pages for Motion to Dismiss. Document filed by American University of Antigua, Manipal Education Americas, LLC.(Patryk, Robb) (Entered: 01/22/2020) |
| 01/23/2020 | 49 | MEMO ENDORSEMENT on re: 48 Letter Additional Pages for Motion to Dismiss filed by American University of Antigua, Manipal Education Americas, LLC. ENDORSEMENT: Application GRANTED. SO ORDERED. (Signed by Judge Jesse M. Furman on 1/23/20) (yv) (Entered: 01/23/2020) |
| 02/04/2020 | 50 | MOTION to Dismiss *the First Amended Complaint*. Document filed by NBME.. (Pang, Evelyn) (Entered: 02/04/2020) |
| 02/04/2020 | 51 | DECLARATION of Cheri M. Kershen in Support re: 50 MOTION to Dismiss *the First Amended Complaint*.. Document filed by NBME..(Pang, Evelyn) (Entered: 02/04/2020) |
| 02/04/2020 | 52 | MEMORANDUM OF LAW in Support re: 50 MOTION to Dismiss *the First Amended Complaint*. . Document filed by NBME..(Pang, Evelyn) (Entered: 02/04/2020) |
| 02/04/2020 | 53 | PROPOSED ORDER. Document filed by NBME. Related Document Number: [50, 51 and 52]. (Pang, Evelyn) **Proposed Order to be reviewed by Clerk's Office staff.** (Entered: 02/04/2020) |
| 02/04/2020 | 54 | AFFIDAVIT OF SERVICE of Notice of Motion to Dismiss the Amended Complaint; Declaration of Cheri M. Kershen in Support; Memorandum of Law in Support and a Proposed Order served on Pro Se Plaintiff on February 4,2020. Service was made by Overnight Mail. Document filed by NBME..(Pang, Evelyn) (Entered: 02/04/2020) |
| 02/04/2020 | 55 | MOTION to Dismiss *the First Amended Complaint*. Document filed by American University of Antigua, Manipal Education Americas, LLC..(Patryk, Robb) (Entered: 02/04/2020) |
| 02/04/2020 | 56 | MEMORANDUM OF LAW in Support re: 55 MOTION to Dismiss *the First Amended Complaint*. . Document filed by American University of Antigua, Manipal Education Americas, LLC..(Patryk, Robb) (Entered: 02/04/2020) |
| 02/04/2020 | 57 | DECLARATION of ANITA O'BRIEN in Support re: 55 MOTION to Dismiss *the First Amended Complaint*.. Document filed by American University of Antigua, Manipal Education Americas, LLC..(Patryk, Robb) (Entered: 02/04/2020) |
| 02/04/2020 | 58 | DECLARATION of VERNON SOLOMON in Support re: 55 MOTION to Dismiss *the First Amended Complaint*.. Document filed by American University of Antigua, Manipal Education Americas, LLC. (Attachments: # 1 Exhibit 1).(Patryk, Robb) (Entered: 02/04/2020) |

APP. 10

| | | |
|---|---|---|
| 02/04/2020 | 59 | DECLARATION of AMINA HASSAN in Support re: 55 MOTION to Dismiss *the First Amended Complaint*.. Document filed by American University of Antigua, Manipal Education Americas, LLC. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Text of Proposed Order). (Patryk, Robb) (Entered: 02/04/2020) |
| 02/05/2020 | | *****NOTICE TO COURT REGARDING PROPOSED ORDER. Document No. 53 Proposed Order was reviewed and approved as to form. (km)** (Entered: 02/05/2020) |
| 02/06/2020 | 60 | ORDER denying as moot 36 Motion to Dismiss; denying as moot 14 Motion to Dismiss. In light of Defendants' new motions to dismiss, see ECF Nos. 50 & 55, Defendants' earlier motions to dismiss filed at ECF Nos. 14 and 36 are hereby DENIED as moot. Plaintiff shall file a single, consolidated opposition, not to exceed 40 pages, addressing both motions to dismiss by March 4, 2020. Defendants' replies, if any, are due by March 11, 2020. At the time any reply is served, the moving party shall supply the Court with one, double-sided courtesy hard copy of all motion papers by mailing or delivering them to the United States Courthouse, 40 Centre Street, New York, New York. The Clerk of Court is directed to terminate ECF Nos. 14 and 36. SO ORDERED. (Signed by Judge Jesse M. Furman on 2/6/2020) (jca) (Entered: 02/06/2020) |
| 02/06/2020 | | Set/Reset Deadlines: Responses due by 3/4/2020, Replies due by 3/11/2020. (jca) (Entered: 02/06/2020) |
| 03/05/2020 | 61 | MEMORANDUM OF LAW in Opposition re: 50 MOTION to Dismiss *the First Amended Complaint*., 55 MOTION to Dismiss *the First Amended Complaint*.. Document filed by Debbie-Ann Bromfield Thompson. (Attachments: # 1 Exhibit, # 2 Supplement, # 3 Text of Proposed Order, # 4 Supplement).(Bromfield Thompson, Debbie-Ann) (Entered: 03/05/2020) |
| 03/05/2020 | 62 | DECLARATION of Debbie Ann Bromfield Thompson in Opposition re: 55 MOTION to Dismiss *the First Amended Complaint*., 50 MOTION to Dismiss *the First Amended Complaint*.. Document filed by Debbie-Ann Bromfield Thompson.. (Bromfield Thompson, Debbie-Ann) (Entered: 03/05/2020) |
| 03/09/2020 | 63 | LETTER MOTION for Extension of Time *to file reply in Support of Defendants' Motions to Dismiss* addressed to Judge Jesse M. Furman from Robb W. Patryk dated March 9, 2020. Document filed by American University of Antigua, Manipal Education Americas, LLC..(Patryk, Robb) (Entered: 03/09/2020) |
| 03/10/2020 | 64 | ORDER granting 63 Letter Motion for Extension of Time. Application GRANTED. Defendants' replies are due March 12, 2020, and Plaintiff's deadline to file an opposition is extended nunc pro tunc to March 5, 2020. The Clerk of Court is directed to terminate ECF No. 63. SO ORDERED. (Signed by Judge Jesse M. Furman on 3/9/20) (yv) (Entered: 03/10/2020) |
| 03/10/2020 | | Set/Reset Deadlines as to 50 MOTION to Dismiss *the First Amended Complaint*., 55 MOTION to Dismiss *the First Amended Complaint*. Responses due by 3/5/2020. Replies due by 3/12/2020. (yv) (Entered: 03/10/2020) |

APP. 11

| | | |
|---|---|---|
| 03/12/2020 | 65 | **FILING ERROR - DEFICIENT DOCKET ENTRY -** MEMORANDUM OF LAW in Support re: 55 MOTION to Dismiss *the First Amended Complaint*. . Document filed by American University of Antigua/Manipal Education Americas, LLC..(Patryk, Robb) Modified on 3/17/2020 (ka). (Entered: 03/12/2020) |
| 03/12/2020 | 66 | REPLY MEMORANDUM OF LAW in Support re: 50 MOTION to Dismiss *the First Amended Complaint*. . Document filed by NBME..(Pang, Evelyn) (Entered: 03/12/2020) |
| 03/12/2020 | 67 | AFFIDAVIT OF SERVICE of Reply Brief in Support of the Motion to Dismiss Plaintiff's First Amended Complaint by the National Board of Medical Examiners served on Plaintiff Debbie-Ann Bromfield Thompson on March 12, 2020. Service was made by First Class Mail. Document filed by NBME..(Pang, Evelyn) (Entered: 03/12/2020) |
| 03/12/2020 | 68 | REPLY MEMORANDUM OF LAW in Support re: 55 MOTION to Dismiss *the First Amended Complaint*. . Document filed by American University of Antigua/Manipal Education Americas, LLC..(Patryk, Robb) (Entered: 03/12/2020) |
| 03/12/2020 | 69 | LETTER addressed to Judge Jesse M. Furman from Amina Hassan dated March 12, 2020 re: Final Letter to Judge Furman re courtesy copies of motion to dismiss papers. Document filed by American University of Antigua/Manipal Education Americas, LLC..(Patryk, Robb) (Entered: 03/12/2020) |
| 10/13/2020 | 70 | OPINION AND ORDER re: 55 MOTION to Dismiss *the First Amended Complaint*. filed by American University of Antigua, Manipal Education Americas, LLC, 50 MOTION to Dismiss *the First Amended Complaint*. filed by NBME. For the foregoing reasons, Defendants' motions are GRANTED and Bromfield- Thompson's Complaint is dismissed in its entirety. In particular, Bromfield-Thompson's claims against AUA are dismissed (without prejudice) pursuant to Rule 12(b)(5) for insufficient service of process; her claims against NBME are dismissed (without prejudice to re-filing in a district with personal jurisdiction over NBME, see Smith v. United States, 554 F. App'x 30, 32 n.2 (2d Cir. 2013) (summary order)) pursuant to Rule 12(b)(2) for lack of personal jurisdiction; and her claims against MEA are dismissed pursuant to Rule 12(b)(6) for failure to state a claim. The Court need not, and does not, consider Defendants' other arguments for dismissal.The Court declines to sua sponte grant Bromfield-Thompson leave to amend. Although leave to amend should be freely given "when justice so requires, Fed. R. Civ. P. 15(a)(2), and courts should generally grant pro se plaintiffs leave to amend "at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated," Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794, 795 (2d Cir. 1999) (per curiam) (internal quotation marksomitted), it is "within the sound discretion of the district court to grant or deny leave to amend," McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007). Bromfield- Thompson already amended her complaint, and she neither seeks leave to amend again nor suggests that she possesses any additional facts that could cure the defects in her dismissed claims. See, e.g., Fischman v. Mitsubishi Chem. Holdings Am., Inc., No. 18-CV-8188 (JMF), 2019 WL 3034866, at *7 (S.D.N.Y. July 11, 2019) (declining to grant leave to amend as to certain claims in the absence of any suggestion that additional facts could remedy |

APP. 12

| | | |
|---|---|---|
| | | defects in the plaintiff's pleading). Furthermore, Bromfield-Thompson was on notice of Defendants' arguments when she filed her current Complaint given that Defendants had made the same arguments in support of their motions to dismiss the original complaint, see ECF Nos. 16, 37, and Bromfield-Thompson was expressly warned that she would "not be given any further opportunity to amend the complaint to address issues raised by the motion[s] to dismiss," ECF No. 24. In light of these circumstances, the Court will not sua sponte grant leave to amend. See, e.g., Overby v. Fabian, No. 1 7-CV-3377 (CS), 2018 WL 3364392, at *14 (S.D.N.Y. July 10, 201 8) ("Plaintiff's failme to fix deficiencies in his previous pleading, after being provided ample notice of them, is alone sufficient ground to deny leave to amend sua sponte. "). The Clerk of Court is directed to te1minate ECF Nos. 50 and 55 and to close the case. SO ORDERED. (Signed by Judge Jesse M. Furman on 10/13/2020) (ks) Transmission to Orders and Judgments Clerk for processing. (Entered: 10/13/2020) |
| 10/13/2020 | 71 | CLERK'S JUDGMENT re: 70 Memorandum & Opinion in favor of American University of Antigua/Manipal Education Americas, LLC, NBME against Debbie-Ann Bromfield Thompson. It is hereby ORDERED, ADJUDGED AND DECREED: That for the reasons stated in the Court's Opinion and Order dated October 13, 2020, Defendants' motions are GRANTED and Bromfield-Thompson's Complaint is dismissed in its entirety. In particular, Bromfield-Thompson's claims against AUA are dismissed (without prejudice) pursuant to Rule 12(b)(5) for insufficient service of process; her claims against NBME are dismissed (without prejudice to re-filing in a district with personal jurisdiction over NBME, see Smith v. United States, 554 F. App'x 30, 32 n.2 (2d Cir. 2013) (summary order)) pursuant to Rule 12(b)(2) for lack of personal jurisdiction; and her claims against MEA are dismissed pursuant to Rule 12(b)(6) for failure to state a claim. The Court need not, and does not, consider Defendants' other arguments for dismissal. The Court declines to sua sponte grant Bromfield-Thompson leave to amend. Although leave to amend should be freely given "when justice so requires, Fed. R. Civ. P. 15(a)(2), and courts should generally grant pro se plaintiffs leave to amend "at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated," Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794, 795 (2d Cir. 1999) (per curiam) (internal quotation marksomitted), it is "within the sound discretion of the district court to grant or deny leave to amend," McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007). Bromfield-Thompson already amended her complaint, and she neither seeks leave to amend again nor suggests that she possesses any additional facts that could cure the defects in her dismissed claims. See, e.g., Fischman v. Mitsubishi Chem. Holdings Am., Inc., No. 18-CV-8188 (JMF), 2019 WL 3034866, at *7 (S.D.N.Y. July 11, 2019) (declining to grant leave to amend as to certain claims in the absence of any suggestion that additional facts could remedy defects in the plaintiffs pleading). Furthermore, Bromfield-Thompson was on notice of Defendants' arguments when she filed her current Complaint given that Defendants had made the same arguments in support of their motions to dismiss the original complaint, see ECF Nos. 16, 3 7, and Bromfield-Thompson was expressly warned that she would "not be given any further opportunity to amend the complaint to address issues raised by the motion[s] to dismiss," ECF No. 24. In |

APP. 13

| | | |
|---|---|---|
| | | light of these circumstances, the Court will not sua sponte grant leave to amend. See, e.g., Overby v. Fabian, No. 17-CV-3377 (CS), 2018 WL 3364392, at* 14 (S.D.N.Y. July 10, 2018) ("Plaintiffs failure to fix deficiencies in his previous pleading, after being provided ample notice of them, is alone sufficient ground to deny leave to amend sua sponte."); accordingly, this case is closed. (Signed by Clerk of Court Ruby Krajick on 10/13/2020) (Attachments: # 1 Right to Appeal) (km) Transmission to Docket Assistant Clerk for processing. (Entered: 10/13/2020) |
| 11/12/2020 | 72 | **FILING ERROR - NO ORDER SELECTED FOR APPEAL** - NOTICE OF APPEAL. Document filed by Debbie-Ann Bromfield Thompson. Form C and Form D are due within 14 days to the Court of Appeals, Second Circuit. (Bromfield Thompson, Debbie-Ann) Modified on 11/12/2020 (tp). (Entered: 11/12/2020) |
| 11/12/2020 | | *****NOTICE TO ATTORNEY REGARDING DEFICIENT APPEAL. Notice to attorney Bromfield Thompson, Debbie-Ann to RE-FILE Document No. 72 Notice of Appeal. The filing is deficient for the following reason(s): the order/judgment being appealed was not selected. Re-file the appeal using the event type Corrected Notice of Appeal found under the event list Appeal Documents - attach the correct signed PDF - select the correct named filer/filers - select the correct order/judgment being appealed. (tp)** (Entered: 11/12/2020) |
| 11/12/2020 | 73 | NOTICE OF APPEAL from 70 Memorandum & Opinion, 71 Clerk's Judgment. Document filed by Debbie-Ann Bromfield Thompson. Form D-P is due within 14 days to the Court of Appeals, Second Circuit. (tp) (Entered: 11/13/2020) |
| 11/12/2020 | | *****DELETED DOCUMENT. Deleted document number 74 Notice of Appeal. The document was incorrectly filed in this case. (tp)** (Entered: 11/17/2020) |
| 11/13/2020 | | Appeal Fee Due: for 73 Notice of Appeal. Appeal fee due by 11/27/2020. (tp) (Entered: 11/13/2020) |
| 11/13/2020 | | Transmission of Notice of Appeal and Certified Copy of Docket Sheet to US Court of Appeals re: 73 Notice of Appeal. (tp) (Entered: 11/13/2020) |
| 11/13/2020 | | Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal Electronic Files for 73 Notice of Appeal filed by Debbie-Ann Bromfield Thompson were transmitted to the U.S. Court of Appeals. (tp) (Entered: 11/13/2020) |
| 11/19/2020 | | USCA Appeal Fees received $ 505.00 receipt number 465401270098 on 11/19/2020 re: 73 Notice of Appeal filed by Debbie-Ann Bromfield Thompson. (tp) (Entered: 11/19/2020) |

| PACER Service Center |
|---|
| Transaction Receipt |
| 02/17/2021 17:01:50 |

APP. 14

Case 20-3855, Document 39, 02/26/2021, 3047207, Page18 of 90

| PACER Login: | everthomps | Client Code: | |
|---|---|---|---|
| Description: | Docket Report | Search Criteria: | 1:19-cv-06078-JMF |
| Billable Pages: | 11 | Cost: | 1.10 |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------X

DEBBIE ANN BROMFIELD-THOMPSON,

Plaintiff,

-v-

AMERICAN UNIVERSITY OF ANTIGUA/MANIPAL EDUCATION AMERICAS LLC, a/k/a GCLR, LLC et al.,

Defendants.

---------------------------------------------------------------------X

19-CV-6078 (JMF)

OPINION AND ORDER

JESSE M. FURMAN, United States District Judge:

Plaintiff Debbie Ann Bromfield-Thompson, proceeding without counsel, brings claims against American University of Antigua ("AUA"), Manipal Education Americas, LLC ("MEA"), and the National Board of Medical Examiners ("NBME") arising out of her dismissal as a student at AUA's medical school. In particular, liberally construed, the First Amended Complaint (the "Complaint") alleges violations of the Americans with Disabilities Act, the Rehabilitation Act, the New York Human Rights Law, and the New York City Human Rights Law, as well as breach of contract and breach of the implied covenant of good faith and fair dealing. *See* ECF No. 45 ("Compl."), ¶¶ 5, 7-8.[1] Defendants now move, pursuant to various provisions of Rule 12(b) of the Federal Rules of Civil Procedure, to dismiss Bromfield-Thompson's claims. *See* ECF Nos. 50, 55. For the reasons that follow, the Court concludes that, even giving Bromfield-Thompson the "special solicitude" to which she is entitled as a *pro se*

---

[1] The Complaint also includes claims of intentional and negligent infliction of emotional distress, *see* Compl. ¶¶ 103-05, but Bromfield-Thompson is no longer pursuing them, *see* ECF No. 61 ("Opp'n"), at 20, so they are dismissed.

litigant, *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010), Defendants' motions must be granted. Accordingly, Bromfield-Thompson's Complaint is dismissed.

## BACKGROUND

The following facts are, unless otherwise noted, drawn from the Complaint; documents that are attached to, integral to, or incorporated by reference in the Complaint; and allegations in Bromfield-Thompson's opposition papers (so long as they are consistent with the Complaint), and are assumed to be true for purposes of these motions. *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010); *see also, e.g.*, *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013). To the extent that AUA and NBME move to dismiss for lack of personal jurisdiction and insufficient service of process, however, the Court may — and does — also consider documents beyond the foregoing. *See, e.g.*, *Sullivan v. Walker Constr., Inc.*, No. 18-CV-09870 (AJN), 2019 WL 2008882, at *1 (S.D.N.Y. May 7, 2019); *Martinez v. SEIU Local 32BJ*, No. 18-CV-3961 (JMF), 2019 WL 1259381, at *1 n.1 (S.D.N.Y. Mar. 19, 2019).

Bromfield-Thompson is — and was at all times relevant to this case — a resident of Washington, D.C. Compl. ¶ 11. After receiving an undergraduate degree from Howard University, she enrolled in medical school at St. Matthews University School of Medicine. *See id.* ¶¶ 1, 12. In 2010, she transferred to AUA as a fifth-semester medical student. *See id.* ¶ 37. AUA, an Antiguan medical school, contracts with MEA to provide certain services, with MEA acting as AUA's agent. *See id.* ¶¶ 16, 18. AUA also has agreements with NBME, "a private non-profit organization with its principal office located in Philadelphia, Pennsylvania," that designs and sponsors medical examinations. *Id.* ¶¶ 6, 12, 21. By the time she transferred, Bromfield-Thompson had already completed her required classroom studies and needed only to "complete her clinical rotations" — "also known as clerkships" — and "sit for a series of

APP. 17

licensure exams administered by the NBME before applying for residences at hospitals located throughout the United States and Canada." *Id.* ¶ 12.

Bromfield-Thompson is dyslexic and, after enrolling at AUA, she sought and received as an accommodation time-and-a half when taking required examinations. *See id.* ¶¶ 1, 38. One of the exams that Bromfield-Thompson was required to pass to graduate was the Comprehensive Clinical Science Exam ("CCSE"), an NBME-designed test. *See id.* ¶¶ 21, 42, 50; ECF No. 46, Ex. 1, at 3.[2] Bromfield-Thompson took the CCSE three times in 2014 — each time receiving time-and-a-half and each time taking the test at a site in Virginia — but she was unsuccessful each time. *See* Compl. ¶¶ 30, 50. In June 2015, Bromfield-Thompson was administratively withdrawn from AUA because she had been inactive for at least six months, *id.* ¶ 46, but was subsequently re-admitted on "the condition that [she] complete the remaining requirements for graduation" — including "passage of the [CCSE] with a score of at least 79"— by "no later than March 31, 2016," *id.* ¶¶ 47-48 (internal quotation marks omitted). "[F]ailure to satisfy the requirements by the set date would result in dismissal." *Id.* ¶ 48. On November 25, 2015, Bromfield-Thompson took the CCSE for a fourth time, this time with double-time after requesting and receiving a more generous accommodation. *Id.* ¶¶ 51-53. Nevertheless, she still did not obtain a passing score. *See id.* ¶ 53-54.

Bromfield-Thompson then contacted NBME to complain about the conditions under which she took the test, explaining that taking it in one lengthy sitting caused her "excruciating pain." *Id.* ¶¶ 53-54. An NBME employee communicated to both Bromfield-Thompson and AUA that it was possible to offer the CCSE in a two-day format. But the vendor that AUA used

2 The exhibits collected in ECF No. 46 use inconsistent pagination, so citations to them are to the page numbers generated by the Court's electronic filing system.

to administer Bromfield-Thompson's exams did not allow for this format; AUA would instead have to make arrangements with another medical school that could provide an examination site and allowed for the two-day format. *See id.* ¶ 56, ECF No. 46, ex. 13, at 19. The matter was referred to Dr. Juli Valtschanoff, an AUA employee based in Antigua, who tried, but failed, to find an alternative suitable testing location in the Washington, D.C. area. *See* Compl. ¶ 57; ECF No. 46, Ex. 17, at 28. Instead, AUA worked with its testing vendor and NBME "to add more than double time to the exam to enable Plaintiff to take breaks." Compl. ¶ 60. In addition, AUA extended Bromfield-Thompson's deadline for completion of her graduation requirements until July 31, 2016. *Id.* ¶ 58. On July 1, 2016, Bromfield-Thompson took the CCSE for a fifth time, once again in Virginia, with the new accommodations that AUA had arranged. *See id.* ¶ 61. Once again, Bromfield-Thompson failed to achieve a passing score. *See id.* ¶ 64. On July 5, 2016, AUA informed Bromfield-Thompson that she had been dismissed from the school in light of her failure to obtain a passing score on the test; it followed up with a formal letter, dated July 8, 2016, explaining that the dismissal decision was made by the school's Promotions Committee. *See id.* ¶ 96; ECF No. 46, Ex. 14, at 23; *id.*, Ex. 15, at 24. Bromfield-Thompson appealed her dismissal but says AUA never responded. *See* Compl. ¶¶ 35, 67.

**DISCUSSION**

Defendants move to dismiss on a range of grounds. First, AUA moves to dismiss for insufficient service of process pursuant to Rule 12(b)(5); for lack of personal jurisdiction pursuant to Rule 12(b)(2); and for failure to state a claim pursuant to Rule 12(b)(6). Second, NBME moves to dismiss for lack of standing pursuant to Rule 12(b)(1); for lack of personal jurisdiction pursuant to Rule 12(b)(2); and for failure to state a claim pursuant to Rule 12(b)(6).

And third, MEA moves to dismiss for failure to state a claim pursuant to Rule 12(b)(6). The Court will consider each Defendant's motion in turn.

**A. AUA's Motion**

As noted, AUA moves to dismiss Bromfield-Thompson's claims on various grounds, including insufficient service of process pursuant to Rule 12(b)(5). "Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987). "[S]ervice of summons is the procedure by which a court having venue and jurisdiction of the subject matter of the suit asserts jurisdiction over the person of the party served." *Id.* (internal quotation marks omitted). In deciding a motion to dismiss for insufficient service of process, a court "must look to 'matters outside the complaint' . . . and 'must also consider the parties' pleadings and affidavits in the light most favorable to the non-moving party.'" *Martinez*, 2019 WL 1259381, at *1 n.1 (quoting *George v. Prof'l Disposables Int'l, Inc.*, 221 F. Supp. 3d 428, 442-43 (S.D.N.Y. 2016)). "Once a defendant challenges the sufficiency of service of process, the burden of proof is on the plaintiff to show the adequacy of service." *George*, 221 F. Supp. 3d at 432 (internal quotation marks omitted). In the absence of "a full-blown evidentiary hearing on the motion, the plaintiff need make only a prima facie showing of jurisdiction through its own affidavits and supporting materials." *Blau v. Allianz Life Ins. Co. of N. Am.*, 124 F. Supp. 3d 161, 173 (E.D.N.Y. 2015) (internal quotation marks omitted). "Conclusory statements that service was properly effected are insufficient to carry that burden." *C3 Media & Mktg. Grp., LLC v. Firstgate Internet, Inc.*, 419 F. Supp. 2d 419, 427 (S.D.N.Y. 2005) (internal quotation marks omitted); *see also Darden v. DaimlerChrysler N. Am. Holding Corp.*, 191 F. Supp. 2d 382, 387 (S.D.N.Y. 2002).

Applying these standards here, the Court concludes that Bromfield-Thompson's claims against AUA must be dismissed. Bromfield-Thompson had two options for serving AUA "in a judicial district in the United States." Fed. R. Civ. P. 4(h)(1).[3] First, she could serve AUA "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and — if the agent is one authorized by statute and the statute so requires — by also mailing a copy of each to the defendant." Fed. R. Civ. P. 4(h)(1)(B). Second, pursuant to New York state law, she could serve AUA by delivering the summons "to an officer, director, managing or general agent, or cashier or assistant cashier or to any other agent authorized by appointment or by law to receive service." N.Y. C.P.L.R. 311(a)(1). Bromfield-Thompson asserts that she satisfied these requirements because she "served American University of Antigua/Manipal Education Americas, LLC at its New York City Office located at 1 Battery [Plaza], 33rd Floor, New York, NY 10004" on October 8, 2019. Opp'n 27. But that assertion does not withstand scrutiny.

First, AUA provides sworn statements asserting that it has no office in New York (or anywhere in the United States). *See* ECF No. 58 ("Solomon Decl."), ¶ 4. Conclusory allegations in her Complaint aside, the only evidence Bromfield-Thompson points to that suggests otherwise is a photograph allegedly taken by the process server on the day of service, presumably of a logo on a wall at the office visited. *See* Opp'n 28; ECF No. 61-1, Ex. 3, at 5. If anything, however, the photograph, which reads "Manipal Education Americas, LLC Agent For: AUA American

[3] Because AUA is an Antiguan medical school, service could also have been effected "at a place not within any judicial district of the United States, in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i)." Fed. R. Civ. P. 4(h)(2). Bromfield-Thompson does not allege service in that manner.

University of Antigua," supports the conclusion that the location was MEA's office, not AUA's.[4] Second, and in any event, service was insufficient because the summons and complaint were not served on an AUA employee, let alone someone authorized to receive service on AUA's behalf. To the contrary, the complaint and summons were served on Anita O'Brien, an administrative assistant at MEA who was "not authorized to accept service of process on behalf of AUA." ECF No. 57, ("O'Brien Decl."), ¶¶ 1-2; Solomon Decl. ¶ 8. Notably, O'Brien affirms that the process server "did not ask [her], and at no point did [she] tell [him] that [she] was a member of AUA's Legal Department, employed by AUA in any capacity, or authorized to accept service of process for AUA." O'Brien Decl. ¶ 2. And Bromfield-Thompson provides no evidence to the contrary. At best, her process server attests that, when he arrived at the office, he told "a receptionist" that he "had legal documents for American University of Antigua/MEA," at which point she said she would "go get someone who can accept those" for him. ECF No. 61-1, Ex. 2, at 4. Thereafter, O'Brien "came out" and "accepted the documents," saying "nothing to the effect that she was not authorized to accept the documents." *Id.* In the face of O'Brien's declaration, however, that does not suffice. *See, e.g.*, *Oyewole v. Ora*, 291 F. Supp. 3d 422, 430 (S.D.N.Y. 2018) (dismissing for lack of service where "[the defendant] has provided sworn declarations stating that [the recipient] was not authorized to accept service on behalf of [the defendant] and never told the process server that he was"), *aff'd*, 776 F. App'x 42 (2d Cir. 2019) (summary order); *Hailey v. Hyster Co.*, 593 N.Y.S.2d 317, 318 (App. Div. 1993) (finding a failure to serve where

---

4 The alleged relationship between MEA and AUA does not obviate Bromfield-Thompson's obligation to properly serve AUA in its own right. *See, e.g.*, *Radiancy, Inc. v. Viatek Consumer Prod. Grp., Inc.*, 138 F. Supp. 3d 303, 314 (S.D.N.Y. 2014) ("New York Courts have consistently held that service of process on one corporation does not confer jurisdiction over another, even where one corporation may wholly own another, or where they may share the same principals." (internal quotation marks omitted)).

"[t]he process server served an individual who was not employed by the defendant, at a location where the defendant did not maintain an office" and "it is undisputed that the process server made no inquiry to determine the relationship of the [individual] to the defendant, or what duties she performed, or whether she was authorized to accept service of process").

Bromfield-Thompson has been on notice of the defect in service on AUA since at least December 9, 2019, when AUA and MEA filed their motion to dismiss the original complaint, *see* ECF No. 37, at 16-17, but she has taken no steps to correct it. Accordingly, AUA's motion to dismiss for insufficient service of process can and must be granted. *See, e.g.*, *Pope v. Rice*, No. 04-CV-4171 (DLC), 2005 WL 613085, at *15 n. 19 (S.D.N.Y. Mar. 14, 2005) ("[B]ecause plaintiff has been officially on notice for almost three months that [the defendant] was contesting sufficiency of service of process, and has made no effort to correct the filing deficiency, it is appropriate to grant the motion to dismiss.").[5]

**B. NBME's Motion**

NBME also moves to dismiss Bromfield-Thompson's claims on various grounds, including lack of personal jurisdiction pursuant to Rule 12(b)(2). "The plaintiff bears the burden of establishing that the court has jurisdiction over the defendant when served with a Rule 12(b)(2) motion to dismiss." *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001). "On a Rule 12(b)(2) motion, a defendant may submit affidavits and documents beyond the pleadings, and a court 'may determine the motion on the basis of affidavits alone; or [the court] may permit discovery in aid of the motion; or [the court] may conduct an evidentiary

---

5 Under Rule 4(m), this dismissal is technically without prejudice, although the statute of limitations may well preclude Bromfield-Thompson from bringing new claims against AUA. Moreover, such claims may be subject to dismissal for one or more of the other reasons that AUA presses. The Court need not and does not decide those issues here.

hearing on the merits of the motion.'" *Sullivan*, 2019 WL 2008882, at *1 (quoting *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981)). If the Court determines that an evidentiary hearing is not needed, then the "plaintiff must make a prima facie showing that jurisdiction exists." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 167 (2d Cir. 2013) (quoting *Thomas v. Ashcroft*, 470 F.3d 491, 495 (2d Cir. 2006)). "In evaluating whether the requisite showing has been made," the Court must "construe the pleadings and any supporting materials in the light most favorable to" Bromfield-Thompson. *Id.* at 167.

To decide whether personal jurisdiction over NBME is proper, the Court must decide: "(1) whether there is jurisdiction under New York law; and (2) whether the exercise of jurisdiction would be consistent with federal due process requirements." *Thackurdeen v. Duke Univ.*, 660 F. App'x 43, 45 (2d Cir. 2016) (summary order). There are "two categories of personal jurisdiction: general and specific personal jurisdiction." *Gucci America, Inc. v. Weixing Li*, 768 F.3d 122, 134 (2d Cir. 2014) (internal quotation marks omitted). The first — general, or all-purpose jurisdiction — "permits a court to hear any and all claims against an entity." *Id.* (internal quotation marks omitted). Notably, it is consistent with due process only when a "corporation's affiliations with the State are so continuous and systematic as to render it essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014) (internal quotation marks and alterations omitted). In general, a corporation is "at home" only in the state where it is incorporated or where it has its principal place of business. *See id.* at 139 & n.19. "Specific jurisdiction, on the other hand, permits adjudicatory authority only over issues that arise out of or relate to the entity's contacts with the forum." *Gucci America, Inc.*, 768 F.3d at 134 (internal quotation marks and alterations omitted). Here, Bromfield-Thompson predicates specific jurisdiction on New York's long-arm statute, which provides, in relevant part, that "a

court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . transacts any business within the state or contracts anywhere to supply goods or services in the state." N.Y. C.P.L.R. 302(a)(1); *see* Opp'n 30.[6]

Here, Bromfield-Thompson's protestations notwithstanding, the Court plainly lacks general jurisdiction over NBME as the company is incorporated in Washington, D.C. and has its principal place of business in Pennsylvania, not New York. *See* ECF No. 51 ("Kershen Decl."), ¶ 3; *see, e.g., Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 629 (2d Cir. 2016) ("[W]hen a corporation is neither incorporated nor maintains its principal place of business in a state, mere contacts, no matter how 'systematic and continuous,' are extraordinarily unlikely to add up to an 'exceptional case.'"). Meanwhile, the ties between NBME's conduct in this case and New York are too meager to support specific jurisdiction under Section 302(a)(1) (let alone due process). The principal claims against NBME, a Pennsylvania corporation, relate to tests that Bromfield-Thompson, a Washington, D.C. resident enrolled at an Antiguan medical school, took in Virginia. *See* Compl. ¶¶ 6, 11-12, 21, 30. The only alleged connection between NBME's conduct in this case and New York is that "NBME coordinated with AUA's New York City office with respect to test taking accommodations for Plaintiff on at least fourteen different occasions prior to Plaintiff's dismissal." Compl. ¶ 29; *see also id.* ¶¶ 17, 22. But, putting aside the fact that AUA maintains that it does not even have an office in New York, *see* Solomon Decl. ¶ 4, these communications are insufficient to confer jurisdiction here. *See, e.g., Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 128-29 (2d Cir. 2013) ("'New York courts have

---

6 Bromfield-Thompson also appears to invoke Rule 4(k)(1)(B) as a basis for personal jurisdiction over NBME, *see* Compl. ¶ 29, but that Rule applies only to "a party joined under Rule 14 or 19" — not to a party, like NBME, originally named in the complaint. Fed. R. Civ. P. 4(k)(1)(B); *see, e.g., Prince of Peace Enters., Inc. v. Top Quality Food Mkt., LLC*, No. 07-CV-00349 (RJH), 2007 WL 704171, at *2 (S.D.N.Y. Mar. 7, 2007).

consistently refused to sustain section 302(a)(1) jurisdiction solely on the basis of defendant's communication from another locale with a party in New York.'" (quoting *Beacon Enters., Inc. v. Menzies*, 715 F.2d 757, 766 (2d Cir. 1983)); *Maranga v. Vira*, 386 F. Supp. 2d 299, 306 (S.D.N.Y. 2005) ("[C]ommunications into New York will only be sufficient to establish personal jurisdiction if they were related to some transaction that had its center of gravity inside New York, into which a defendant projected himself." (internal quotation marks omitted)).[7]

**C. MEA's Motion**

That leaves MEA, which moves, pursuant to Rule 12(b)(6), to dismiss Bromfield-Thompson's claims for failure to state a claim. In evaluating a Rule 12(b)(6) motion, a court must accept all facts set forth in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See, e.g.*, *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (per curiam). A claim will survive a Rule 12(b)(6) motion, however, only if the plaintiff alleges facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). A plaintiff must show "more than a sheer possibility that a defendant has acted

7 Bromfield-Thompson's assertion that she "was a third-party beneficiary of the agreement between AUA and NBME with respect to the implementation of accommodations' requirements for sitting the CCSE exam," Compl. ¶ 98, does not change the Court's analysis or conclusion. *See, e.g.*, *Berkshire Capital Grp., LLC v. Palmet Ventures, LLC*, 307 F. App'x 479, 481 (2d Cir. 2008) (summary order) (rejecting personal jurisdiction over an Illinois corporation under New York's long-arm statute where a contract was negotiated through telephone calls and emails to New York because "[t]he mere fact that it engaged in *some* contact with a New York purchaser does not mean that [the defendant] transacted business in New York").

unlawfully," *id.*, and cannot rely on mere "labels and conclusions" to support a claim, *Twombly*, 550 U.S. at 555. If the plaintiff's pleadings "have not nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* at 570.

Applying these standards here, MEA's motion must be granted. Although MEA is named in several of Bromfield-Thompson's claims, *see* Compl. ¶¶ 72-102, the Complaint is devoid of any allegations that MEA engaged in wrongdoing. In fact, nearly all of the allegations pertaining to MEA are jurisdictional, *see, e.g.*, *id.* ¶ 23 (alleging that MEA and AUA share an office in New York); *id.* ¶ 29 (alleging MEA "regularly transact[s] business in New York"), or merely describe some aspect of the relationship between MEA and AUA, *see, e.g.*, *id.* ¶ 18 ("AUA has a service agreement with MEA . . . ."); *id.* ¶ 25 (describing MEA as AUA's "agent"). Even together, these allegations are plainly insufficient to support a "reasonable inference" that MEA "is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678; *see, e.g.*, *Medina v. Bauer*, No. 02-CV-8837 (DC), 2004 WL 136636, at *6 (S.D.N.Y. Jan. 27, 2004) (Chin, J.) (noting that, "at a minimum," a complaint must "give *each defendant* fair notice of what the plaintiff's claim is and the ground upon which it rests" (emphasis added) (internal quotation marks omitted); *see also, e.g.*, *Fierro v. City of New York*, No. 12-CV-3182 (AKH), 2013 WL 4535465, at *2 (S.D.N.Y. Apr. 22, 2013) (dismissing claims against one defendant that "remains a separate legal entity" from another defendant where the plaintiff had "made no allegations that [the first defendant] engaged in wrongful conduct"). In arguing otherwise, Bromfield-Thompson asserts that "virtually all the emails sent from AUA's New York City Office lists [sic] MEA as their agent or representative." Opp'n 23. But even if that is true, it would not suffice, as Bromfield-Thompson's own allegations establish that AUA — not MEA — was responsible for the actions giving rise to her claims. *See* Compl. ¶¶ 38, 51-52 (explaining that AUA personnel in

APP. 27

Antigua evaluated and approved her requests for accommodations); *id.* ¶¶ 51, 57 (explaining that AUA's "Executive Dean of Clinical Studies," "Ombudsman," "Chief Proctor" responded to her request for a two-day format); *see also* ECF No. 46, Ex. 15, at 24 (explaining that AUA's Promotions Committee decided to dismiss her from the medical program). Accordingly, Bromfield-Thompson's claims against MEA must be and are dismissed.

**CONCLUSION**

For the foregoing reasons, Defendants' motions are GRANTED and Bromfield-Thompson's Complaint is dismissed in its entirety. In particular, Bromfield-Thompson's claims against AUA are dismissed (without prejudice) pursuant to Rule 12(b)(5) for insufficient service of process; her claims against NBME are dismissed (without prejudice to re-filing in a district with personal jurisdiction over NBME, *see Smith v. United States*, 554 F. App'x 30, 32 n.2 (2d Cir. 2013) (summary order)) pursuant to Rule 12(b)(2) for lack of personal jurisdiction; and her claims against MEA are dismissed pursuant to Rule 12(b)(6) for failure to state a claim. The Court need not, and does not, consider Defendants' other arguments for dismissal.

The Court declines to *sua sponte* grant Bromfield-Thompson leave to amend. Although leave to amend should be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2), and courts should generally grant *pro se* plaintiffs leave to amend "at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated," *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (per curiam) (internal quotation marks omitted), it is "within the sound discretion of the district court to grant or deny leave to amend," *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). Bromfield-Thompson already amended her complaint, and she neither seeks leave to amend again nor suggests that she possesses any additional facts that could cure the defects in her dismissed

claims. *See, e.g.*, *Fischman v. Mitsubishi Chem. Holdings Am., Inc.*, No. 18-CV-8188 (JMF), 2019 WL 3034866, at *7 (S.D.N.Y. July 11, 2019) (declining to grant leave to amend as to certain claims in the absence of any suggestion that additional facts could remedy defects in the plaintiff's pleading). Furthermore, Bromfield-Thompson was on notice of Defendants' arguments when she filed her current Complaint given that Defendants had made the same arguments in support of their motions to dismiss the original complaint, *see* ECF Nos. 16, 37, and Bromfield-Thompson was expressly warned that she would "not be given any further opportunity to amend the complaint to address issues raised by the motion[s] to dismiss," ECF No. 24. In light of these circumstances, the Court will not *sua sponte* grant leave to amend. *See, e.g.*, *Overby v. Fabian*, No. 17-CV-3377 (CS), 2018 WL 3364392, at *14 (S.D.N.Y. July 10, 2018) ("Plaintiff's failure to fix deficiencies in his previous pleading, after being provided ample notice of them, is alone sufficient ground to deny leave to amend *sua sponte*.").

The Clerk of Court is directed to terminate ECF Nos. 50 and 55 and to close the case.

SO ORDERED.

Dated: October 13, 2020
       New York, New York

JESSE M. FURMAN
United States District Judge

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 10/13/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
DEBBIE ANN BROMFIELD-THOMPSON,

Plaintiff,

-against-

19 CIVIL 6078 (JMF)

# JUDGMENT

AMERICAN UNIVERSITY OF ANTIGUA/
MANIPAL EDUCATION AMERICAS LLC,
a/k/a GCLR, LLC et al.,

Defendants.
-----------------------------------------------------------X

It is hereby **ORDERED, ADJUDGED AND DECREED:** That for the reasons stated in the Court's Opinion and Order dated October 13, 2020, Defendants' motions are GRANTED and Bromfield-Thompson's Complaint is dismissed in its entirety. In particular, Bromfield-Thompson's claims against AUA are dismissed (without prejudice) pursuant to Rule 12(b)(5) for insufficient service of process; her claims against NBME are dismissed (without prejudice to re-filing in a district with personal jurisdiction over NBME, see Smith v. United States, 554 F. App'x 30, 32 n.2 (2d Cir. 2013) (summary order)) pursuant to Rule 12(b)(2) for lack of personal jurisdiction; and her claims against MEA are dismissed pursuant to Rule 12(b)(6) for failure to state a claim. The Court need not, and does not, consider Defendants' other arguments for dismissal. The Court declines to sua sponte grant Bromfield-Thompson leave to amend. Although leave to amend should be freely given "when justice so requires, Fed. R. Civ. P. 15(a)(2), and courts should generally grant pro se plaintiffs leave to amend "at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated," Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794, 795 (2d Cir. 1999) (per curiam) (internal quotation marksomitted), it is "within the sound discretion of the district court to grant or deny leave to amend," McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007). Bromfield-Thompson already

amended her complaint, and she neither seeks leave to amend again nor suggests that she possesses any additional facts that could cure the defects in her dismissed claims. See, e.g., Fischman v. Mitsubishi Chem. Holdings Am., Inc., No. 18-CV-8188 (JMF), 2019 WL 3034866, at *7 (S.D.N.Y. July 11, 2019) (declining to grant leave to amend as to certain claims in the absence of any suggestion that additional facts could remedy defects in the plaintiff's pleading). Furthermore, Bromfield-Thompson was on notice of Defendants' arguments when she filed her current Complaint given that Defendants had made the same arguments in support of their motions to dismiss the original complaint, see ECF Nos. 16, 37, and Bromfield-Thompson was expressly warned that she would "not be given any further opportunity to amend the complaint to address issues raised by the motion[s] to dismiss," ECF No. 24. In light of these circumstances, the Court will not sua sponte grant leave to amend. See, e.g., Overby v. Fabian, No. 17-CV-3377 (CS), 2018 WL 3364392, at *14 (S.D.N.Y. July 10, 2018) ("Plaintiff's failure to fix deficiencies in his previous pleading, after being provided ample notice of them, is alone sufficient ground to deny leave to amend sua sponte."); accordingly, this case is closed.

**Dated:** New York, New York

October 13, 2020

**RUBY J. KRAJICK**

**Clerk of Court**

**BY:** K Mango

**Deputy Clerk**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONI
DOC #:
DATE FILED

Debbie-Ann Bromfield-Thompson
(List the full name(s) of the plaintiff(s)/petitioner(s).)

19 CV 6078 (

-against-

NOTICE OF APPEAL

AUA, MCA, LLC, and NBME
(List the full name(s) of the defendant(s)/respondent(s).)

Notice is hereby given that the following parties: Debbie-Ann Bromfield-Thompson

(list the names of all parties who are filing an appeal)

in the above-named case appeal to the United States Court of Appeals for the Second Circuit

from the ☒ judgment ☐ order entered on: 10-13-20
(date that judgment or order was entered on do

that:

(If the appeal is from an order, provide a brief description above of the decision in the order.)

11-12-20
Dated

[signature]
Signature

Bromfield-Thompson Debbie-Ann
Name (Last, First, MI)

1405 Kennedy Street, N.W., Washington DC
Address City State Zip Code

202-534-9164
Telephone Number

debibromfield@hotmail
E-mail Address (if available)

DECLARATION OF DEBBIE-ANN BROMFIELD-THOMPSON

My name is Debbie-Ann Bromfield-Thompson and I am over the age of 18 and competent to testify.

1. In the Fall of 2010 I transferred from St. Matthews University School of Medicine, an offshore medical school, to American University of Antigua Medical School (AUA) clinical program. At the time of my transfer I had completed all my basic science courses at St. Matthews University School of Medicine in the country of Cayman Islands.

2. At the time I applied to AUA I spoke extensively with their Admissions office in New York City, the location of their staff for assigning clinical rotations which promised that I would be assigned clinical rotations within my geographic area because the school was constantly growing and adding clinical sites.

3. At no point did I interact with anyone from AUA's campus on the Island of Antigua, and at no point did I ever visit the AUA campus on the Island of Antigua.

4. My first clinical course began at Wycoff Hospital in New York City in ICM, during the Fall of 2010, and represented the first time I had sought accommodation from AUA for my dyslexia .

5. AUA appeared to lack any department that handled accommodations' requests and they notified me that this was the first time anyone had ever sought accommodations for the ICM exam.

6. I was instructed to send by facsimile a copy of my psychological report to Dr. Rice (who is not qualified in dyslexia discipline). I faxed a 28 page report to him, after which I was approved by AUA to sit the exam with accommodation of extra time. That report stipulated that I was to be accorded up to double time for test taking.

7. Despite having sent the report, I encountered problems with obtaining accommodations for the various shelf exams that I was required to sit subsequent to completion of my rotations,

causing me to show up at the Prometric centers on numerous occasions only to discover that no arrangements were made for accommodating me.

8. I would communicate issues regarding the lack of accommodations to Dr. Peter Bell, Executive Dean of Clinical Sciences, and Craig Hauser Vice President of University Administration, both of whom were located in AUA's New York City offices. Their solution to the problem would be to make the proper accommodations through NBME and for me to re-take the exams.

9. The constant re-taking of the exams resulted in enormous stress and increased financial cost. AUA even had me pay the cost for securing a separate room for sitting the exam as recommended by my psychological report.

10. When I retook the exams with adequate accommodation my scores far exceeded AUA's threshold requirements for passage.

11. AUA constantly changed the requirements for graduation and instituted a new requirement that all students should take and pass a practice exam, called the CCSE, prior to sitting for the official Exam, USMLE CK 2.

12. Under AUA's policy for the CCSE, there were no limits as to how often I was able to sit the exam.

13. Because of the time constraint AUA had imposed for me to graduate, there was little room for error and I kept attempting to complete the CCSE exam within the time frame allotted me by AUA/NBME even though it was clear that the accommodation was either lacking or inadequate.

14. After all my unsuccessful attempts I would notify AUA that the accommodations extended were not working and that they should allow me to sit the exam over a 2-day period as was the practice for onshore schools and as was the practice for the taking of the official

USMLE CK 2.

15.    This request caused much consternation amongst AUA's executive staff in New York City because of their claim that they were unable to accommodate my request.

16.    I spoke directly with a staffer at NBME who told me that the Prometric Center with whom they contracted for the taking of exams  was unable to accommodate sitting for the CCSE over a 2-day period and that NBME recognized that this was a problem and believed that in the not too distant future the problem would be remedied to enable students needing accommodation for the CCSE exam  to sit for the exam over a 2-day period at the prometric centers.

17.    I found it unusual that NBME was able to allot 2 days  for the taking of the official exam at the Prometric Center , USMLE CK 2, but was unable to do so for their own practice exam, the CCSE at the Prometric Center.

18.    From my standpoint the CCSE was just as important as the USMLE CK 2 because it was a condition precedent imposed by AUA for the taking of the USMLE CK 2.

19..    NBME further stated that if AUA were able to locate a site tin the USA hat would  allow me to take the  exam over a 2-day period they would furnish a proctor.

20.    AUA was unable to furnish a site for the taking of the exam over a 2-day period and proposed instead the alternative of double time with breaks in between for completion of roughly 11 plus hours straight.  As is set forth in my First Amended Complaint there were problems in taking the exam as the time kept running during the breaks and the long period of time sitting in an awkward position and staring at a computer screen caused pain and fatigue and interfered with my level of concentration and ability to read and decode information.

21.    Upon notifying AUA of the aforementioned problems the school through Registrar Booth characterized my accommodation problems as "personal" and noted that they could nó longer accommodate me, notwithstanding the fact that they were fully aware that adequate accommodation required 2 days to complete the exam.

22. Registrar Booth's letter was followed up by one from a Dr. H.R. Morcos, Chair of Promotions Committee who indicated that my dismissal on July 5th, 2016 was based on my failure to meet the terms of readmission, and gave a deadline for appealing.

23. Despite having filed an appeal within the deadline established nothing was heard from the University. That appeal noted that I had until June 2017 to complete my Degree and that my dismissal for purportedly failing to complete the terms of readmission was premature. I did not even calculate into that time period the delays by AUA in offering clinical rotations (almost 2 years) and the delays occasioned by their inability to facilitate adequate accommodation on past shelf exams causing me to constantly having to retake those exams.

24. AUA also violated US Justice Department regulations by requiring me to obtained a second test in order to justify extending the requested accommodation

I declare under penalty of perjury that the foregoing is true and correct.

/s/Debbie-Ann Bromfield-Thompson
Debbie-Ann Bromfield-Thompson

March 3rd, 2020

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

DEBBIE ANN BROMFIELD THOMPSON
1405 Kennedy Street, NW
Washington, DC 20011

Plaintiff,

v.

AMERICAN UNIVERSITY OF ANTIGUA/
MANIPAL EDUCATION AMERICAS, LLC,
s/h/a GCLR, LLC
1 Battery Plaza, 33rd Fl.
New York, NY 10004

and

NBME
3750 Market Street
Philadelphia, PA 19104

Defendants.

No. 19-CV-6078

**PLAINTIFF DEBBIE-ANN BROMFIELD-THOMPSON'S FIRST AMENDED COMPLAINT**
**(Discrimination in Violation of the Rehabilitation Act and the American with Disabilities Act)**

**NATURE OF THE ACTION**

**1.** This is an action seeking redress for the unlawful discrimination on the basis of disability committed by American University of Antigua/Manipal Education Americas, LLC an offshore medical school located on the Island of Antigua ("AUA") which has corporate offices in the United States of America, and specifically in New York City. AUA continuously failed to reasonably accommodate Plaintiff for her dyslexia disability in the taking of her exams including the CCSE practice exam). Dyslexia is a specific learning disability that is neurological in origin. It is characterized by difficulties with accurate and/or fluent word recognition and by poor

spelling and decoding abilities. These difficulties typically result from a deficit in the phonological component of language that is often unexpected in relation to other cognitive abilities and the provision of effective classroom instruction. Secondary consequences may include problems on reading comprehension and reduced reading experience that can impede growth of vocabulary and background knowledge. **Definition of the International Association of Dyslexia.** Thus, insufficient time to decode and read are the bane of any dyslexic student's existence. This action also includes causes of action against National Board of Medical Examiners (NBME) which knowingly failed to extend reasonable accommodation. DespitePlaintiff's dyslexia impediment, she graduated *magna cum laude* with a B.S. in Biology from Howard University and had attained a GPA of 3.65 out of 4.0 at the time of her dismissal from AUA and was only 3 credit hours shy of obtaining her MD Degree.

2. At the time Plaintiff started at AUA there was no policy or rules in place for the taking and passing of practice exams prior to taking the NBME required exams prior to application for medical residencies.

3. In the midst of her clinical rotations AUA instituted a new policy requiring passage of an exam denominated the CCSE exam as a condition precedent for the taking of the official USMLE Step 2 CK, which passage is required prior to applying for a medical residency.

4. Under rules promulgated by AUA Plaintiff was required to attain a score of 79 on the CCSE exam, but there was no limit imposed on the number of times she was allowed to sit the exam. (Exhibit 1).

5. Plaintiff was dismissed from AUA after she complained that the accommodation accorded her for the taking of the CCSE exam was not reasonable. (Exhibit 2) Plaintiff was just three credit hours shy of graduating at the time of her dismissal on July 5th, 2016 and had attained a GPA of 3.65 out of 4.0.This action also includes state claims for breach of the New York City and State Human Rights Law, breach of contract, intentional/negligent infliction of

emotional distress, and violation of the tort of good faith and fair dealing

6. The National Board of Medical Examiners ("NBME") is the official body responsible for sponsoring exams that will lead to the licensing of physicians in the United States and Canada. The NBME sponsored the practice exams taken by Plaintiff and assigned a proctor for the taking of the CCSE practice exams on at least 5 occasions with full knowledge that the accommodation extended was unreasonable given that the NBME in sponsoring the similarly official exam extends wholly different terms and conditions reflecting the consensus in the medical, legal, and scientific community that "reasonable accommodation" meant that dyslexic students ought to be extended 2 days for the taking of the exam. Upon information and belief, NBME assigns proctors for the same exam to medical students attending onshore medical schools. Plaintiff was required to complete the practice exam in one day over an 11-hour period, but when NBME assigns proctors to onshore schools for dyslexic students the exam is given over a 2-day period.

7. The Rehabilitation Act and the American with Disabilities Act expressly prohibit discrimination on the basis of disability. *See* 29 U.S.C., Section 794, *et seq.,* and 29 U.S.C. Section 705 (201), stating that "no otherwise qualified individual with a disability in the United States, as defined in section 7(20) )29 U.S.C. Section 705 (201), shall, solely by reason of her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal assistance....". Section 29 U.S.C. 794 (a), *et seq.,* "is enforceable through Title V1 of the Civil Rights Act of 1964 which provides (*inter alia)* for the termination of federal assistance to recipients who discriminate in violation of Section 504" of the Rehabilitation Act. Likewise, defendants have violated the American with Disabilities Act of 1990, as amended by the ADA Amendment Act of 2008 which prohibits discrimination on account of disability which substantially limits one or more major life activities.

Case 20-3855, Document 39, 02/26/2021, 3047207, Page43 of 90

As is set forth in this Complaint Plaintiff suffers from dyslexia, a disability that substantially limits her ability to read and learn.

8. Plaintiff further grounds her Complaint on common law breach of contract, intentional and or negligent infliction of emotional distress, and contractual/tort breaches under the doctrine of good faith and fair dealing5

9. Plaintiff brings this action against American University of Antigua and its agent Manipal Education America, LLC, s/h/a GCLR LIC based on discrimination disability in violation of the Rehabilitation Act, the American With Disabilities Act, the New York State and City Human Rights Act, and other state common law claims.

10. Plaintiff's action against NBME is based on violations of the American With Disabilties Act, the Rehabilitation Act, and the New York State and City Human Rights Acts..

**PARTIES**

11. Plaintiff Debbie-Ann Bromfield-Thompson is an adult resident of the United States, residing in Washington, D.C. At all times relevant to this Complaint, Plaintiff suffered from a disability recognized under the Rehabilitation Act, the American With Disabilities Act, and the New York State and City Human Rights Act. At the time Plaintiff applied to AUA as a transfer student she resided in Washington, D.C. and has continued her residence throughout her tenure at AUA up to the date she was dismissed from the University on July 5th, 2016.

12. Defendant AUA is an offshore medical school headquartered offshore in the country of Antigua. Students attend the Antigua campus for two years to take courses in Basic science after which they relocate to the United States for their clinical rotations, known as Clerkships. Plaintiff was accepted as a transfer student and at no point ever visited the Antigua campus let alone take any courses on that Island. The clinical part of the program is supervised and regulated from AUA 's New York City office located at 1 Battery Plaza, New York, NY 10004. Plaintiff had attended St. Matthews University School of Medicine for her 2 years of basic

science courses after which she transferred to AUA exclusively to complete her clinical rotations also known as clerkships. Upon completion of their clerkships students sit for a series of licensure exams administered by the NBME before applying for residencies at hospitals located throughout the United States and Canada. AUA recruits and accepts students from colleges and universities throughout the United States, including New York State.

13. All of Plaintiff's clinical assignments emanated from AUA's clinical offices at 1 Battery Plaza, New York, NY 10004. When Plaintiff was first admitted to AUA, she commenced her first clinical rotation at Wycoff hospital in New York City in the Fall of 2010. Tuition payments for her clinical courses were sent to AUA's offices in New York City. All her clinical coordinators with whom she interacted by email and telephone worked out of AUA's offices in New York City. These coordinators included the following persons, all of whom were located in AUA's New York City office: Antonia Craig, Corey Greenberg, Maria Cepeda, Maria Pimentel, Dan O'Connell, Cory Lederman. Plaintiff also interacted extensively with Dr. Peter Bell, Executive Dean Clinical Services, who was also located at 1 Battery Park Plaza, in New York City (Exhibit 3). Similarly, Plaintiff had significant contacts with Craig Hauser, Associate Vice President for University Administration, who was located at the same New York City address as Dr. Bell. Throughout the years Plaintiff had exchanged perhaps hundreds of emails with these various coordinators and other personnel, all of whom worked in AUA's New York City office, in addition to numerous telephone calls. AUA's New York City office had also established Skype technology to allow students on designated days to speak with their assigned coordinator at their New York City office.

14. AUA states the following on its website: "AUA is similarly approved by the New York State Education Department, which entitles its students to engage in clinical clerkships and residency training in the State" (Exhibit 4 ). AUA's website does not suggest that this approval

was granted solely to its Antigua facility. It is reasonable to conclude that such approval was granted because AUA had physical facility from which it operated within New York State.

15. AUA submitted to the jurisdiction of the United States Department of Education, Office of Civil Rights, located in New York City, which noted "The University is a recipient of financial assistance from the Department. Therefore, OCR has jurisdictional authority to investigate this complaint under Section 504". (Exhibit 5). OCR's jurisdiction was exercised because AUA had its office in New York City.

16. There were voluminous correspondence between Plaintiff and AUA's personnel in New York City concerning her accommodation for the exam which is the subject of this lawsuit. ( Exhibits 6 through 11). These correspondences represents a small fraction of what is in Plaintiff's possession listing AUA's and MEA's addresses in New York City and stating as follows: "MANIPAL EDUCATION AMERICAS, LLC AGENTS FOR **AUAMED.ORG** AMERICAN UNIVERSITY OF ANTIGUA COLLEGE OF MEDICINE". Some listed correspondence used the term "Representative" as opposed to the term "Agent". (Exhibits 6-11).

17. The setting up of the exam was done by AUA's New York City office which coordinated with NBME on site selection and the duration of the exam.

18. Upon information and belief, AUA has a service agreement with MEA which contains a New York forum selection clause.

19. Plaintiff had minimal contact with personnel in AUA's Antigua office, except that on two separate occasions Plaintiff was instructed to transmit her psychological report to Dr. Rice in Antigua who would in turn interacted with personnel in New York City regarding Plaintiff's request for accommodation.

20. On October 8th, 2019 Plaintiff served AUA/Manipal Education Americas, LLC/s/h/a GCLR, LLC with Plaintiff's Complaint. The name of the individual accepting service was "Anita

Case 20-3855, Document 39, 02/26/2021, 3047207, Page46 of 90

O'Brien, Legal Department, who is designated by law to accept service of process on behalf of American University of Antigua Manipal Education Americas, LLC/s/h/a GCLR, LLC". (Exhibit 12).

21. NBME is a private, non-profit organization with its principal office located in Philadelphia, Pennsylvania. NBME, along with State Medical Boards sponsors the United States Medical Licensing Examination ("USMLE"), a licensing examination for prospective doctors. NBME falls under the requirements of section 309 of the American With Disabilities Act of 1990 ("ADA"), 42 U.S.C. Section 12189, et seq., and its corresponding regulations, 28 C.F.R. 36.09. NBME is also subject to the New York State and City Human Rights Acts by virtue of sponsoring licensing exams within New York State and New York City through testing centers and at medical colleges and universities. The NBME also sponsors practice and other exams on behalf of medical colleges and universities with medical programs throughout the country. Many of these exams, as for example, the CCSE, are designed to aid students in preparing for the official USMLE Step 2 CK exam. Medical schools, including AUA, use the results from these practice exams to make up part of students' grades. The practice exam which is the subject of this lawsuit made up 20% of Plaintiff's grades. Moreover, failure to attain a passing grade on this exam (the CCSE) subjected Plaintiff to dismissal.

22. The NBME in arrangement with AUA agreed to sponsor Plaintiff's taking of the exam under conditions NBME knew was not "reasonable accommodation". This is so because the NBME in sponsoring the similarly official exam extends wholly different terms and conditions to dyslexic students who take the exam, where as here, NBME claimed that it lacked the ability to offer same or similar exam taking terms and conditions for the practice exam, but nevertheless entered into an agreement with AUA to administer the exam with conditions that were not reasonable. (Exhibit 13). Although NBME does not itself grant the accommodations of the

CCSE exam they play a significant role in its implementation in conjunction with the prometric test centers around the country. (Exhibit 13 A). In Plaintiff's case, they coordinated extensively with AUA in New York City to put in place accommodations that NBME knew was unreasonable.

23. AUA's website states the following "The American University of Antigua (AUA), is part of the Manipal Education and Medical Group is a medical school founded in 2004 with the mission of addressing the growing shortage of physicians in the United States. With the support of Manipal University, AUA has developed into a hub of international education". Thus, AUA's own website describes AUA as part of MEA . AUA's numerous correspondence to Plaintiff lists the addresses of AUA and MEA as: One Battery Park Plaza, 33rd Floor, New York, NY 10004. These correspondence also described the relationship between AUA and MEA as ffollows: "Manipal Education Americas, LLC *agents* for [**auamed.org**] American University of the Antigua College of Medicine". In fact, both AUA and MEA shares the same address at 1 Battery Park Plaza, 33rd Floor, New York, NY 10004. In other correspondence, the word "agent" is sometimes substituted by the word "representative": "Manipal Education Americas, LLC Representative for American University of Antigua College of Medicine". Many of the emails received from AUA has the following warning which reads in part" "Manipal Education of Americas, LLC agent for American University of Antigua College of Medicine, and any of its subsidiaries each reserve the right to monitor all email communications through its networks". (Exhibits 6-11).

## JURISDICTION

**This Court has jurisdiction pursuant to 28 U.S.C. Section 1331, et.seq**

Plaintiff realleges paragraphs 1 through 20 as if fully set forth herein

24. Plaintiff seeks declaratory relief as authorized by 28 U.S. C. Sections 2201 and 2202.

25. This Court may exercise jurisdiction over AUA and its agent, MEA, and NBME because defendant, AUA, has a principal United States office in New York City where it conducts

business throughout the United States.

26. AUA is also authorized by the United States Department of Education to allow its students to apply for federally guaranteed student loans.

27. NBME is headquartered in Philadelphia, Pennsylvania but does substantial business in New York City and other states by sponsoring and proctoring various exams on behalf of medical schools and colleges including the practice exam (CCSE) which is the subject of this lawsuit. (Exhibit 13A).

28. AUA is also authorized by the United States Department of Education to allow its students to apply for federally guaranteed student loans.

29 This Court has personal jurisdiction over AUA and its agent, MEA and NBME pursuant to the laws of New York State and as well as Federal Rules of Civil Procedure 4(k)(1)(B) and 19. AUA and its agent/MEA, as well as NBME regularly transact business in New York State. The scope of NBME's substantial business transactions in New York City and State may be elicited through jurisdictional discovery if permitted by the Court. In any event, NBME coordinated with AUA's New York City office with respect to test taking accommodations for Plaintiff on at least fourteen different occasions prior to Plaintiff's dismissal. Upon information and belief, AUA paid NBME for their testing services.

30. Venue in this Court is proper under 28 U.S.C. Section1391 as a "substantial part of the events or omissions giving rise to the claim occurred" within this jurisdiction. Although Plaintiff sat the practice CCSC exam at a site in Virginia sponsored by NBME and agreed upon by AUA , the decision to admit Plaintiff to the medical school came from AUA's New York's administrative office; the interactions between Plaintiff regarding clinical selection sites and other decisions occurred with personnel from AUA's New York office; the setting up accommodations for exams and negotiations for such accommodations came from AUA's New

York office; the initial decision to terminate Plaintiff from AUA came from or through AUA's New York office.

31. In the Fall of 2010 Plaintiff attended an orientation sponsored by AUA in New York City and completed her first clinical course work at AUA's assigned facility in New York City. Plaintiff has never visited or attended any courses at AUA's campus located in the country of Antigua.

32. Plaintiff's received her dismissal letter from Kristal Booth, AUA's Registrar. (Exhibit 14).

33. Plaintiff also received a followup letter from Dr. Morcos, noting that Plaintiff was dismissed because she had failed to "meet the conditions of readmission". (Exhibit 15 ).

34. Plaintiff, in response expressed her "shock" to having received a letter from Dr. Morcos because "I have had no dealings with anyone in Antigua on the issues that precipitated my dismissal". (Exhibit 16)

35. Plaintiff also filed an appeal of her dismissal in the time allotted her to appeal. However, AUA never responded to the appeal. (Exhibit 17)

36. Plaintiff did file a complaint with the Department of Education Office of Civil Rights which ruled adversely to Plaintiff. That ruling was appealed but no decision has been issued in almost three years. The exhaustion of administrative remedies is not a condition precedent to the filing of the instant lawsuit.

## FACTUAL ALLEGATIONS

37. On January 5th, 2010 AUA admitted Plaintiff to its medical school as a 5th semester transfer student from St. Matthews University, an off shore medical school located in the Cayman Islands. Although she was accepted for the May 20th, 2010 semester, her admission was deferred until the Fall of 2010 because AUA was unable to grant her request to start pre-clinical rotations at their New York City site which was closer to her Washington, D.C. residence.

38. On December 14th, 2010 Plaintiff sought accommodation for the taking of the ICM shelf exam. AUA was unsure about what to do because it was the first time a student had requested

accommodation to take the ICM exam, and they had no department or personnel on board in the United States to handle accommodation requests. It was suggested that she contact Dr. Rice in the country of Antigua because he was the person who taught a psychology course at that site. Plaintiff contacted Dr. Rice and sent him via facsimile a 20-plus report from her psychologist detailing her need for accommodation. Plaintiff took and passed the ICM exam after Plaintiff was granted accommodation of time and a half.

39.     Plaintiff waited roughly seven months to obtain her next rotation because AUA did not have sufficient sites for its clinical rotation in the United States. Plaintiff began this clinical rotation in Family Medicine at Maryland General Hospital in July 2011 which ended in October 2011.

40.     Plaintiff was scheduled to begin her next clinical rotation in November 2012, a wait of a little more than a year because AUA had limited sites. Prior to the start of the clinical rotation Plaintiff was contacted by her clinical coordinator, Maria Pimentel, who told her that the rotation had to be cancelled in favor of students whose graduation was imminent. Plaintiff was not assigned any clinical rotation (Pediatrics) until September 2012, an eleven month wait.

41.     Because AUA had few sites for clinical rotations Plaintiff sought and was able to obtain clinical rotations on her own accord. For example, Plaintiff obtained clinical rotations on her own from Franklin Square Hospital in Baltimore, Maryland and from Union Memorial Hospital, in Baltimore, Maryland. Thus, even though Plaintiff began attending AUA for her clinical programs beginning Fall 2010, she was only assigned 2 clinical rotations by AUA in a 2-year span.

42.     By the time AUA started assigning clinical rotations to Plaintiff on a consistent basis the school had changed its policies by instituting a requirement that all students should sit for the shelf exams and the Comprehensive Clinical Shelf Exam (CCSE). These are exams that were to be taken at the end of core clinical rotations.

43. When Plaintiff became eligible to take her shelf exam in Family Medicine, Plaintiff discovered that no arrangements were made for her accommodations, despite the fact that AUA had a 20-page report detailing the need for accommodation on file. When she asked that the exam be re-scheduled she was told that AUA did not receive the notice in time to do so. Plaintiff took the exam without accommodation, and failed.

44. Plaintiff notified Executive Dean of Clinical Studies, Dr. Bell, about AUA's failure to recognize that she needed accommodation even though she had submitted a report to them. Plaintiff retook the exam and passed with a score that exceeded the minimum score required by AUA. The same was true with respect to the OB/GYN exam where upon being given accommodation (time and a half) Plaintiff's passing grade exceeded the minimum score required by AUA.

45. As a result of Plaintiff's complaints regarding her accommodation, AUA instituted a new policy to the effect that students seeking accommodation were required to notify the administration within 5 business days from the start of any clinical rotations. Plaintiff was also required to pay extra monies to AUA in order to be accommodated.

46. On June 11th, 2015 Plaintiff was administratively withdrawn from AUA. The reason for the withdrawal was vigorously disputed. AUA contended that Plaintiff had to be withdrawn because a student who has been inactive for more than "6 months is subject to administrative withdrawal". Plaintiff challenged the withdrawal because her second child was born in June 2015 and in the period leading up to the birth she was unable to travel for clinical rotations.

47. On June 17th, 2015, AUA re-admitted Plaintiff to the medical school, but set forth the condition that Plaintiff complete the remaining requirements for graduation no later than "March 31, 2016", a daunting schedule given AUA's unreliability in arranging for accommodations and assigning sites for clinical rotations.

48. AUA also conditioned Plaintiff's re-admission on passage of the Clinical Science

Comprehensive Examination (CCSE) with a score of at least 79 in order to be certified to take the USMLE Step 2 CK. Pursuant to AUA's written policy at the time Plaintiff was able to sit the exam for an unlimited number of times until passage. The policy was later modified to limit to three attempts students who entered their 4th year in 2015, **but this did not apply to Paintiff.** According to AUA, failure to satisfy the requirements by the set date would result in dismissal.

49. The new requirements imposed by AUA were not in effect at the time Plaintiff enrolled with the school. Plaintiff was of the belief that AUA was planning to retaliate against her for having vigorously advocated for reasonable accommodation.

50. Plaintiff took the exam on three different occasions - 8-22-2014, 10-24-2014, and 8-28-2014, and was unsuccessful because she was accommodated with one and a half times the duration of the regular exam.

451 Recognizing that her failures had nothing to do with her level of preparation Plaintiff contacted Dr. Bell, the Executive Dean of Clinical Studies in New York City, who advised her to c ontact Dr. Rice in the country of Antigua.

52. Plaintiff wrote Dr. Rice seeking double time, who in turn responded that she needed to justify the request with recent testing certifying that she was dyslexic. To expedite the process, Plaintiff sen a letter to Dr. Rice from her clinical psychologist justifying the need for double time. Dr. Rice agreed to grant the request provisionally, pending receipt of the full report. Dr. Rice's approval came too late for Plaintiff to take the CCSE exam with double time. The full report from Dr. Rachna Varia was sent via facsimile to Dr. Rice in October 2015.

53. On November 25th, 2015 Plaintiff took the CCSE exam for the first time with double time accommodation which was unlike the previous three attempts which gave her one and a half extended time. Plaintiff sat the exam for 9 straight hours without any breaks in between and

suffered excruciating pain in her feet in the last two hours of the exam resulting in Plaintiff guessing a significant numbers of answers just to get through the exam. According to the proctor at the NBME sponsored site she was not allowed to take breaks.

54. After Plaintiff was notified that she did not attain the required score on the exam Plaintiff contacted NBME directly to complain about the conditions under which she had previously taken the exam: either not being given sufficient time or in the one instance when she was given double time she got no breaks during the exam.

55. NBME explained that the official exam is given over a 2-day period and suggested that Plaintiff contact AUA to determine whether AUA would be willing to find a site where Plaintiff could take the exam over a 2-day period. NBME promised that it would send a proctor.

56. On January 15th, 2016 Cheri Kershen, Manager NBME Test Administration, copied Plaintiff on a letter she had sent to AUA describing the procedures under which Plaintiff was able to sit the CCSE exam over a 2-day period. According to Ms. Kershen, AUA could attempt to make arrangements with an NBME approved site for Plaintiff to sit the exam.

57. AUA was unable to locate an approved site. Dr. Bell referred Plaintiff to AUA's Ombudsman who had no understanding whatsoever as to the issues. Dr. Bell had also referred the matter to Dr. Juli Valtschanoff, AUA's Chief Proctor who stated in an email to Plaintiff that he was unable to locate a site for the taking of the exam over a 2-day period, and advised Plaintiff in an email to "take the exam like any other student needing "accommodation".

58. Because of AUA's delays in figuring out how to grant the accommodation, Plaintiff was butting up against the March 31st, 2016 deadline imposed pursuant to the grant of her re-admission to AUA. Consequently, Dr. Bell extended the deadline for completion to July 31st, 2016.

59. It took AUA 8 months from the time of Plaintiff's last unsuccessful attempt (November

25th, 2015)to sit the CCSE exam to reschedule the exam with breaks, which took place on July 1st, 2016.

60. NBME arranged with AUA and the Prometric Center located in Virginia to add more than double time to the exam to enable Plaintiff to take breaks The way this plan was designed to work was that an extra one hour and four minutes would be built into the exam to enable Plaintiff to take breaks. However, the exam would not stop running during these breaks.

61. On July 1st, 2016 Plaintiff took the exam and sat for 11 hours at a desk which had a large metal sheet underneath which blocked her from stretching her legs. When Plaintiff took breaks the exam would continue to run and when she returned the screen would go blank. Each time Plaintiff would notify the Proctor of the problem whereupon she would call in to the technical department for assistance. Appellant had to keep a mental time of her breaks as she was not allowed to wear a watch. The exam had its own time on the screen but it kept running when she left for breaks. Each time Plaintiff returned from a break she had to be patted down, an event that caused her to panic even more because these extra delays caused time to run even more.

62. Despite the extra time Plaintiff experienced fatigue and pain which convinced her even more that this practice CCSE exam ought to have been given under the same conditions as the official exam: 2 days with breaks in between with the clock stopped during breaks.

63. At the end of the exam the Proctor gave Plaintiff a card to to call in the event any issues arose concerning the exam. According to the proctor someone from Prometric would be able to verify the issues that arose in the exam. However, there is no indication that anyone from AUA contacted the Prometric Center in response to Plaintiff's complaint regarding difficulties in taking the exam.

64. Plaintiff received a score of 72 on the exam.

65.     Plaintiff had sent a letter to AUA explaining that the decision to  have her sit an exam for

an 11-hour period with breaks while the exam ran was unreasonable: she received the following

letter from Kristal Booth, Registrar for AUA: " I am sorry to hear of the personal issues you faced

with this exam. AUA's efforts (along with NBME and Prometric) to accommodate your testing

needs have been more than reasonable and unfortunately we are unable to accommodate

another attempt at this exam.  This email is to confirm that based on your recent score, you

have been dismissed from the University.  You will receive a formal letter of dismissal from the

promotions Committee within 1-2 days".  If you wish to appeal this decision, you may do so at

this time." (Exhibit 14).

66.     Plaintiff responded to Registrar Booth's email by noting that this was the first time AUA

had given her a "halfway decent...but less than ideal accommodation" with respect to the CCSE

practice exam.  Plaintiff accused the school of basing its approach to accommodation on "trial

and error".  Plaintiff characterized the the efforts of accommodating her as "flawed" because of

the failure to accommodate her over a 2-day period as was recommended by NBME.

67.      Plaintiff appealed AUA's decision to dismiss her from the medical

school.  On July 17th, 2016 the AUA Appeals Committee acknowledged receipt of the appeal.

However, the merits of Plaintiff's appeal was never addressed.

68.     At the time Plaintiff was dismissed from AUA she was indebted in excess of $200,000.00

in student loans associated with pursuit of her medical degree.

69.     Plaintiff has struggled to keep her loans current and is behind in payment on one loan

and is paying lesser sums onto other under a deferment program.

70.     Plaintiff has suffered extreme emotional distress as a result of AUA's conduct at a time

when Plaintiff was just 3 credit hours shy of completion and had maintained a GPA of 3.65.

Plaintiff was preparing for residency and had obtained excellent evaluations for inclusion in her

application.

71. Plaintiff is a wife and mother of two children who always wanted to become a doctor but that ambition is gradually slipping away as a result of AUA's callous conduct.

## FIRST CLAIM FOR RELIEF

### Violation of the Rehabilitation Act (against AUA/MEA )

72. Plaintiff realleges pagraphs 1 through 66 as if fully set forth herein.

73. Section 504 of the Rehabilitation Act, 29 U.S.C., Section 794 provides that:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or captivity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

74. Because dyslexia limits at least one of Plaintiff's major life activities Plaintiff is a69 individual with a disability under the Rehabilitation Act as set forth in two psychological reports that were furnished to AUA.

75. AUA is a recipient of federal FASFA loans on behalf of its students and therefore is covered under the Act.

76. Plaintiff was able to pass all her exams when she was reasonably accommodated with the appropriate time duration., abet she had to proactive in ensuring her own accommodations.

77. When Plaintiff realized that she was encountering problems with the CCSE exam she wrote to Doctor Rice explaining that the 1.5 hours accorded in previous exams was unworkable because of the complexity and length of the CCSE exam.

78. Although AUA consented to extend double time for the CCSE exam they claimed that they were unable to arrange a suitable site for Plaintiff to sit the exam over 2 years.

79. In fact, one AUA administrator told Plaintiff that she should sit the exam like any other "accommodations" student.

80.. Plaintiff takes the view that the school made very little effort to find a suitable site for the

taking of the exam over a 2 day period as they believed that agreeing to grant double time marked the end of their responsibility to extend reasonable accommodation.

81. Plaintiff had to sit for 11 hours in the taking of the exam when the official exam is given over a 2-day period. The conditions under which the exam had to be taken was outrageous (11 hours with breaks in between while the exam ran) and did not constitute "reasonable accommodation" contemplated by the Rehabilitation Act.

82. AUA/MEA, LLC and NBME are jointly and severally liable to Plaintiff for failing to provide reasonable accommodation.

**SECOND CLAIM FOR RELIEF**

**VIOLATION OF THE AMERICAN WITH DISABILITIES ACT**
**(as to AUA/MEA and NBME)**

Plaintiff realleges Paragraphs 1 through 77 as if fully set forth herein.

83. The American with Disabilities Act, 42 U.S.C.Section 12101, *et seq.,* prohibits discrimination against qualified individuals because of a disability.

84. Dyslexia substantially limits at least one of Plaintiff's major life activities, learning and taking exams.

85. NBME and AUA were well aware that the official exam was given over a 2-day period and NBME should never have agreed to offer the exam to Plaintiff to sit for a 11-hour period in one day, especially considering the terms and conditions agreed to by NBME in its settlement with the United States Department of Justice with respect to setting exam conditions for disabled and dyslexic students which are posted on both the websites of the United States Department of Justice and that of NBME.

86. AUA intentionally imposed arbitrary deadlines for the completion of Plaintiff's Degree knowing that through their own failures Plaintiff was unable to obtain clinical sites to complete various courses. Arbitrary deadlines imposed for test-taking are expressly

prohibited by United States Justice Department regulations/guidelines.

87. AUA's deadlines were designed to punish Plaintiff for having been proactive in securing accommodation for her exams. In fact, the Registrar's dismissal letter stated that AUA had accommodated Plaintiff enough.

88. Both AUA/MEA, LLC and NBME are covered by the ADA and they knew that requiring Plaintiff to sit an exam over an 11 hour period in one day with built-in breaks while the exam kept running did not constitute reasonable accommodation, and they are therefore jointly and severally liable to Plaintiff.

89. Although Plaintiff has been terminated from AUA Plaintiff still has standing to sue NBME as the matter is capable of repetition should Plaintiff prevail in her claims against AUA as there is no other entity through which Plaintiff would be able to sit the CCSE and or the USMLE as NBME enjoys a monopoly on the entire market for medical school exams.

90. Both AUA and NBME action caused injury to Plaintiff and they are both jointly and severally liable.

**THIRD CLAIM FOR RELIEF**

**Breach of Contract: Express and or Implied**

**(against AUA/MEA/NBME)**

Plaintiff realleges paragraphs 1 through 83 as if fully set forth herein.

91. Plaintiff was falsely enticed to enroll at AUA by promises that AUA had numerous clinical sites scattered around the United States for the completion of course work required to graduate.

92. AUA had few sites available causing Plaintiff to wait for long stretches to enroll in rotations. Over a 2-year period AUA was able to find Plaintiff just two clinical sites.

93. AUA breached its contract with Plaintiff by sending Plaintiff termination letters stating that it was unable to further accommodate plaintiff and by claiming that Plaintiff failed to complete

course work for graduation within a specified time.

94. The long waits for clinical sites were the fault of AUA, not Plaintiff, and therefore no arbitrary setting of deadlines to complete course work should have been instituted. Between waiting times for clinical sites and struggles with the clinical staff in New York City for obtaining accommodation, Plaintiff experienced delays of almost 3 years from the date she started with AUA in the Fall of 2010. This is borne out by written communication between AUA and Plaintiff which are in Plaintiff's possession. AUA had first set March 31, 2016 as deadline for completion of all course work, but latef changed the date to a July 31st, 2016 deadline because it struggled in furnishing accommodation for the CCSE exam.

95. AUA consistently and arbitrarily changed the terms of Plaintiff's agreement with the university by revising and adopting new rules and regulations that altered its previous promises to Plaintiff.

96. Although AUA had ultimately fixed July 31st, 2016 date for Plaintiff to complete all course work, it nevertheless terminated Plaintiff from the school on July 5th, 2016, almost a month prior to expiration of its own deadline.

97. AUA's breach of contract left Plaintiff with astronomical student loan payments with little opportunity to earn a good enough living to pay back these loans.

98. Plaintiff was a third-party beneficiary of the agreement between AUA and NBME with respect to the implementation of accommodations' requirements for sitting the CCSE exam, therefore, NBME had a duty to ensure that proper conditions and accommodations were implemented for the taking of the exam.

**FOURTH CLAIM FOR RELIEF**
**(against AUA and MEA)**

**Breach of the Duty of Bad Faith and Fair Dealing and Violation of Due Process**

Plaintiff realleges paragrpahs 1 through 98 as if fully set forth herein.

APP. 56

99. AUA's acted in bad faith by breaching its duty to act fairly and in good faith.

100. Plaintiff did not receive the bargained for education. At the time Plaintiff was abruptly terminated she had a 3.65 GPA and was only 3 credit hours shy of graduating.

101. AUA knew that Plaintiff required accommodation with respect to the taking of exams but Plaintiff rarely was accorded accommodation without a struggle.

102.. In fact, Plaintiff was required to pay for the privilege of being accommodated by finding extra funds to subsidize appropriate rooms for the taking of the exams.

## FIFTH CLAIM FOR RELIEF
## (against AUA and MEA)

## Intentional/Negligent Infliction of Emotional Distress

Plaintiff realleges paragraphs 1 through 102 as if fully set forth herein.

103. AUA's conduct was extreme and outrageous causing Plaintiff severe emotional distress.

104. This distress took the form of loss sleep, loss of appetite and loss of weight.

103. Plaintiff has continued to suffer emotional distress from AUA's conduct.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter Judgment in favor of Plaintiff and against AUA and NBME and award the following relief:

a. Declaratory relief, including but not limited to a declaration that AUA discriminated against Plaintiff in violation of the Rehabilitation Act.

b. Declaratory relief, including but not limited to a declaration that AUA, its agents and NBME discriminated against Plaintiff by failing to grant reasonable accommodation under said Act.

c. Appropriate injunctive relief, including but not limited to Plaintiff's reinstatement to AUA and an order restraining AUA/NBME from engaging in any further discrimination against Plaintiff.

d. Removal of any and all derogatory information contained in Plaintiff's student record that is connected to her dismissal and efforts to seek reasonable accommodation.

e. Ordering AUA/NBME to facilitate the taking of the CCSE exam over a 2-day period.

f. Ordering AUA to immediately reinstate Plaintiff to the medical school so that she can (1) complete her remaining rotation to earn 3 credits for eventual graduation, and (2) requiring that both AUA and NBME to arrange for Plaintiff to sit the CCSE exam over a 2-day period, at a suitable onshore facility, failing which Plaintiff shall be permitted to sit for the USMLE CK 2.

g Compensatory and consequential damages for breach of contract and emotional distress.

h. Punitive damages against AUA and MEA..

i. Pre-judgment and post-judgment interest at the highest lawful rate

j. Attorneys' fees and cost of this action;

k Any such further relief the Court deems appropriate.

Respectfully submitted,

Debbie-Ann Bromfield-Thompson, *pro se*
1405 Kennedy Street, NW
Washington, DC 20011
Tel: 202-534-9164
Email: debibromfield@hotmail.com

# RE: Nbme Contact

Cheri Kershen <ckershen@nbme.org>

Fri 1/15/2016 4:11 PM

To: Craig Hauser <chauser@auamed.org>;

Cc: Bromfield Debbie-Ann <Debbie-Annb@auamed.net>; Bell, Peter <pbell@auamed.org>; Subject Exams <SubjectExams@NBME.org>; Nicole M. Smith <NSmith@nbme.org>;

Hello Craig,

I noticed from the attached email that Debbie-Ann spoke to the USMLE team regarding accommodations. Accommodations for the USMLE Program function differently than accommodations for the Subject Examination Program. Prometric currently is unable to provide two-day testing for subject examinations. However, subject examinations can be administered over a two-day period if administered at a medical school/institution.

As you are aware, American University of Antigua currently does not administer subject examinations at the medical school. If Debbie-Ann would like to take the CCSE at an institution where she is doing a rotation, that institution must currently administer subject examinations. Next, the Executive Chief Proctor (ECP) at AUA needs to make arrangements with the ECP of the other medical school/instituion with the understanding that both parties are responsible and liable for the administration of NBME examinations in compliance with all of the requirements outlined in the Procedures Manual for Executive Chief Proctors (ECPs) and with the knowledge that, in the event of a security breach, testing at both schools could be suspended from giving NBME Subject Examinations.

If both ECPs agree, the NBME will work with AUA and place the order for the exam and we will provide the proctor (at the other institution) with instructions for administering the exam.

Hope this information is helpful.

Cheri M. Kershen
Manager, Test Administration
Medical School Services
National Board of Medical Examiners
3750 Market Street
Philadelphia, PA 19104-3102
Phone: 215-590-9718
Fax: 215-590-9456
Email: ckershen@nbme.org

APP. 59

**From:** Craig Hauser [mailto:chauser@AUAMED.ORG]



Case 1:19-cv-06078-JMF Document 46 Filed 01/14/20 Page 24 of 31

AMERICAN UNIVERSITY of ANTIGUA
COLLEGE OF MEDICINE

8th July, 2016

Ms. Debbie-Ann Bromfield-Thompson
52 Hamilton St. NW
Washington DC, 20011
USA

Dear Ms. Bromfield-Thompson,

This letter is to inform you that you have been academically dismissed from the Medical Program. The reason for your dismissal is that you have failed to meet the conditions of readmission.

This decision was taken by the Promotions Committee as per the American University of Antigua's policy stated in the Student Hand Book.

You have the right to submit a written appeal of this decision to the Appeals Committee within seven (7) days of receiving this letter.

**Sincerely,**

**Dr. H. A. Morcos, MD, Ph.D**
**Chair of Promotions Committee**
**Professor & Chair of Pharmacology**
**American University of Antigua**
**College of Medicine**

EXHIBIT 15

# Re: Comp Exam

Bromfield Debbie-Ann

Tue 7/5/2016 11:39 PM

To:Kristal Booth <kbooth@AUAMED.ORG>;

Cc:Bell, Peter <pbell@auamed.org>; Sandra Sclafani <ssclafani@AUAMED.ORG>;

**Dear Ms. Booth:**

**This is the first time that any attempt has been made to given me a halfway decent but less than ideal accommodation for taking the exam. The school is in flagrant violation of the ADA. The accommodation given for the first 3 exams was for time and a half, and then I realized that something was wrong and could not complete the exam without guessing when the time was running out. I paid $3000.00 for a re-evaluation and the conclusion was that time and a half was insufficient. I was then given double time but the problem was that I was not given any breaks. The school's lawyer then arranged for me to take the exam for an extended period to allow me to take breaks if I needed to do so. I sat the exam for 11 + hours with breaks in between but it just did not work out because I was way too physically crippled for the last blocks. I have had to fight for every single accommodation I have received from the school. The times that I was given time and a half ought not to count because inadequate accommodation (one and a half times) is tantamount to no accommodation. In actuality I have only take the exam twice under a flawed attempt for double time. I resent your characterizing the problems I have encountered under the accommodation you extended as "personal issues". This is rank insensitivity from an administrator who clearly has no regard for the ADA. Clearly, the school's approach to accommodation is based on "trial and error." AUA does not understand what it needs to do to accommodate students. It is done grudgingly and the tone of your letter suggests that I should have been more grateful. Why should I be grateful for something to which I am legally entitled and for which I have had to fight hard to get? Can you or Dr. Bell or any of the other administrators sit for 11+ hours with quick breaks in between looking at a computer screen in a stationary position? I should never have agreed to the flawed proposal for me to take the exam, but I was trying not to be unreasonable. I have no choice at this juncture but to file a lawsuit under the ADA in the US District Court. I had placed my complaint with the US Department of Education on hold in light of the fact that you were attempting to accommodate me, but I will now revive my complaint. The US Department of Education contacted me several times to send them all the correspondence between AUA and myself just in case AUA's efforts at accommodating me did not work out. I kept delaying sending them the additional information because I wanted to give AUA the benefit of the doubt on this issue since the school's lawyer was purporting helping. I will now forward the additional information for their review and attention and possible prosecution of my claims. I foolishly thought that AUA was trying to work with me and I ignored the US Department of Education to send all the information immediately. You have punished me with dismissal because I complained about the adequacy of the accommodation.** For you not to stretch the exam over 2 days is cruel and unusual punishment. You were not able to accommodate me the way NBME recommended because you

APP. 61

Exhibit 2

icked a US site or any affiliation with a US school to satisfy NBME's terms. Given all of this, the ecision to dismiss me is shameful, disgraceful, and disgusting. Unless this hasty decision is escinded I will also retain my own counsel to seek injunctive relief, reimbursement of all my tuition ayments, and monetary damages and attorney's fees and cost for having suffered emotional istress. Believe me, there is no way I will accept this decision without legal and administrative ction.Please note that the new policy ( 3 times to take the exam) does not apply to me.

ebbie-Ann Bromfield-Thompson

rom: Kristal Booth <kbooth@AUAMED.ORG>
ent: Tuesday, July 5, 2016 4:01:38 PM
o: Bromfield Debbie-Ann
c: Bell, Peter; Sandra Sclafani
ubject: RE: Comp Exam

ood afternoon Debbie-Ann,

our email was forwarded to me from Ms. Sclafani. I am sorry to hear of the personal issues you faced while aking this exam. AUA's efforts (along with NBME and Prometric) to accommodate your testing needs have een more than reasonable and unfortunately we are unable to accommodate another attempt at this exam. This mail is to confirm that based on your most recent score, you have been dismissed from the University. You will eceive a formal letter of dismissal from the Promotions Committee within 1-2 weeks. If you wish to appeal this ecision, you may do so at that time.

est of luck to you in your future endeavors.

incerely,
ristal

---

**ristal Booth**
niversity Registrar

---

rom: Bromfield Debbie-Ann [mailto:Debbie-Annb@auamed.net]
ent: Tuesday, July 05, 2016 1:34 PM
To: Sandra Sclafani
Cc: Kristal Booth; Dr. Peter Bell
ubject: Comp Exam

ear Ms Sclafani:

Ms. Barnes of AUA's Registrar suggested that I contact you with respect to issues concerning my accommodations and he comp exam. I just received a 72 score after last Friday's sitting of the exam. This is below the minimum 79 passing core required by AUA. This is also the best score I have attained after having been extended accommodation that was etter than the previous ones. Despite this, I still had to be at the exam for 11+hours because this was the only ccommodation that was feasible. The actual USMLE Step 2 gives 2 days for the exam. The exam started off great

or me but as I approached the 8.5 hours everything went down hill fast. Sitting the exam this long I was unable to fully oncentrate for the last blocks as I suffered headaches /aches and pain. Often times when I returned from the breaks the xam would disappear from the computer screen causing me to panic. The screen would go back to my face screen to nter my CIN # several times during my exam. I thought that was a technical issue because the exam was not meant to e programed for over 11 hours. I was a little concerned if all my answers were recorded but the proctor reassured me hat everything should be fine.

hate to come off as a chronic complainer, but I do know that my issues had nothing to do with lack of studying, and verything to do with the suffering and concentration problems I encounter towards the end of the exam being so long. NBME officials and AUA found this to be the only solution but I never thought that being in an exam for over 11 hours would have been so mentally and physically crippling. This experience was draining, the proctors were concerned towards the last two blocks and asked me if I was ok and why is my exam so long. At times I found myself rying to read and comprehend the questions while massaging my legs from the pain. I honestly felt that I was going to get a DVT/PE. I tried to stand up and read the the questions but that just became awkward while trying to read questions. And I didn't want to be flagged for acting questionable during my exam. I was also accommodated by the proctor because the desk had a large metal sheet underneath which prevented me from stretching my legs out. The proctor allowed me to turn the monitor sideways which was not ideal but was better than keeping my legs bent. This was in the separate room.

I know this is the only solution since the exam couldn't be broken up into parts. I was reassured that the actual exam ( step 2 ck ) will be more "humane." What to do?" I just need to pass.

am now contemplating seeking some form of medication that will alleviate the pains/ headaches were I to re-sit the xam.. Is that really the solution? Maybe I should of forfeited the exam having so many issues that day but I was only thinking about needing to pass, all the support I have received and move on with my career/further.

I would appreciate any assistance you may render. Please feel free to make any suggestions. I have to apply for residency this year because of the time I took to have my children. Time is not on my side.

Thank you

Debbie-Ann

APP. 63

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DEBBIE ANN BROOMFIELD-THOMPSON

v.

AMERICAN UNIVERSITY OF ANTIGUA/MANIPAL EDUCATION AMERICAS, LLC A/K/A GCLR, LLC, AND NBME

Civil Case No.: 19-CV-6078 (JMF)

I, Augustus Wilson, hereby declare as follows:

On October 8, 2019 I entered the building where American University of Antigua/MEA was located (1 Battery Plaza, New York, NY 10004). I told the person in the lobby entrance that I had legal documents to serve. I was allowed to go upstairs to the authorized department. When I went upstairs I was met by a receptionist. I told her I had legal documents for American University of Antigua/MEA. She said let me go get someone who can accept those for you. That is when Anita O'Brien came out to the desk. The documents I gave to her were clearly captioned as court documents. She said nothing to the effect that she was not authorized to accept the documents. She accepted the documents and gave her name as Anita O'Brien.

I swear that this is a true and accurate account of the manner and method of service.

March 2, 2020

Augustus Wilson #2066221
1412 Broadway, New York, NY 10018



AO 440 (Rev. 06/12) Summons in a Civil Action (Page 2)

Civil Action No. 19-cv-6078 (JMF)

**PROOF OF SERVICE**

***(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))***

This summons for *(name of individual and title, if any)* American University of Antigua/Manipal Education Americas, LLC s/h/a GCLR, LLC

was received by me on *(date)* 10/04/2019 .

☐ I personally served the summons on the individual at *(place)* ______ on *(date)* ______ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* ______ , a person of suitable age and discretion who resides there, on *(date)* ______ , and mailed a copy to the individual's last known address; or

☒ I served the summons on *(name of individual)* Anita O' Brien, Legal Department, at 1:09 P.M. , who is designated by law to accept service of process on behalf of *(name of organization)* American University of Antigua Manipal Education Americas, LLC s/h/a GCLR, LLC on *(date)* 10/08/2019 ; or

☐ I returned the summons unexecuted because ______ ; or

☐ Other *(specify)*:

My fees are $ ______ for travel and $ ______ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: 10/8/19

*Server's signature*

Augustus Wilson/ Process Server# 2066221

*Printed name and title*

1412 Broadway
New York, NY 10018

*Server's address*

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 10-28-19

RECEIVED
SDNY PRO SE OFFICE
2019 OCT 28 AM 10: 17
S.D. OF N.Y.

Additional information regarding attempted service, etc:

Served at One Battery Plaza, 33rd Floor. New York, NY 10004









[illegible] EDUCATION
AMERICAS, LLC

AUA

AMERICAN UNIVERSITY [illegible]

APP. 67

Case 20-3866, Document 39, 03/26/2021, 3047207, Page71 of 90

AMERICAN UNIVERSITY of ANTIGUA | COLLEGE OF MEDICINE

**Medical Student Performance Evaluation (MSPE)**
**Date Written: 6/29/16 for Debbie-Ann Bromfield-Thompson** Pg. 1

Dear Program Director:

This letter is an evaluation of the achievements of Mrs. Debbie-Ann Bromfield-Thompson, a student in good standing at the American University of Antigua College of Medicine (AUA).

Mrs. Bromfield-Thompson was awarded her Bachelor of Science degree in Biology from Howard University in Washington, D.C. in May 2000, graduating *magna cum laude*. In the fall of 2004, Mrs. Bromfield-Thompson attended St. Matthew's University School of Medicine in the Cayman Islands, Grand Cayman, where she completed the basic science portion of her medical education. When she matriculated at AUA, Mrs. Bromfield-Thompson transferred 83 basic science credits. In January 2008, she took the USMLE Step 1 exam and passed with a score of 193. In September 2010, she attended the 15-week Foundations of Clinical Medicine course, for which she received a B, and then awaited placement in her first rotation. Presently, she is completing her clerkships at teaching institutions in the United States.

Throughout her clinical education, Mrs. Bromfield-Thompson has been evaluated by clinical faculty on five core competencies: **Patient Interaction** (Student provided compassionate interaction that is effective for health promotion, wellness, and disease treatment); **Medical Knowledge** (Student demonstrated appropriate knowledge of the basic sciences and clinical sciences and applied that knowledge effectively); **Practice-Based Learning and Improvement** (Student had an understanding of evidence-based medicine and applied sound principles of practice within the context of patient care); **Interpersonal and Communication Skills** (Student established relationships with patients/families and counseled and provided education to them; Student maintained comprehensive, timely, and legible medical records) and **Professionalism** (Student demonstrated a commitment to professional development, ethical principles, and sensitivity to patient/family and peer diversity). Mrs. Bromfield-Thompson's Student Portfolio, containing information about her patient illnesses/diseases as well as academic curricular and extracurricular activities, is regularly reviewed by the faculty.

As of this writing, Mrs. Bromfield-Thompson's performance in the clinical setting has been excellent as she maintains a 3.67 GPA, which reflects the grades in her initial graded rotations of the 75 week curriculum as well as her grade in the Foundations of Clinical Medicine course.

Throughout her clinical clerkships, Mrs. Bromfield-Thompson was consistently rated as outstanding for her communication skills and she received very high marks for her professionalism, learning improvement and patient care. She earned outstanding grades on all of her assessed competencies from her internal medicine preceptor, who noted on the evaluation form that she was "proactive, patient and professional." Her pediatrics preceptor also rated her

Manipal Education Americas, LLC Representative for American University of Antigua
1 Battery Park Plaza, 33rd Floor, New York, NY 10004
1 (888) AUA-UMED | www.auamed.org

APP. 68



assessed skills as outstanding throughout the six-week rotation. Regarding her patient care, the physician commended her problem-solving skills and noted that she was "able to combine non-judgmental thought with family needs." The physician also commented, "She is a very compassionate, people-oriented student." Her psychiatry preceptor graded her interpersonal and communication skills as outstanding and noted that she "communicates well with team members and patients." The physician also referred to her as "compassionate and respectful." Mrs. Bromfield-Thompson also earned outstanding grades from her obstetrics and gynecology preceptor who commented that she was "both gracious and accommodating with patients" and praised how she "applied learned information to problem solving." The physician also was impressed with her bedside manner and noted, "She was concerned and compassionate and a good listener. She was appropriate and on cue with patient care." An evaluating physician on her family practice core clerkship was impressed with her "exemplary work ethic and empathetic demeanor with patients." The physician also commended her "very professional style and demeanor" and her "strong basic science foundation." "She works well with the team. She was very well-liked by patients and families. She performed thorough work ups and exams and she demonstrated good differential and treatment plans." Mrs. Bromfield-Thompson also earned outstanding grades on all of her assessed skills from a supervising physician on her vascular surgery elective rotation. The physician praised her "excellent interaction with patients" and noted that she was considerate and respectful. "She has a very good knowledge base and is quick to learn about new topics and educate herself. She has excellent communication with patients and members of the healthcare team. She is very professional in dress and behavior." The evaluator of her hematology/oncology elective remarked, "I enjoyed working with Debbie-Ann. She is professional and has a good fund of knowledge."

The listing of her completed rotations is as follows:

| Clerkship | Hospital | #weeks | Grade |
|---|---|---|---|
| **Core Rotations** | | | |
| Internal Medicine | Maryland General Hospital, Baltimore, MD | 12 | A |
| Pediatrics | Shady Grove Adventist Hospital, Rockville, MD | 6 | A |
| Surgery | Washington Adventist Hospital, Takoma Park, MD | 8 | A |
| Psychiatry | Adventist Behavioral Health, Rockville, MD | 6 | B |
| Family Practice | Medstar Union Memorial Hospital, Baltimore, MD | 6 | A |
| Obstetrics & Gynecology | Medstar Franklin Square Med. Ctr., Baltimore, MD | 6 | A |
| | | | |
| **Electives** | | | |
| Vascular Surgery | Washington Adventist Hospital, Takoma Park, MD | 3 | A |
| Urological Surgery | Washington Adventist Hospital, Takoma Park, MD | 4 | A |
| Reproductive Endocrinology & Infertility | Medstar Union Memorial Hospital, Baltimore, MD | 4 | A |
| Infectious Disease | | 4 | B |
| Pulmonary | Univ. of Maryland Med. Ctr.-Midtown, Baltimore, MD | 4 | A |
| Hematology/Oncology | Univ. of Maryland Med. Ctr.-Midtown, Baltimore, MD | 6 | A |
| Chemical Dependency | Univ. of Maryland Med. Ctr.-Midtown, Baltimore, MD | 3 | B |

Debbie-Ann Bromfield-Thompson says her interest in medicine evolved over time beginning with her high school education when she developed an aptitude for the sciences and then became interested in women's health issues. She shares, "While attending high school in Jamaica, I was part of a program that would visit the inner-city hospitals to comfort the sick. My experience in observing the lack of care given to these women and their resultant sufferings left an indelible imprint on my mind." Mrs. Bromfield-Thompson says her desire to pursue a career as a physician stems from her passion for helping others. Her background includes volunteering at Howard University Hospital in Washington, D.C. from June to August 1998. While attending Howard University, she worked as a biology teaching assistant from August 2000 to May 2002. She performed an internship and assisted with research in the field of reproductive endocrinology and infertility at Columbia Fertility Associates in Washington, D.C. from April to July 2008. More recently, from June to early September, she volunteered at Mary's Center for Maternal and Child Care, Inc. in Washington, D.C. where she assisted with prenatal care for uninsured and underinsured women.

On a personal level, Mrs. Bromfield-Thompson describes herself as a perfectionist. Outside of her interest in medicine, she is an avid golfer and enjoys cooking. She is affiliated with the American Congress of Obstetrics Gynecology. She also has devoted time to community outreach as she has volunteered with Habitat for Humanity in the Washington, D.C. area and she volunteered with the Cayman Red Cross while she was a student at St. Matthew's University School of Medicine and helped with clothing and food drives to aid victims of Hurricane Ivan.

Summarizing the above information collected from her records, Mrs. Debbie-Ann Bromfield-Thompson has proven herself to be a knowledgeable, professional and motivated medical student, who has demonstrated her eagerness to learn and the ability to apply her knowledge. As a clinical student at the American University of Antigua, Mrs. Bromfield-Thompson's performance in the clinical setting has been excellent as she maintains a 3.67 GPA, which reflects the grades in her initial graded rotations of the 75 week curriculum as well as her grade in the Foundations of Clinical Medicine course. She has stood out for her exceptional bedside manner as she was noted to have an exemplary ability to communicate with patients, family members and the healthcare team. Her clinical evaluators have praised her solid medical knowledge and her ability to apply that knowledge to the clinical setting as well as her strong work ethic. She is intelligent, confident, a keen learner and a good team player, respectful, empathetic and engaging. Debbie-Ann Bromfield-Thompson will certainly be a valuable asset to any residency program.

I trust that you will give Debbie-Ann Bromfield-Thompson's application for post-graduate training at your institution every favorable consideration.

Sincerely,

J-Peter Bell

Peter Bell, MD
Vice President Global Medical Education
Executive Dean, Clinical Sciences

PB/hl/jr/rz

vious emails to each other. I was the one who asked Dr. Bell for approval which was approved the same day.

nks
bbie-Ann

---

m: Maria Cepeda <mcepeda@AUAMED.ORG>
t: Monday, May 23, 2016 3:41:52 PM
Bromfield Debbie-Ann
bject: RE: Next Elective

Debbie- Ann,

Bell approved the 4 week rotation. Which dates then do you want to schedule ICU at UMMC?

ank you,

---

ria Cepeda
nical Coordinator

(212) 661-8899, ext. 213
646) 390-4947
epeda@auamed.org

anipal Education Americas, LLC Representative for American University of Antigua College of Medicine

attery Park Plaza, 33rd floor
w York, NY 10004
ww.auamed.org

SCLAIMER:
his message is for the named person's use only. It may contain confidential, proprietary or legally privileged information. No nfidentiality or privilege is waived or lost by any mis-transmission. If you receive this message in error, please immediately lete it and all copies of it from your system, destroy any hard copies of it and notify the sender. You must not, directly or directly, use, disclose, distribute, print, or copy any part of this message if you are not the intended recipient. Manipal ucation of Americas, LLC Agent for American University of Antigua College of Medicine, and any of its subsidiaries each serve the right to monitor all e-mail communications through its networks. Any views expressed in this message are those of e individual sender, except where the message states otherwise and the sender is authorized to state them to be the views of y such entity.

-----Original Message-----
om: Bromfield Debbie-Ann [mailto:Debbie-Annb@auamed.net]
nt: Friday, May 20, 2016 12:44 PM

Exhibit 11

-----Original Message-----
From: Bromfield Debbie-Ann [mailto:Debbie-Annb@auamed.net]
Sent: Thursday, May 19, 2016 9:52 PM
To: Maria Cepeda
Subject: Re: Next Elective

Hi Maria:
I have no idea what hospital offers 3 weeks. I am willing to do the extra week. I need to get this CLOA out by tomorrow. I need to have a rotation schedule. Do you have any suggestions?

Thanks
Debbie-Ann

---

From: Maria Cepeda <mcepeda@AUAMED.ORG>
Sent: Thursday, May 19, 2016 12:45:45 PM
To: Bromfield Debbie-Ann
Subject: RE: Next Elective

Hi Debbie-Ann,

You only need 3 weeks to fulfil your graduation requirement. Please choose another hospital to complete the 3 weeks.

Sincerely,

---

Maria Cepeda
Clinical Coordinator

P: (212) 661-8899, ext. 213
F: (646) 390-4947
mcepeda@auamed.org

Manipal Education Americas, LLC Representative for American University of Antigua College of Medicine

1 Battery Park Plaza, 33rd floor
New York, NY 10004
www.auamed.org

DISCLAIMER:
This message is for the named person's use only. It may contain confidential, proprietary or legally privileged information. No confidentiality or privilege is waived or lost by any mis-transmission. If you receive this message in error, please immediately delete it and all copies of it from your system, destroy any hard copies of it and notify the sender. You must not, directly or indirectly, use, disclose, distribute, print, or copy any part of this message if you are not the intended recipient. Manipal Education of Americas, LLC Agent for American University of Antigua College of Medicine, and any of its subsidiaries each

Exhibit 9

App. 72

o: Maria Cepeda
ubject: Re: Next Elective

Hi Maria:

rotation at ICU will not work because it is right at the time I will be doing my practice exam. I spoke with Melissa and she said e would be speaking with Dr. Bell about approving me for 4 weeks. I don't know whether you have yet spoken to her. Thanks r your efforts, and let me know the outcome.

anks

ebbie-Ann

---

rom: Maria Cepeda <mcepeda@AUAMED.ORG>
nt: Friday, May 20, 2016 11:43:09 AM
: Bromfield Debbie-Ann
ubject: RE: Next Elective

Debbie,

ow about ICU at UMMC, 5/23/16 - 6/10/16?

ncerely,

---

aria Cepeda
nical Coordinator

(212) 661-8899, ext. 213
(646) 390-4947
cepeda@auamed.org

Manipal Education Americas, LLC Representative for American University of Antigua College of Medicine

attery Park Plaza, 33rd floor
w York, NY 10004
www.auamed.org

SCLAIMER:
his message is for the named person's use only. It may contain confidential, proprietary or legally privileged information. No onfidentiality or privilege is waived or lost by any mis-transmission. If you receive this message in error, please immediately lete it and all copies of it from your system, destroy any hard copies of it and notify the sender. You must not, directly or directly, use, disclose, distribute, print, or copy any part of this message if you are not the intended recipient. Manipal ducation of Americas, LLC Agent for American University of Antigua College of Medicine, and any of its subsidiaries each eserve the right to monitor all e-mail communications through its networks. Any views expressed in this message are those of e individual sender, except where the message states otherwise and the sender is authorized to state them to be the views of y such entity.

Exhibit 8

# SERVICES AGREEMENT

THIS SERVICES AGREEMENT (this "Agreement") is made as of March 19, 2012 by and between AMERICAN UNIVERSITY OF ANTIGUA INC. a corporation organized under the laws of Antigua and Barbuda, ("AUA") and MANIPAL EDUCATION AMERICAS, LLC., a New York limited liability company ("MEA").

## Recitals

AUA is an institution of higher education located on the island of Antigua that, inter alia, offers medical degree programs through both classroom and clinical instruction that prepare students to sit for the U.S. Medical Licensing Examination ("USMLE") and provide a foundation for students' postgraduate specialty training in the United States (the Business"). AUA wishes to obtain from MEA, and MEA is willing to provide to AUA, certain services relating to the Business on the terms and conditions set forth in this agreement.

## Agreement

AUA and MEA hereby agree as follows:

1. Provision of Services.

(a) Services. During the term of this agreement, and subject to the terms and conditions of this agreement, MEA shall perform the admissions, clinical administration, financial aid servicing, legal, management, bursarial, registrarial, accounting and other services described on Schedule A, together with such additional services as AUA may reasonable request from time to time (collectively, the "Services").

(b) Facilities. MEA shall use all reasonable efforts to provide the services of qualified personnel, and the use of sufficient and proper equipment and facilities, for the provision of the Services to AUA. If MEA is not reasonably able to perform the requested Services in a timely manner, then (i) MEA shall promptly notify AUA of such inability and of the reasons for such inability and (ii) the parties shall agree upon the time and manner of the Services to be provided.

(c) Licenses and Permits. MEA shall be fully responsible for obtaining and complying with all governmental licenses, permits, and similar requirements with respect to its provision of the Services.

(d) Insurance. MEA shall maintain usual and customary general liability and other business insurance policies covering its provision of the services.

2. Compensation.

(a) Amount. AUA shall pay for each month during the term of this agreement a fee equal to MEA's costs incurred during each said month for providing the Services hereunder including an allocation of costs for all applicable time and overhead attributable to MEA'S employees plus four (4%) percent except that, for Executive Management Services provided by MEA, the fee shall include an allocation of costs for all applicable time and overhead attributable to MEA's executives plus twelve and one half (12 ½%) percent. Said fees shall be paid on the fifteenth (15th) day of each subsequent month or by such time both MEA/AUA agree on.

Annually, AUA shall subject the fee structure paid hereunder to MEA in the preceding fiscal year to be audited by an independent auditor using a "Net Cost Plus" ("NCP") analysis. In the event that the audit results in a finding that either of the fees paid for all services provided by MEA other than Executive Management Services or the fees paid for Executive Management Services during the audited year were in excess of the highest limit of the interquartile range of three-year weighted average NCP'S established by comparable service providers, AUA shall be entitled to claw back from MEA the difference(s) between the fees paid and the such amount as would have been paid as fees hereunder if said fees were calculated by use of the highest limit of the said three-year interquartile range of NCP's established by comparable service providers for the audited year.

(b) Transfer Pricing. The parties agree that the compensation to be paid pursuant to this Section 2 is intended to satisfy the standard prescribed by U.S. Treasury Regulation §1.482-2(b). If it is subsequently discovered that such pricing does not produce an arm's length result, the parties agree to make, on or before the due date (including extensions) of MEA's U.S. federal income tax return for the tax year of the erroneously-priced Services, whatever compensating adjustments are necessary in order to achieve an arm's length result under U.S. Treasury Regulation §1.482-2(b). Such adjustments may be made in the form of an actual cash payment or an adjustment to the books and records of the parties for the year of the transaction.

3. Warranty; Limitation of Liability. MEA shall provide the Services under this Agreement in a professional and workmanlike manner and in accordance with applicable industry standards. EXCEPT AS PROVIDED IN THE PRECEDING SENTENCE, MEA MAKES NO WARRANTY, EXPRESS OR IMPLIED, WITH RESPECT TO THE SERVICES. Notwithstanding anything contained in this Agreement to the contrary, neither party shall have any liability to the other party under this Agreement for any loss of profits or special or consequential damages, even if such party is apprised of the possibility of such damages.

4. Indemnification. Each of MEA and AUA agrees to indemnify the other party and such other party's officers, agents, contractors, and employees and hold them

harmless from and against any and all claims, actions, damages, liabilities and expenses (including reasonable attorneys' fees) resulting from the gross negligence or intentional malfeasance of such party, its officers, agents, contractors or employees.

5. Records and Confidential Information.

(a) Redelivery of Records. All memoranda, notes, reports, records or other documents made or compiled by MEA, or made available to MEA, concerning the Business shall be ADA's property and shall be delivered to AUA on the termination of this Agreement or at any other reasonable time upon the request of AUA.

(b) Confidentiality. MEA shall keep secret and retain in strictest confidence, and shall not use for the benefit of itself or others, all confidential or non-public proprietary knowledge or information pertaining to AUA or the Business that MEA learns during the course of providing Services under this Agreement, and AUA shall keep secret and retain in strictest confidence, and shall not use for the benefit of itself or others, any confidential or non-public proprietary knowledge or information pertaining to MEA that AUA learns during the course of being provided Services under this Agreement. This obligation shall not apply to, and the parties shall have no confidentiality obligations with respect to, any information that: (i) is or becomes public knowledge without breach of this covenant, (ii) was known to the party prior to the disclosure of such information to the party, (iii) is available to third parties who are entitled to disclose such information to the party, or (iv) is independently developed by the party without reference to or reliance upon any information that is required to be kept confidential hereunder. The confidentiality obligations of the parties under this Section 5(b) shall not apply to the extent that the disclosure of information otherwise determined to be confidential is required by applicable law; provided, that prior to disclosing such confidential information, the party making the disclosure must notify the other party thereof, which notice will include the basis upon which the disclosing party believes the information is required to be disclosed.

(c) Injunctive Relief; Survival. Each party consents and agrees that any violation of the provisions of this Section 5 would result in irreparable harm to the other party and, therefore, in addition to any other remedies such other party may have, such other party shall be entitled to apply to any court of competent jurisdiction to enjoin the party from committing or continuing any violation of the provision of this Section 5. The provisions of this Section 5 shall survive the termination of this Agreement.

6. Term. The term of this Agreement shall commence on the date hereof and shall continue until terminated by either party upon not less than 60 days prior written notice.

7. Miscellaneous.

(a) Notices. All notices which are required or may be given pursuant to the terms of this Agreement shall be sufficient in all respects if given in writing and (x) delivered personally or by reputable overnight courier or (y) mailed by registered,

certified or express mail (postage prepaid), or (z) sent by facsimile or other electronic transmission, to the parties at the following addresses and numbers or such other address or numbers as either party shall designate by notice in writing to the other in accordance with this Agreement:

If to MEA, to:

Manipal Education Americas, LLC.
1 Battery Park Plaza, 33rd Floor
New York, NY 10004
Attention: Chief Financial Officer
Telephone: 212-661-8899

If to AUA, to:

American University of Antigua, Inc.
Jabberwock Road
St. John's, Antigua
Attention: Vice President of Administration
Telephone: 268-484-8900

All such notices shall be deemed to have been given when received.

(b) Amendment; Waiver. No amendment, waiver or modification or supplement of any provision of this Agreement, and no consent to any departure from such provision, shall be effective unless in writing and signed by both parties and designated as an amendment or, in the case of a waiver or consent, by the party granting it. Any of the terms and conditions of this Agreement may be waived at any time by the party entitled to the benefit of this Agreement, but such waiver shall not affect or impair the right of the waiving party to require observance, performance or satisfaction either of that term or condition as it applies on a subsequent occasion or of any other term or condition of this Agreement. The failure or delay of either party to exercise any right under this Agreement shall not be construed as a waiver of that right.

(c) Force Majeure. Neither party to this Agreement shall be responsible for failure or delay in performance under this Agreement, other than failure or delay in payment of money, when such failure or delay is due to a force majeure event, including (i) compliance with any act, order, demand or request of any government or governmental authority, agency or instrumentality; (ii) labor disputes, difficulties or work stoppages or slowdowns of any kind; (iii) hurricane, earthquake and other natural disasters or fires; (iv) war, rebellion, or civil disorder; or (v) any other cause beyond the reasonable control of the non-performing party. Performance of this Agreement shall be suspended during such time as any force majeure event continues.

A party that is relieved of any obligation or duty imposed on it by this suspended Agreement pursuant to the terms of this Section 7(c) shall take all reasonable and practical measures and shall make diligent efforts to remove or cause the removal of the cause preventing its performance as soon as practicable.

(d) Severability. If any portion of this Agreement should be adjudged illegal or unenforceable, the remainder of this Agreement shall continue to be enforceable.

(e) Entire Agreement. This Agreement constitutes the entire agreement between the parties. Any oral or other written understandings relating to the subject matter of this Agreement are no longer effective and are superseded by this Agreement. In the event of conflict between the terms, conditions and provisions of this Agreement and any purchase order, invoice or acknowledgment or other document issued by either party, the terms, conditions and provisions of this Agreement shall prevail.

(f) Relationship of the Parties. The parties to this Agreement are independent contractors and neither party is an employee, agent, partner or joint venturer of the other. Without limiting the foregoing, neither party hereto shall have the authority to enter into contracts on behalf of, or otherwise legally bind, the other party. Under no circumstances shall any of the employees of a party to this Agreement be deemed to be employees of the other party for any purpose.

(g) Governing Law: Jurisdiction. This Agreement and the legal relations among the parties hereto shall be governed by and construed in accordance with the laws of the State of New York applicable to contracts made and performed entirely in such State. In the event of any litigation arising out of this Agreement, the parties hereto agree that jurisdiction and venue shall rest in the federal and state courts of the State of New York.

(h) Binding Effect. This Agreement shall be binding upon and inure solely to the benefit of the parties to this Agreement and their successors and permitted assigns. Nothing in this Agreement, express or implied, is intended to or shall confer upon any other person or entity any legal or equitable right, benefit or remedy of any nature whatsoever.

(i) Assignability. Neither party may assign this Agreement or any right granted under it, nor delegate any duty imposed by it, without the prior written consent of the other party.

(j) Counterparts. This Agreement may be executed in one or more counterparts, and by different parties to this Agreement in separate counterparts, each of which when executed shall be deemed to be an original but all of which taken together shall constitute one and the same agreement.



(k) Interpretation. The language in all parts of this Agreement shall in all cases be construed as a whole according to its fair meaning, neither strictly for nor against either party. The rule of construction that a document is to be construed more strictly against the person who prepared it shall not apply to this Agreement, it being agreed that representatives of both parties have participated in its preparation.

(l) Rules of Construction. For purposes of this Agreement (including all schedules and amendments), unless the context otherwise requires, (i) all terms defined herein include the plural as well as the singular, (ii) the masculine, feminine or neuter gender shall be deemed to include the others whenever the context so requires, and (iii) all accounting terms used herein but not otherwise defined herein shall have the meaning given to them under generally- accepted accounting principles, consistently applied. The words "include," "includes" and "including" shall be deemed to be followed by the phrase "but not limited to." "Or" is disjunctive but not necessarily exclusive. Reference to Sections are, unless otherwise specified, to Sections of this Agreement. Words such as "herein," "hereinafter," "hereof," "hereto," "hereby" and "hereunder" refer to this Agreement and to the Schedules, taken as a whole, unless the context requires otherwise. References herein to any agreement or other instrument shall, unless the context otherwise requires, be deemed references to the same as it may from time to time be changed, amended or extended in accordance with its terms. Headings are inserted in this Agreement for convenience only and are not to be given any legal effect and shall not affect in any way the meaning or interpretation of the provisions of this Agreement.

**Execution**

IN WITNESS WHEREOF, the parties have duly executed and delivered this Services
Agreement as of the date first written above.

AMERICAN UNIVERSITY OF ANTIGUA
COLLEGE OF MEDICINE, INC.

By: [signature]
Name: Neal Simon
Title: Pres

MANIPAL EDUCATION AMERICAS, LLC.

By: [signature]
Name: Leonard Sclafani
Title: SR. V. P.

Case 20-3855, Document 39, 02/26/2021, 3047207, Page83 of 90

**SCHEDULE A**
**Services**

1. Admissions: MEA will provide admissions and student services for all AUA programs (including AUA Medical School and the AUA-KMC Twinning Program). Such admissions services include:

(a) Preparing and distributing brochures, newsletters and other marketing materials to prospective students.

(b) Responding to inquiries and providing applications and information packages to prospective students who have expressed an interest in one or more AUA programs.

(c) Hosting receptions and other events for prospective students.

(d) Conducting phone and in-person interviews of prospective students.

(e) Reviewing applications and selecting successful candidates for further review by the Faculty Admissions committee.

(f) Assisting students in coordinating their relocation to Antigua.

(g) Developing/executing marketing and branding campaigns for all programs.

2. Registrar: MEA will act as registrar for AUA programs including:

(a) Maintaining student academic records.

(b) Assisting students with scheduling of clinical rotations.

(c) Setting the academic calendar.

3. Clinical Instruction: MEA will coordinate and supervise the clinical portion of all AUA programs in the United States. Such clinical training services include:

(a) Identifying, evaluating and selecting teaching hospitals in the United States where AUA students will obtain their clinical training.

(b) Identifying, evaluating and selecting physicians to be shadowed by students in AUA's clinical training programs.

(c) Monitoring of the teaching hospitals and physicians involved in ADA's clinical training programs for quality assurance.

(d) Providing Clinical Chairmen to oversee ADA's clinical training programs and also provide an Academic Provost.

(e) Assisting students in coordinating their relocation to the United States and assisting with housing relocation in the United States for students in ADA's clinical training programs.

4. Financial Aid: MEA will provide financial aid services, including:

(a) Loan counseling for students.

(b) Preparing, distributing and reviewing financial aid applications.

(c) Selecting financial aid, academic scholarship and housing scholarship recipients and determining aid levels.

(d) Loan processing for students.

(e) Identify and maintain lender relationships

5. Accounting: MEA will provide accounting services, including:

(a) Acting as bursar for AUA as its accounts receivable function.

(b) Providing daily business processing support and financial reporting.

(c) Managing payroll and compensation for full-time and part-time employees and consultants with respect to (a) AUA's Basic Sciences Faculty (pre-med and semesters 1 through 4) and AUA's Research and Development staff in Antigua, and (b) clinical sciences faculty, clinical chairman and other personnel in the United States.

(d) Manage other expenses as requested including but not limited to rent and student housing payments, insurance and other contract payments.

(e) Assist in the Management of facilities development and construction

(f) Collections.

(g) Assisting AUA with adherence to accounting and tax requirements.

6. Information Technology Services. Purchasing and maintaining AUA'S organizational IT infrastructure.

7. Purchasing. Coordinating and facilitating procurement for AUA'S organization.

8. Office Administration. Providing clerical support and other non-academic office-related services in the United States.

9. Legal Compliance. Obtaining business licenses and permits, accreditation and other governmental and third party approvals necessary to AUA'S business.

APP 81

10. Insurance. Obtaining insurance with respect to AUA's programs.

11. Travel. Coordinating faculty travel between AUA's various locations and the United States.

12. Other. Providing such other services and AUA and MEA may agree from time to time.

 AMERICAN
UNIVERSITY
of ANTIGUA
COLLEGE OF MEDICINE

## Appendix A

## About AUA

AUA was founded in 2004. Our MD program is one of only a few in the Caribbean that follows the clinically integrated U.S. model. Our Provost is the distinguished Seymour I. Schwartz, MD, who may be best known for his seminal textbook *Schwartz's Principles of Surgery*, a clinical companion utilized by nearly every medical school in the United States. AUA students are ECFMG eligible, and to date well over 1,000 of our graduates have been placed in more than 600 separate residency programs across the majority of the United States, plus Washington DC, Puerto Rico, Canada and the United Kingdom.

Among AUA's accreditations and approvals are the following:

- AUA is one of a select few medical schools whose campuses are in the Caribbean that is recognized by the Medical Board of California. This approval entitles AUA's students to participate in clinical clerkships while pursuing their medical doctorate degrees and to participate in residency training and to become licensed physicians upon graduation;

- AUA is similarly approved by the New York State Education Department, which entitles its students to engage in clinical clerkships and residency training in the State;

- The Commission for Independent Education of the Florida Department of Education has licensed AUA to provide clinical clerkship training of its students in the State;

- AUA is accredited by the Caribbean Accreditation Authority for Education in Medicine and other Health Professions (CAAM-HP). CAAM-HP was established in 2003 and is the legally constituted body for accreditation of medical, nursing, veterinary and other educational programs leading to practice in the field of heath care in the Caribbean Community (CARICOM) member countries. By legislation, CAAM-HP is the accreditor of medical schools for the Government of Antigua and Barbuda. With CAAM-HP as its medical school accreditor, Antigua and Barbuda has been recognized by the U.S. Department of Education as having standards and procedures for the accreditation of medical schools that are comparable to those of the Liaison Commission on Medical Education (LCME). In 2023, graduates of international medical schools will not be eligible for ECFMG certification unless their schools are accredited by a regional accreditor approved by the ECFMG. CAAM-HP was the first and, to date, the only regional accreditor that the ECFMG has so approved;

- The American Association of Physicians of Indian Origin (AAPI) has recognized AUA as a leader in international medical education. AUA is the only international medical school that has achieved this distinction.

APR 83

**UNITED COURT OF APPEALS**
**SECOND CIRCUIT**

**DEBBIE-ANN BROMFIELD-THOMPSON**

**APPELLANT,**

**DOCKET NO. 20-3855**

**v.**

**AUA/MEA, LLC,**

**APPELLEES.**

## CERTIFICATE OF SERVICE

I Debbie-Ann Bromfield-Thompson,hereby certify that on this _____day of February, 2021 I served a copy of the Appendix in the above captioned case, via United States first class mail, postage prepaid, on the following counsel:

Robert A. Burgoyne, Esq., (counsel for NBME)
Perkins Coie, LLP
Suite 600
700 13th Street, NW
Washington, DC 20005

Evelyn Yue Pang, Esq (counsel for NBME)
Perkins Coie, LLP
22nd Fl.
1155 Avenue of the Americas
New York, NY 10036

Robb William Patry, Esq., (counsel for AUA/MEA, LLC)
Hughes Hubbard & Reed LLP
1 Battery Plaza
New York, NY 10004

Amina Hassan, Esq., (Counsel for AUA/MEA, LLC)
Hughes Hubbard & Reed
1 Battery Park Plaza

**UNITED COURT OF APPEALS**
**SECOND CIRCUIT**

**DEBBIE-ANN BROMFIELD-THOMPSON**

**APPELLANT,**

**DOCKET NO. 20-3855**

**v.**

**AUA/MEA, LLC,**

**APPELLEES.**

**CERTIFICATE OF SERVICE**

I Debbie-Ann Bromfield-Thompson, I hereby certify under penalty of perjury, that on February 25th, 2021 I served Appellant's Appendix in the above captioned case upon the following counsel: prepaid, on the following counsel:

Robert A. Burgoyne, Esq., (counsel for NBME)
Perkins Coie, LLP
Suite 600
700 13th Street, NW
Washington, DC 20005

Evelyn Yue Pang, Esq (counsel for NBME)
Perkins Coie, LLP
22nd Fl.
1155 Avenue of the Americas
New York, NY 10036

Robb William Patry, Esq., (counsel for AUA/MEA, LLC)
Hughes Hubbard & Reed LLP
1 Battery Plaza
New York, NY 10004

Amina Hassan, Esq., (Counsel for AUA/MEA, LLC)
Hughes Hubbard & Reed
1 Battery Park Plaza

New York, NY 10004

Debbie-Ann Bromfield-Thompson

EVERALD THOMPSON
(202) 538-7338
THE UPS STORE #5801
1380 MONROE ST NW
WASHINGTON DC 20010-3452

5 LBS 1 0
SHP WT: 5 LBS
DATE: 25 FEB 202

SHIP TO: UNITED STATES COURT OF APPEALS
SECOND CIRCUIT
40 FOLEY SQ

NEW YORK NY 10007-1502

NY 102 9-10

UPS NEXT DAY AIR SAVER 1P

TRACKING #: 1Z 3E6 81A 13 7751 0932

BILLING: P/P

REF #2: AP

ISH 13.00F ZZP 450 42.5V 01/2021