# 20-3855-cv

## United States Court of Appeals

*for the*

## Second Circuit

DEBBIE ANN BROMFIELD-THOMPSON,

*Plaintiff-Appellant,*

– v. –

AMERICAN UNIVERSITY OF ANTIGUA,
MANIPAL EDUCATION AMERICAS, LLC,

*Defendants-Appellees,*

AMERICAN UNIVERSITY OF ANTIGUA/MANIPAL EDUCATION
AMERICAS, LLC, AKA GCLR, LLC, NBME,

*Defendants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR DEFENDANTS-APPELLEES

ROBB W. PATRYK
AMINA HASSAN
HUGHES HUBBARD & REED LLP
*Attorneys for Defendants-Appellees*
One Battery Park Plaza
New York, New York 10004
(212) 837-6000

## CORPORATE DISCLOSURE STATEMENT

As set forth in the Federal Rules of Civil Procedure, Rule 7.1 corporate disclosures in the proceedings below (District Court docket, ECF 25 & 26, Supplemental Appendix 1, 2), American University of Antigua is a wholly-owned subsidiary of Manipal Education Americas, LLC.  Manipal Education Americas, LLC is a wholly-owned subsidiary of Manipal Academic Services International, which in turn is a wholly-owned subsidiary of MEMG International, Ltd.  MEMG International, Ltd. has no parent corporation.  No publicly held corporation holds 10% or more of the stock of any of the foregoing entities.

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................1

JURISDICTIONAL STATEMENT ...............................................................4

COUNTER-STATEMENT OF THE ISSUES PRESENTED ...................4

COUNTER-STATEMENT OF THE CASE ................................................6

    A.    The Parties .....................................................................6

    B.    Appellant Is Unable to Pass the CCSE ...............................7

    C.    The Proceedings Below:  Appellant Fails to Serve AUA ...........9

    D.    The District Court's Decision .............................................11

    E.    Scope of the Appeal ..........................................................12

SUMMARY OF THE ARGUMENT .........................................................13

ARGUMENT ..............................................................................................16

I.    THE DISTRICT COURT PROPERLY DISMISSED APPELLANT'S CLAIMS AGAINST AUA FOR FAILURE TO SERVE ...........................16

    A.    Standard of Review ...........................................................16

    B.    Appellant Has Not Identified Any Specific Error in the District Court's Findings. ...........................................................17

    C.    The District Court Did Not Abuse Its Discretion in Dismissing the FAC Without Sua Sponte Granting More Time to Cure Service. ......18

        1.    Appellant Waived the Time-to-Cure-Service Argument..........18

        2.    The District Court Did Not Abuse Its Discretion ....................20

    D.    Appellant's Waived Argument that MEA Had "Actual" or "Apparent" Authority to Accept Service for AUA Is Meritless.............................26

i

       1.    Appellant Did Not Preserve the "Actual" and "Apparent" Authority Arguments for Appeal ...............................................27

       2.    Appellant's "Actual" Authority Argument Is Meritless ...........28

       3.    Appellant's "Apparent" Authority Argument Is Meritless.......32

II.    THE COURT ALSO CAN AFFIRM THE DISTRICT COURT'S DISMISSAL OF AUA ON ALTERNATE GROUNDS ..............................36

    A.    The District Court Lacked Personal Jurisdiction Over AUA. ............36

       1.    The District Court Lacked General Jurisdiction Over AUA ....37

       2.    The District Court Lacked Specific Jurisdiction Over AUA....40

       3.    Appellant Did Not Provide Any Bases for Jurisdictional Discovery .................................................................................46

    B.    The Claims Against AUA Should be Dismissed On Forum Non Conveniens Grounds. ..........................................................47

       1.    Appellant's Choice of Forum Is Not Entitled to Deference .....47

       2.    Antigua Is an Adequate Alternative Forum.............................49

       3.    Public and Private Factors Favor Dismissal in Favor of Antigua ...................................................................................49

    C.    The CCSE Is Not Covered by the ADA.............................................50

III.   THE DISTRICT COURT PROPERLY DISMISSED THE FAC AGAINST MEA FOR APPELLANT'S FAILURE TO STATE A CLAIM ..................51

    A.    Standard of Review ...........................................................................51

    B.    The District Court Properly Dismissed the FAC as to MEA.............52

    C.    Appellant Waived Her Joint Venture and Independent Contractor Arguments. .......................................................................53

    D.    Appellant's Joint Venture and Independent Contractor Arguments Have No Merit......................................................................54

ii

IV.    THE COURT ALSO CAN AFFIRM THE DISTRICT COURT'S
       DISMISSAL OF MEA ON ALTERNATE GROUNDS ..............................56

V.     THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN
       DECLINING SUA SPONTE LEAVE TO REPLEAD.................................57

CONCLUSION ......................................................................................................58

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aina v. AUA*, 161 A.D.3d 508 (2d Dep't 2018).......................................................50

*Alla v. AUA*, 965 N.Y.S.2d 469 (1st Dep't 2013)....................................................50

*Allianz Ins. Co. v. Lerner*, 416 F.3d 109 (2d Cir. 2005).....................................18, 19

*Almonte v. Suffolk Cty.*, 531 F. App'x 107 (2d Cir. 2013) ......................................23

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....................................................................51

*Balintulo v. Ford Motor Co.*, 796 F.3d 160 (2d Cir. 2015) ....................................57

*Barrett v. Tema Dev. (1988), Inc.*, 251 F. App'x 698 (2d Cir. 2007).....................44

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................................51

*Bogle–Assegai v. Connecticut*, 470 F.3d 498 (2d Cir. 2006) ...........................19, 22

*Bristol-Myers Squibb Co. v. Superior Ct. of Cal.,* 137 S. Ct. 1773
     (2017) ...............................................................................................41, 42, 45, 46

*Brown v. Showtime Networks*, 394 F. Supp. 3d 418 (S.D.N.Y. 2019) .............36, 40

*Capital Currency Exch., N.V. v. Nat'l Westminster Bank PLC*, 155
     F.3d 603 (2d Cir. 1998) ......................................................................................49

*Cassano v. Altshuler*, 186 F. Supp. 3d 318 (S.D.N.Y. 2016) .................................25

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002)...............................51

*Chow v. Kenteh Enters.*, 169 A.D.2d 572 (1st Dep't 1991) ...................................35

*Cioce v. Cty. of Westchester*, 128 F. App'x 181 (2d Cir. 2005).............................21

*Cox v. Onondaga Cnty. Sheriff's Dep't*, 760 F.3d 139 (2d Cir. 2014)...................14

*Cybercreek Ent., LLC v. U.S. Underwriters Ins. Co.*, 696 F. App'x 554 (2d Cir. 2017)...................................................................57, 58

*Daimler AG v. Bauman*, 571 U.S. 117 (2014)...................................37, 38

*Daval Steel Prod., a Div. of Francosteel Corp. v. M.V. Juraj Dalmatinac*, 718 F. Supp. 159 (S.D.N.Y. 1989) ...........................46

*Dickerson v. Napolitano*, 604 F.3d 732 (2d Cir. 2010) ...........................16

*Dinaco, Inc. v. Time Warner, Inc.*, 346 F.3d 64 (2d Cir. 2003) ........................54, 55

*DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81 (2d Cir. 2001) ..............................36

*Divers v. Metro. Jewish Health Sys.*, 383 F. App'x 34 (2d Cir. 2010)...................13

*Elias v. Rolling Stone LLC*, 872 F.3d 97 (2d Cir. 2017)..........................................56

*Felix v. City of Poughkeepsie*, 2019 WL 5306981 (S.D.N.Y. Oct. 18, 2019) ..................................................................................................25

*Fletcher v. Atex, Inc.*, 68 F.3d 1451 (2d Cir. 1995)...........................32, 34

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017 (2021)...............................................................................................41, 42

*Ford v. Unity Hospital*, 32 N.Y.2d 464 (1973).........................................31

*Frankenberger v. Firth Rixson, Inc.*, 565 F. App'x 37 (2d Cir. 2014)...................22

*Gallop v. Cheney*, 642 F.3d 364 (2d Cir. 2011)........................................22

*Garanti Finansal Kiralama A.S. v. Aqua Marine & Trading Inc.*, 697 F.3d 59 (2d Cir. 2012) ..............................................................28

*Garcia v. AUA*, 156081/2012 (N.Y. Sup. Ct. Oct. 22, 2013) ................50

*Gerena v. Korb*, 617 F.3d 197 (2d Cir. 2010) ........................................16

*Gitzis v. Chen*, 2020 WL 1140422 (E.D.N.Y. Mar. 9, 2020), *appeal dismissed* (Jan. 12, 2021).........................................................52

*Goodyear Dunlop Tires Ops. v. Brown*, 564 U.S. 915 (2011) ................40

*Greene v. Hellman*, 412 N.E.2d 1301 (N.Y. 1980) .................................................. 32

*Greene v. United States*, 13 F.3d 577 (2d Cir. 1994) ............................................. 18

*Gucci America, Inc. v. Weixing Li*, 768 F.3d 122 (2d Cir. 2014) ............................ 39

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947) ....................................................... 50

*Hapag-Lloyd Aktiengesellschaft v. U.S. Oil Trading LLC*, 814 F.3d 146 (2d Cir. 2016) .................................................................................................. 27

*Harleysville Worcester Ins. Co. v. Wesco Ins. Co.*, 752 F. App'x 90 (2d Cir. 2019) .................................................................................................. 18

*Harmon v. Bogart*, 788 F. App'x 808, 810 (2d Cir. 2019) ...................................... 23

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984) .................................................................................................................. 41

*Herbert Constr. Co. v. Continental Ins. Co.*, 931 F.2d 989 (2d Cir. 1991) .................................................................................................................. 34

*Hill v. HSBC Bank plc*, 207 F. Supp. 3d 333 (S.D.N.Y. 2016) .............................. 40

*Horoshko v. Citibank, N.A.*, 373 F.3d 248 (2d Cir. 2004) (*per curiam*) ................ 57

*Howard v. Klynveld Peat Marwick Goerdeler*, 977 F. Supp. 654 (S.D.N.Y. 1997), *aff'd*, 173 F.3d 844 (2d Cir. 1999) ......................................... 16

*Iragorri v. United Techs. Corp.*, 274 F.3d 65 (2d Cir. 2001) .................................. 48

*Itel Containers Int'l Corp. v. Atlanttrafik Exp. Serv.*, 909 F.2d 698 (2d Cir. 1990) .................................................................................................... *passim*

*Kurzberg v. Ashcroft*, 619 F.3d 176 (2d Cir. 2010) ................................................ 26

*Labarbera v. Giacomelli Tile, Inc.*, 2009 WL 1269741 (E.D.N.Y. May 6, 2009) ................................................................................................................. 32

*Licci v. Lebanese Canadian Bank*, 20 N.Y.3d 327 (2012) (on certification to the New York Court of Appeals) ................................................ 40

*Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161 (2d Cir. 2013) ................... 40

vi

*Martinez v. Church of St. Gregory*, 261 A.D.2d 179 (1st Dep't 1999) ..................33

*McElwee v. Cnty. of Orange*, 700 F.3d 635 (2d Cir. 2012) .....................................14

*Medal Knitwear v. Ji Hoon Jung*, 2011 WL 6825374 (S.D.N.Y. Dec. 28, 2011) .........................................................................................................30, 35

*Megan v. Biocamp Laboratories*, 166 F. Supp. 3d 493 (S.D.N.Y. 2016) ...............................................................................................................38

*Minskoff v. Am. Express Travel Related Servs.*, 98 F.3d 703 (2d Cir. 1996) .........................................................................................................29, 32

*Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146 (2d Cir. 2005) ...............................................................................................................47

*In re Nortel Networks Corp. Sec. Litig.*, 539 F.3d 129 (2d Cir. 2008) ....................27

*Patel v. AUA*, 104 A.D.3d 568 (1st Dep't 2013) .....................................................50

*Perez v. Mason Tenders Dist. Council Tr. Funds*, 742 F. App'x 584 (2d Cir. 2018) ..................................................................................................19

*Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437 (1952) .......................38

*Perrotta v. Irizarry*, 430 F. Supp. 1274 (S.D.N.Y.), *aff'd*, 573 F.2d 1294 (2d Cir. 1977) .......................................................................................29

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981) ..................................................49

*Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64 (2d Cir. 2003) ...............................................................................................................47

*Prestige Cap. Corp. v. Fuber LLC*, 2017 WL 2558803 (S.D.N.Y. June 5, 2017) .........................................................................................................32

*Rudaj v. Treanor*, 522 F. App'x 76 (2d Cir. 2013) .................................................52

*S. New Eng. Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123 (2d Cir. 2010) ...............................................................................................................37

vii

*Sandoval v. Abaco Club on Winding Bay*, 507 F. Supp. 2d 312 (S.D.N.Y. 2007) ............................................................................... 37

*Santos v. State Farm Fire & Cas. Co.*, 902 F.2d 1092 (2d Cir. 1990) ................... 28

*In re Sargeant*, 278 F. Supp. 3d 814 (S.D.N.Y. 2017) ............................................ 39

*Scott v. ProClaim America, Inc.*, 2015 WL 3851243 (E.D.N.Y. June 22, 2015) ............................................................................................ 44

*Sikhs for Just. v. Nath*, 893 F. Supp. 2d 598 (S.D.N.Y. 2012) ............................... 30

*Simon v. Smith & Nephew, Inc.*, 990 F. Supp. 2d 395 (S.D.N.Y. 2013) ................. 48

*Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221 (2d Cir. 2014) .......................................................................................................... 37

*Spinale v. United States*, 2005 WL 659150 (S.D.N.Y. Mar. 16, 2005), *aff'd*, 352 F. App'x 599 (2d Cir. 2009) ............................................................. 21

*SPV Osus Ltd. v. UBS AG*, 882 F.3d 333 (2d Cir. 2018) ........................................ 41

*SPV Osus Ltd. v. Unicredit Bank Austria*, 2019 WL 1438163 (S.D.N.Y. Mar. 30, 2019) ........................................................................... 38, 41

*Steinbeck v. Gerosa*, 151 N.E.2d 170 (N.Y. 1958) ................................................. 54

*Taylor v. Rodriguez*, 238 F.3d 188 (2d Cir. 2001) ................................................. 13

*Togut v. Forever 21, Inc.*, 285 F. Supp. 3d 643 (S.D.N.Y. 2018) .......................... 47

*Van Bourgondien-Langeveld v. Van Bourgondien*, 2010 WL 5464890 (E.D.N.Y. Dec. 29, 2010) .................................................................................. 48

*Walden v. Fiore*, 571 U.S. 277 (2014) ............................................................. 41, 43

*Zapata v. City of New York*, 502 F.3d 192 (2d Cir. 2007) ................................. 21, 23

*Zen Music, Inc. v. CVS Corp.*, 1998 WL 912102 (S.D.N.Y. Dec. 30, 1998) ................................................................................................ 28, 33, 34

*Zerilli-Edelglass v. New York City Transit Auth.*, 333 F.3d 74 (2d Cir. 2003) .......................................................................................................... 19

*Zervos v. Verizon New York*, *Inc.*, 252 F.3d 163 (2d Cir. 2001) ............................33

*Zubair v. Entech Eng'g, P.C.*, 550 F. App'x 59 (2d Cir. 2014) ............................20

**Statutes and Rules**

28 U.S.C. § 1291 .............................................................................................4

28 U.S.C. § 1331 .............................................................................................4

28 U.S.C. § 1367 .............................................................................................4

29 U.S.C. § 794 ...........................................................................................56

Americans with Disabilities Act, 42 U.S.C. § 12189, *et seq.*..........................*passim*

CPLR § 302.....................................................................................................40

CPLR § 308.....................................................................................................29

Disabilities and Equal Opportunities Act of 2017 (Antigua) ..................................49

Fed. R. Civ. P. 4 ........................................................................................21, 46

Fed. R. Civ. P. 12(b)(2)..............................................................................36, 37

Fed. R. Civ. P. 12(b)(5)...............................................................................4, 16

Fed. R. Civ. P. 12(b)(6)...............................................................5, 47, 48, 51

Fed. R. Civ. P. 14 .........................................................................................46

Fed. R. Civ. P. 19 .........................................................................................46

Rehabilitation Act, 29 U.S.C. § 701 *et seq.*.......................................6, 9, 12, 15, 56

**Treatises and Periodical Materials**

1 Moore's Federal Practice ¶ 4.93 .........................................................................30

2 Moore's Federal Practice ¶ 4.10 .........................................................................30

Restatement (Second) of Agency.................................................................29, 32

ix

American University of Antigua ("AUA") and Manipal Education Americas, LLC ("MEA," together the "Appellees"), respectfully submit this brief in opposition to Appellant's appeal.

## PRELIMINARY STATEMENT

This appeal is the latest attempt by Appellant, a former AUA student, to hold AUA, a foreign medical school, and MEA, a New York entity with no substantive connection to this case, responsible for disability discrimination that did not happen. Appellant, despite multiple opportunities, has failed to meet threshold requirements for sustaining this action: she has twice failed to effect proper service on AUA despite clear notice of the defect, and has utterly failed to allege *any* wrongdoing against MEA. This appeal is no different. Appellant's belated arguments, raised for the first time on appeal, are waived, and in any event, entirely without merit.

This case arises from Appellant's failure to pass the Comprehensive Clinical Shelf Exam ("CCSE"), a graduation requirement for all AUA medical students. The CCSE is created and administered by the National Board of Medical Examiners ("NBME"). It is designed to be taken in one sitting, without breaks. AUA has no control over the design of the exam. Between 2014 and 2016, AUA allowed Appellant to take the CCSE five times. Despite AUA providing Appellant the progressively-increasing accommodations that she requested—including more

than double the time normally allocated for the exam, and the freedom to take breaks as she saw fit—Appellant did not pass. Ultimately, in July 2016, AUA dismissed Appellant for failure to satisfy her graduation requirements. Appellant filed a complaint against AUA with the U.S. Department of Education, Office of Civil Rights ("OCR"), for disability discrimination and retaliation. OCR, after a thorough investigation that included interviewing Appellant and reviewing documentation provided by both Appellant and AUA, ruled that Appellant had failed to substantiate her claims.

Appellant then commenced this action. Appellant served process on MEA at its New York office, but failed to serve AUA, which has no office or designated agent to accept service of process in New York. On December 9, 2019, Appellees moved to dismiss the complaint ("Complaint") on multiple grounds, including *inter alia*, that Appellant had failed to serve AUA. In the face of AUA's and MEA's sworn declarations and verifiable, publicly available government records showing that Appellant's service was defective, Appellant did nothing to remedy it. Instead, on January 14, 2020, Appellant filed the First Amended Complaint ("FAC"). AUA then moved to dismiss the FAC, repeating its insufficient service arguments. Appellant still did nothing to cure service, insisting that her service was proper. As the District Court properly held, it was not. The court observed that Appellant was "on notice of the defect in service on AUA since at least

December 9, 2019 … but she has taken no steps to correct it." Thus, while giving Appellant the "special solicitude" due to a *pro se* plaintiff, the District Court was well within its broad discretion to dismiss the FAC, without prejudice, for Appellant's consistent failure to serve AUA.

The District Court also properly dismissed the FAC with prejudice as to MEA for failure to state a claim. Despite two bites at the apple—the Complaint and the FAC—the District Court providing Appellant *sua sponte* leave to amend her Complaint, and Appellee's motion to dismiss the Complaint on these very grounds, the FAC failed to allege <u>any</u> wrongdoing by MEA. Accordingly, the District Court properly dismissed the FAC with prejudice as to MEA.

On appeal, Appellant has not identified a single erroneous factual finding, or any specific instance in which the District Court applied a wrong legal standard or a correct legal standard incorrectly. Rather, Appellant has thrown at the Court's wall a slew of arguments, which are too late *and* too little. Appellant could have raised each of these arguments below, but did not. Even if the Court were to address these waived arguments, which it should not, they must fail. Each of these arguments is insufficient as a matter of law or entirely unsupported by the record. Appellant's newly-minted arguments underscore only that Appellant is now grasping at straws, and that the District Court properly dismissed Appellant's claims.

Accordingly, the Court should affirm the District Court's dismissal of Appellant's claims against AUA and MEA. The Court may also affirm this dismissal on alternate grounds supported by the record and presented below.

## JURISDICTIONAL STATEMENT

This is an appeal from a final order of the United States District Court for the Southern District of New York. The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367. This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## COUNTER-STATEMENT OF THE ISSUES PRESENTED

1. Whether the District Court was within its broad discretion to dismiss, under Rule 12(b)(5), the FAC as to AUA for Appellant's failure to properly serve process, where Appellant served process at MEA's office, on an MEA employee, who was not authorized to accept service for AUA.

2. Whether Appellant waived the argument that the District Court abused its discretion by dismissing the FAC as to AUA without giving Appellant additional time to cure service, where Appellant never asked the court for such relief. Whether, if the Court addresses this waived argument, it lacks merit, where Appellant was on clear notice of the potential defect and did nothing, and has not given any colorable excuse for failing to effect proper service on AUA.

3. Whether Appellant waived the argument that MEA had "actual" or "apparent" authority to accept process for AUA by failing to sufficiently preserve it below. Whether, if the Court addresses this waived argument, it lacks merit, where (a) the record shows AUA did not grant MEA actual authority to accept service of process, and (b) Appellant has not made a *prima facie* showing that the process server reasonably relied on any representation by AUA in serving Ms. O'Brien, an MEA employee, at MEA's office, for AUA.

4. Whether the Court may affirm the District Court's dismissal of the FAC as to AUA on additional and alternate grounds that (a) the District Court lacked personal jurisdiction over AUA; (b) this case should be dismissed on *forum non conveniens* grounds in favor of Antigua; and (c) with regard to the claim under the Americans with Disabilities Act ("ADA"), the CCSE is not subject to the ADA.

5. Whether the District Court correctly dismissed with prejudice the FAC as to MEA, under Rule 12(b)(6), for failure to state a claim where Appellant, despite two bites at the apple and MEA's motion to dismiss the original complaint on this very ground, did not allege any wrongdoing by MEA.

6. Whether Appellant, by failing to raise them below, has waived the arguments that the District Court should not have dismissed the FAC as to MEA because there *might* be a joint venture between AUA and MEA or because MEA is an

5

independent contractor. Whether, if the Court addresses these waived arguments, they lack merit where (a) there is no allegation or evidence of a profit-loss sharing agreement between AUA and MEA to support a finding of a joint venture; and (b) Appellant still fails to make any non-conclusory and non-speculative allegation of misconduct by MEA.

7. Whether, as additional and alternate grounds to affirm the District Court's dismissal of the FAC as to MEA, MEA is not subject to the Rehabilitation Act, nor, for purposes of Appellant's claims, the ADA.

8. Whether the District Court was within its discretion in declining *sua sponte* leave to amend the FAC where Appellant never asked for leave and granting leave would have been futile.

## COUNTER-STATEMENT OF THE CASE

### A. The Parties

AUA is a medical school located and operated in Antigua. (Appellant's Appendix ("App-") 37–58 (FAC) ¶¶ 1, 12.)[1] It is chartered and incorporated under the laws of Antigua and Barbuda. (Supplemental Appendix ("SA-") 147 (Declaration of Vernon Solomon, AUA's Vice President for Administration and Community Affairs ("Solomon Decl.")) ¶ 3.) It has no office in New York. (*Id.* ¶¶

---

1. Appellees presume the allegations in the FAC to be true for purposes of the motion to dismiss only.

3-4.)  It also is not registered to do business, and does not have an agent designated to accept service of process, in New York.  (SA-62 & 152 (screenshots from the New York Department of State ("NYDOS") website).)  AUA contracts with service-providers in the United States to provide it various services.  (SA-147–48 (Solomon Decl.) ¶ 5.)

MEA is a separate New York company that provides back office and administrative services to international institutions of higher education, including AUA.  (*Id*.)  MEA does not make substantive, academic decisions regarding AUA's students, and the FAC does not allege otherwise.  (*Id*.)  Rather, MEA handles administrative matters for AUA, *e.g.*, coordinating and managing the paperwork for AUA students' clerkships at U.S. hospitals.  (*Id*.; *see also* App-74–82 (AUA-MEA Services Agreement ("Services Agreement")).)

## B.  Appellant Is Unable to Pass the CCSE

Students attending AUA complete their first two years in Antigua and thereafter participate in clinical rotations in U.S. hospitals.  (FAC ¶ 12.)  In 2010, Appellant joined AUA as a fifth-semester transfer student.  (*Id*. ¶¶ 11, 37.)  Appellant was a resident of Washington, D.C., as she continued to be for her entire tenure at AUA.  (*Id*. ¶ 11.)  In 2010, before taking her first shelf exam (taken at the end of a rotation), Appellant requested an accommodation based on dyslexia.  (*Id*. ¶¶ 1, 38.)  As Appellant admits, AUA had no personnel in the United States who handle

accommodation requests. (*See id*. ¶ 38; Appellant's Brief ("App. Br.") at 13.) Rather, all decisions regarding whether and what accommodations to provide students are made by AUA's clinical psychologist in Antigua, Dr. James Rice. (SA-148 (Solomon Decl.) ¶ 7.) Accordingly, AUA directed Appellant to Dr. Rice, who granted Appellant an accommodation of time-and-a-half. (FAC ¶ 38.) AUA provided Appellant the same accommodation for other exams, which she passed. (*Id*. ¶ 44.)

In 2014, Appellant took the CCSE three times, in Virginia, with the same time-and-a-half accommodation. Appellant failed to get the minimum passing score each time. (*Id*. ¶¶ 30, 50.) Before taking the CCSE for a fourth time, Appellant wrote to Dr. Rice in Antigua for an accommodation of double time, which he granted. (*Id*. ¶¶ 52-53.) On November 25, 2015, Appellant took the CCSE, again in Virginia, and again failed. (*Id*. ¶¶ 30, 53, 54.)

Appellant then asked AUA whether AUA would be willing to find a testing site where Appellant could take the exam over a 2-day period. (*See id*. ¶ 55.) Dr. Juli Valtschanoff, AUA's Chief Proctor in Antigua, conducted the search, but to no avail. (*Id*. ¶ 57.) AUA then granted Appellant an accommodation of more than two times, so that in addition to having double the time for the exam, Appellant also could have at least two more hours to take breaks. (*See id*. ¶¶ 53, 59-61.) AUA also extended the deadline for Appellant to complete her graduation requirements from

8

March 31, 2016 to July 31, 2016.  (*Id.* ¶ 58.)  On July 1, 2016, Appellant took the CCSE for a fifth time, again in Virginia, and again failed.  (*Id.* ¶¶ 60-61, 64.)

In July 2016, AUA dismissed Appellant from the M.D. program for failure to complete her graduation requirements by the July 2016 deadline.  (*Id.* ¶ 65; App-60.)  This decision was made by AUA's Promotions Committee, which makes all academic decisions regarding AUA students, and, like other academic functions of the university, is based in Antigua.  (SA-149 (Solomon Decl.) ¶¶ 11-12; SA-91 (FAC Ex. 16); FAC ¶ 65).)  Appellant appealed her dismissal to AUA's Appeals Committee, also based in Antigua, which upheld the dismissal.  (FAC ¶ 67; SA-149 (Solomon Decl.) ¶¶ 11-12.)

## C.    The Proceedings Below:  Appellant Fails to Serve AUA

Appellant filed the Complaint, naming AUA, MEA and the NBME (which Appellant has dropped from the appeal).  Appellant asserted various claims against AUA and MEA, alleging that AUA failed to provide Appellant "reasonable accommodations" for the CCSE and that her dismissal from AUA was improper.  Relevant to this appeal are Appellant's claims under the Rehabilitation Act and ADA for alleged disability discrimination.  (*See infra*, 12-13.)

On December 9, 2019, Appellees moved to dismiss the Complaint on various grounds, including failure to serve AUA.  (SA-5–47, "First MTD.")  AUA submitted sworn declarations from Mr. Solomon and the General Counsel of MEA

that AUA has no offices in New York, nor a designated agent in New York to accept service of process for AUA, and that Ms. O'Brien, with whom the process server left the papers for MEA and AUA, is an MEA-administrative assistant, and is not authorized to accept service for AUA. (SA-28; SA-48–49 ¶¶ 4, 6; SA-50–51 ¶¶ 3-4.) AUA also directed Appellant to the NYDOS website, which shows that AUA has no registered office or agents to accept service of process in this state. (SA-28; SA-62.) Thus, AUA clearly put Appellant on notice that she had not effected service on AUA. Appellant did nothing to cure service.

On January 14, 2020, Appellant filed the FAC. On February 4, 2020, Appellants moved to dismiss the FAC on almost identical grounds. (SA-98–145, "Second MTD.") As before, AUA moved to dismiss the FAC for failure to serve, and submitted similar sworn declarations and evidence, including this time a declaration from Ms. O'Brien that she is not authorized to accept service for AUA, and she never represented otherwise to the process server, who did not ask her. (SA-131–32; SA-146, SA-147–49, SA-152.)

Appellant again did nothing to cure service. Instead, in her March 5, 2020 Opposition to the Second MTD, Appellant insisted she had correctly served AUA when her server left the process papers with Ms. O'Brien. (SA-187–89.) Appellant did not ask for leave to correct service.

### D.    The District Court's Decision

On October 13, 2020, the District Court (the Honorable Jesse M. Furman) issued an Opinion and Order granting Appellees' motion to dismiss the FAC.  (App-16–29 (the "Opinion")).  Judge Furman noted that even granting Appellant the "special solicitude" entitled to a *pro se* plaintiff, the FAC must be dismissed.  (App-16.)

Judge Furman granted AUA's motion to dismiss without prejudice, based on Appellant's failure to serve AUA.  Judge Furman reasoned that, *first*, despite Appellant's conclusory statements that AUA has a New York office, AUA provided sworn statements that that was not true, and Appellant's only "evidence"— a photograph allegedly taken by the process server from outside MEA's New York office, which showed the logo, "Manipal Education Americas, LLC AGENT FOR: AUA" (SA-199)—in fact "support[ed] the conclusion that the location was MEA's office, not AUA's."  (App-21–22.)  *Second*, as the declarations of AUA and Ms. O'Brien show, she was not an AUA employee, nor authorized to accept service for AUA.  Moreover, as evidenced by the declarations of Ms. O'Brien and Appellant's process server, Ms. O'Brien did not make any representation to the contrary, nor did Appellant's process server inquire into her authority to accept process for AUA.  (App-22–23 (citing supporting authority).)  *Finally*, while acknowledging that the statute of limitations might preclude Appellant from bringing new claims against

11

AUA, Judge Furman concluded that it was appropriate to grant AUA's motion to dismiss for failure to serve because "[Appellant] had been on notice of the defect in service on AUA since at least December 9, 2019 when AUA and MEA filed their motion to dismiss the original complaint, but she has taken no steps to correct it." (App-23 & n.5.)

Judge Furman granted MEA's motion to dismiss the FAC for Appellant's failure to state a claim against MEA because the FAC "is devoid of any allegations that MEA [rather than AUA] engaged in wrongdoing." (App-27.) He noted that the FAC's allegations regarding MEA are mostly jurisdictional, and the remaining allegations assert that AUA, not MEA, was responsible for the actions giving rise to Appellant's claims. (App-27–28.)

Judge Furman did not consider Appellee's additional arguments for dismissal. He also declined *sua sponte* to grant Appellant leave to further amend her complaint because he had already given Appellant one opportunity to amend, she had not sought leave to amend again, "nor suggest[ed] that she possesses any additional facts that could cure the defects" in the FAC. (App-28–29.)

### E.    Scope of the Appeal

The Appellant's brief notes that, in addition to the Rehabilitation Act and ADA claims, the FAC alleged other state tort, contract and disability discrimination claims, "which were dismissed and [are] not germane to this appeal."

(App. Br. at 10, *see also id.* at 6, 7.) Since Appellant is not challenging the dismissal of these claims on appeal, Appellees also have not addressed them and the Court should treat them as abandoned for purposes of this appeal. *See Taylor v. Rodriguez*, 238 F.3d 188, 196-97 (2d Cir. 2001) (claims as to which the *pro se* appellant did not include arguments in his appeal brief were abandoned for purposes of the appeal); *accord Divers v. Metro. Jewish Health Sys.*, 383 F. App'x 34, 35 n.2 (2d Cir. 2010) (summary order).

## SUMMARY OF THE ARGUMENT

**AUA.** This Court should affirm the District Court's dismissal without prejudice of Appellant's claims against AUA for the following reasons:

*First*, the District Court did not abuse its discretion in holding that Appellant had failed to effect service on AUA where the evidence shows that AUA has no office or designated agent to accept process in New York, that Ms. O'Brien was not authorized to accept service for AUA, and the process server made no inquiry to determine otherwise.

*Second*, Appellant raises on appeal two waived and meritless arguments. One, Appellant argues that the District Court abused its discretion by dismissing the FAC as to AUA without giving Appellant time to cure service. *But*, Appellant never sought the District Court's leave to cure service, and, therefore, has waived this argument. Even if the Court were to reach the merits of this argument,

13

Appellant, regardless of her *pro se* status, has not provided a "colorable excuse" for failing to serve AUA. Two, Appellant argues that MEA had "actual" and "apparent" authority to accept service for AUA. Appellant failed to preserve this argument below—there is no mention whatsoever of "actual" or "apparent" authority in the FAC or Appellant's briefing below. Even if the Court were to address Appellant's belated arguments, these arguments lack merit because they are based on misapplication of the law and entirely unsupported by the record.

      *Third*, the Court also can affirm dismissal of the FAC as to AUA on three alternate grounds supported by the record. *See Cox v. Onondaga Cnty. Sheriff's Dep't*, 760 F.3d 139, 145 (2d Cir. 2014) (citing *McElwee v. Cnty. of Orange*, 700 F.3d 635, 640 (2d Cir. 2012)) (this Court may affirm the district court's decision on any ground supported by the record, even if the district court did not rely on that ground). First, the District Court lacked personal jurisdiction over AUA, which is incorporated and headquartered in Antigua, and none of Appellant's claims arise from or have a substantial connection with any alleged conduct in New York. Second, this case, which involves conduct and decisions made entirely in Antigua by an Antiguan school regarding a Washington, D.C.-based former student, should be dismissed on *forum non conveniens* grounds in favor of Antigua. Third, the CCSE is not the type of exam covered by the ADA.

**MEA.**  This Court should affirm the District Court's dismissal with prejudice of Appellant's claims against MEA for the following reasons:

*First*, the District Court properly held that Appellant failed to state a disability discrimination (or any other) claim as to MEA because the FAC does not contain a single allegation of wrongdoing by MEA giving rise to those claims.

*Second*, Appellant's new arguments on appeal—that AUA and MEA *might* have been a joint venture with regard to the medical school or that MEA is an independent contractor—were not preserved for appeal and should not be addressed by the Court.  Even if the Court were to address these belated and speculative arguments, they are utterly lacking in merit—the record clearly shows there was no joint venture between AUA and MEA, and MEA's status as an independent contractor is unrelated to its alleged liability here; if anything, it highlights that MEA is not responsible for any of Appellant's allegations of wrongdoing against AUA. Appellant's baseless arguments also highlight that the District Court correctly dismissed the FAC without further leave to amend.

*Third*, the Court also can affirm the dismissal as to MEA on the alternate ground that, with respect to the CCSE, which is the subject of this litigation, MEA is not subject to the Rehabilitation Act or the ADA.

*Finally*, although not clearly identified by Appellant as an issue on appeal, it appears that Appellant is also challenging, in the context of the claims

against MEA, the District Court's decision *sua sponte* to decline leave to amend. The District Court did not abuse its discretion in doing so because Appellant never requested leave to amend. Moreover, the District Court correctly determined that granting leave to amend would be futile where Appellant abjectly failed to cure the FAC's deficiencies, even *after* Appellees put her on notice of those very deficiencies, and there was no indication that Appellant possessed any curative facts so as to survive a motion to dismiss.

## ARGUMENT

### I. THE DISTRICT COURT PROPERLY DISMISSED APPELLANT'S CLAIMS AGAINST AUA FOR FAILURE TO SERVE

#### A. Standard of Review

This Court reviews a district court's dismissal under Rule 12(b)(5) for insufficient service of process for abuse of discretion. *Dickerson v. Napolitano*, 604 F.3d 732, 740 (2d Cir. 2010). A district court abuses its discretion only if it has "(1) based its ruling on an erroneous view of the law, (2) made a clearly erroneous assessment of the evidence, or (3) rendered a decision that cannot be located within the range of permissible decisions." *Gerena v. Korb*, 617 F.3d 197, 201 (2d Cir. 2010). Once a defendant challenges the sufficiency of service of process, it is the plaintiff's burden to show the adequacy of service. *See Howard v. Klynveld Peat Marwick Goerdeler*, 977 F. Supp. 654, 658 (S.D.N.Y. 1997), *aff'd*, 173 F.3d 844 (2d Cir. 1999).

**B.  Appellant Has Not Identified Any Specific Error in the District Court's Findings.**

Appellant argued below that her service on AUA was proper because she served process at AUA's office at One Battery Park Plaza in New York and Ms. O'Brien never disclaimed authority to accept service for AUA.  (SA-187–89.)  Within this context, Appellant also made the conclusory assertion, that "[a]s the agent of AUA, MEA was authorized to accept service on its behalf, especially where as here, both entities held themselves out as principal-agent."  (*Id.* at SA-188–89.)  Appellant provided no legal support for this argument, nor any elaboration.

The District Court properly relied on sworn declarations and other record evidence to find that the One Battery Park office was MEA's office, not AUA's; Ms. O'Brien was not an employee authorized to accept service for AUA; and the process server did not do due diligence to determine whether that was the case.  (App-21–23.)  The District Court also noted that "[t]he alleged relationship between MEA and AUA does not obviate [Appellant]'s obligation to properly serve AUA in its own right."  (App-22 n.4.)  Appellant does not specifically dispute any of these findings or conclusions (except contend incorrectly that her process server was not required to inquire about Ms. O'Brien's scope of authority).  (App. Br. at 28-36.)

Instead, for the first time on appeal, Appellant makes two arguments.  *First*, she argues that the District Court abused its discretion by dismissing the FAC

without giving Appellant leave to "amend to the extent the court found the service on AUA to be insufficient." (App. Br. at 30.) (Appellant presumably means leave to "cure" service since none of the excuses she presents (*id*. at 28-29) could be cured by amending the FAC as opposed to curing service.) *Second*, she argues that MEA had actual or apparent authority to accept service on behalf of AUA. The Court should not consider these arguments because they were not properly preserved. They also are meritless.

## C. The District Court Did Not Abuse Its Discretion in Dismissing the FAC Without *Sua Sponte* Granting More Time to Cure Service.

### 1. Appellant Waived the Time-to-Cure-Service Argument

"[I]t is a well-established general rule that an appellate court will not consider an issue raised for the first time on appeal." *Greene v. United States*, 13 F.3d 577, 586 (2d Cir. 1994). This Court exercises its discretion to reach the merits of a waived argument only "where necessary to avoid a manifest injustice or where the argument presents a question of law and there is no need for additional fact-finding." *Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 114 (2d Cir. 2005) (omitting internal citation and quotation marks); *see also Harleysville Worcester Ins. Co. v. Wesco Ins. Co.*, 752 F. App'x 90, 93 (2d Cir. 2019) (summary order) ("Our discretion to decide purely legal issues should only be exercised where the proper resolution is beyond any doubt.") (citation and quotation marks omitted). However,

"circumstances normally 'do not militate in favor of an exercise of discretion' …
where those arguments were 'available to the [parties] below' and they 'proffer no
reason for their failure to raise the arguments below.'" *Bogle–Assegai v.
Connecticut*, 470 F.3d 498, 504 (2d Cir. 2006) (quoting *Allianz*, 416 F.3d at 114).

Notably, waiver rules apply to civil rights *pro se* litigants as well. This
is so *even* where, as here, application of the rules might result effectively in dismissal
with prejudice of some or all of plaintiff's claims. *See, e.g.*, *Perez v. Mason Tenders
Dist. Council Tr. Funds*, 742 F. App'x 584, 585 (2d Cir. 2018) (summary order)
(declining to consider newly-raised argument on appeal by *pro se* plaintiff, and
affirming dismissal with prejudice of disability discrimination claims); *Zerilli-
Edelglass v. New York City Transit Auth.*, 333 F.3d 74, 79-80 (2d Cir. 2003) (same
for a *pro se* plaintiff bringing sex and disability discrimination claims). Thus, an
appellant cannot claim manifest injustice based simply on appellant's *pro se* status
or the fact that appellant will not be able to refile her claims.

Here, Appellant never sought leave or additional time to cure defective
service on AUA. Therefore, Appellant has waived that argument. Nor is this the
type of situation where the Court should exercise its discretion to reach the merits of
a newly-raised argument. *First*, there is no manifest injustice in holding Appellant
to the requirements of proper service where she had ample notice and time to correct
service, but declined to do so. Also, as discussed above, dismissal of claims with

prejudice, even of a *pro se* plaintiff, in and of itself, does not constitute manifest injustice. *Second*, Appellant could have raised this argument below, but did not; nor has she provided a justifiable reason for failing to preserve this argument. It might have been a closer call had Appellant at least asked the District Court, on a protective basis, for leave to correct service on AUA if the court determined service was defective. Appellant did not do that either. Appellant certainly knew how to seek alternate relief when she so desired. (SA-183–84 (seeking jurisdictional discovery *in the event* the District Court found no personal jurisdiction over AUA).) *Third*, whether Appellant had a justifiable excuse for failing to serve AUA is not a "purely legal question," the "resolution of which is beyond any doubt." *See, e.g.*, *Zubair v. Entech Eng'g, P.C.*, 550 F. App'x 59, 60 (2d Cir. 2014) (summary order) (declining to entertain new argument on appeal which was theoretically available to appellants in the district court, and would require the court to make findings of fact).

## 2. The District Court Did Not Abuse Its Discretion

Even if the Court were to address Appellant's new argument that the District Court abused its discretion by declining to provide Appellant even more time to cure service, that argument has no merit.

The District Court was not required to give Appellant notice of defective service before dismissing the FAC. Rule 4(m) requires such notice only when a court *sua sponte* dismisses a complaint for failure to serve, not when

20

dismissal is pursuant to defendant's motion, as was the case here. *See Cioce v. Cty. of Westchester*, 128 F. App'x 181, 183 (2d Cir. 2005) (summary order) (district court not required to give *pro se* plaintiff notice of defective service where defendant's motion to dismiss notified plaintiff of the possibility of dismissal for invalid service).

A district court must also give a plaintiff appropriate additional time to effect proper service where plaintiff shows "good cause" for the failure to serve. Fed. R. Civ. P. 4(m). In the absence of good cause, the district court has discretion to extend the time for service, but is not required to do so. *Zapata v. City of New York*, 502 F.3d 192, 197 (2d Cir. 2007). Before this Court "will even consider vacating a Rule 4(m) dismissal for abuse of discretion, the plaintiff must ordinarily advance some colorable excuse for neglect." *Id*. at 198. This Court reviews the district court's determination of "good cause" and discretionary grant of extension under the abuse of discretion standard. *Id*. at 199. Appellant misses, by leaps and bounds, the standards for mandatory and discretionary grants of an extension of time to cure service.

*First*, Appellant has never argued, nor can she, that she had "good cause" for failure to properly serve AUA. To show good cause, a "plaintiff must demonstrate that despite diligent attempts, service could not be made due to exceptional circumstances beyond his or her control." *See Spinale v. United States*, 2005 WL 659150, at *3 (S.D.N.Y. Mar. 16, 2005), *aff'd*, 352 F. App'x 599 (2d Cir.

2009) (summary order).  Here, Appellant did nothing to correct service *after* she was on notice since at least December 9, 2019 that AUA contested service, and choosing not to do anything was entirely within her control.  Appellant's failure to request leave or time to cure service, even on a protective basis, further militates against a finding of good cause.  *See Bogle-Assegai,* 470 F.3d at 508 (no good cause shown where plaintiff never requested more time to effect service).

*Second*, the District Court could not have abused its discretion in failing to give Appellant leave to cure service because Appellant never requested that relief. *See, e.g.*, *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) ("no court can be said to have erred in failing to grant a request that was not made").

*Third*, in deciding whether to grant AUA's motion to dismiss for failure to serve AUA, the District Court properly considered that Appellant had taken "no steps" to correct service although she had been on notice of the defect since Appellees' First MTD.  Thus, the District Court would have been well within its discretion to dismiss the FAC without giving additional time to Appellant to cure service, even if Appellant had asked for that time.  *See Frankenberger v. Firth Rixson, Inc.*, 565 F. App'x 37, 38 (2d Cir. 2014) (summary order) (district court did not abuse its discretion in dismissing complaint, where *pro se* plaintiff "had not been diligent in his efforts to effect service in a timely manner").

This is so, even considering, as the District Court did, that dismissal might preclude Appellant from re-filing one or more of her claims against AUA because of the statute of limitations. (App-23 & n.5.) Where good cause is lacking, the Second Circuit will not disturb a district court's dismissal resulting in time-barred claims "so long as there are sufficient indications on the record that the district court weighed the impact that a dismissal or extension would have on the parties." *Zapata*, 502 F.3d at 197. Those requirements are satisfied here. Appellant did not argue, nor could she, that she had "good cause" for failing to properly serve AUA. (*Supra*, 21-24.) The District Court specifically acknowledged that dismissal of the FAC against AUA for failure to serve AUA might preclude Appellant from re-filing claims against AUA because of the statute of limitations (App-23 n.5), but weighed that against Appellant's lack of diligence, in concluding that AUA's motion to dismiss for failure to serve should be granted. (App-23.) Moreover, as this Court has held, "no weighing of the prejudices between the two parties can ignore that the situation is the result of the plaintiff's neglect," *Zapata*, 502 F.3d at 198, which was the case here. *See Almonte v. Suffolk Cty.*, 531 F. App'x 107, 109–10 (2d Cir. 2013) (summary order) (no abuse of discretion where district court dismissed Section 1983 claim even though appellant would be time-barred from refiling it where failure to serve was allegedly based on process server's mistake); *Harmon v. Bogart*, 788 F. App'x 808, 810 (2d Cir. 2019) (summary order) (same for disability and age

23

discrimination claims, where failure to serve was based on appellant's attorney's mistake).

*Third*, none of Appellant's belated excuses for failure to properly serve AUA constitutes a "colorable excuse for neglect," much less "good cause" for failing to serve AUA. Appellant argues that the District Court's November 18, 2019 order, which *sua sponte* granted her leave to amend the Complaint to cure any deficiencies identified in Appellees' then-to-be-filed motion to dismiss, did not provide her proper warning that her service was deficient or that she would need to do anything about it. (App. Br. at 28.) However, Appellant cannot reasonably argue that the order somehow misled her to believe that improper service on a defendant was sufficient because the order said <u>nothing</u> about service of process. (SA-3–4.)

Appellant also argues that in response to Appellees' Second MTD, she produced an affidavit from the process server and photographs that the process server had taken, allegedly to show he had served AUA at One Battery Park Plaza in New York. (App. Br. 28-29.) However, Appellant's insistence that AUA has New York offices, in the face of sworn declarations and verifiable evidence produced by AUA as early as December 9, 2019, is not a justifiable excuse for failing to properly serve AUA. Rather, it was a strategic choice by Appellant to insist her service on AUA was sufficient, and ignore AUA's well-supported position to the contrary.

24

For similar reasons, Appellant's dismissive argument that she "was of the belief that she has effected valid service" (App. Br. at 29), is not a justifiable excuse for choosing to ignore AUA's evidence to the contrary. A plaintiff's alleged mistake does not constitute a justifiable excuse for failure to effect proper service— even more so here where Appellant was on clear notice of the mistake. *See, e.g.*, *Cassano v. Altshuler*, 186 F. Supp. 3d 318, 322-24 (S.D.N.Y. 2016) (that *pro se* plaintiffs were not aware of, or did not understand the appropriate methods for service, did not constitute good cause; nor were they entitled to a discretionary extension of time to cure service where they had "been on notice for a substantial period of time that their method of service could be defective and that their claims could be dismissed on that basis"); *Felix v. City of Poughkeepsie*, 2019 WL 5306981, at *7 n.4 (S.D.N.Y. Oct. 18, 2019) ("ignorance and confusion, even in the case of a *pro se* plaintiff [regarding the appropriate method by which to effectuate service], do not excuse the failure to properly serve defendants").

Appellant also contends that the District Court issued its Opinion in October 2020, when COVID was present in New York. This argument makes no sense. The extent of COVID in New York would not impact Appellant's ability to effect service on AUA in Antigua. More importantly, the date of the District Court's Opinion is irrelevant. A court assesses the reasonableness of a plaintiff's due diligence in effecting proper service from when plaintiff was on notice of a possible

defect, *not* from when there is a final court determination of that issue. As this Court explained in *Kurzberg v. Ashcroft*, 619 F.3d 176, 185 (2d Cir. 2010), "if we were to accept the plaintiffs' proposed requirement of an 'official determination' by the court that service of process was defective before the cure provision was triggered, this would effectively require that a motion to dismiss for failure to serve process be granted only after such a motion had already been made once and denied for the purpose of affording the plaintiff a reasonable time to cure." Rather, the Court held, there is nothing "wrong with requiring plaintiffs to adhere to a rule of procedure when their failure to do so has been correctly pointed out by an adversary." *Id*. That is exactly what happened here. AUA put Appellant on clear notice of defective service in its First MTD. But, Appellant did nothing to cure that defect. Thus, Appellant's belated argument that the District Court abused its discretion in dismissing the FAC as to AUA without giving time to cure service is not only waived, but also without merit.

### D. Appellant's Waived Argument that MEA Had "Actual" or "Apparent" Authority to Accept Service for AUA Is Meritless.

Appellant improperly argues that AUA ought to be estopped from disclaiming service because MEA had "actual" or "apparent" authority to accept service for AUA. Appellant did not preserve this argument for appeal. It also is meritless.

### 1. Appellant Did Not Preserve the "Actual" and "Apparent" Authority Arguments for Appeal

Appellant did not argue to the District Court that service on AUA, through MEA, was proper because MEA had actual or apparent authority to accept service for AUA. There is no mention of "actual" or "apparent" authority in Appellant's briefing below. (SA-161–93.) Tellingly, Appellant does not even argue that the District Court erred in finding that MEA did not have "actual" or "apparent" authority to accept service for AUA. (App. Br. at 9, 25, 30.) The District Court, of course, cannot consider an argument Appellant did not present to it. Moreover, Appellant's generalized and conclusory assertions—with no elaboration or legal authority—that "[a]s the agent of AUA, MEA was authorized to accept service on its behalf, especially where as here both entities held themselves out as principal-agent," did not sufficiently preserve her new arguments for appeal. *See Hapag-Lloyd Aktiengesellschaft v. U.S. Oil Trading LLC*, 814 F.3d 146, 155 (2d Cir. 2016) (appellant did not sufficiently preserve its challenge to personal jurisdiction because "we have long held" that "cursory," one-sentence statements before the district court are "generally insufficient to preserve an issue for appeal"); *In re Nortel Networks Corp. Sec. Litig.*, 539 F.3d 129, 132–33 (2d Cir. 2008) (argument on appeal that there is a presumption of reasonableness for fees agreed upon by the lead plaintiff was not preserved simply because a "resembling" argument was made below that a lead plaintiff's view of the reasonableness of the fee be given great deference).

27

Likewise, Appellant's scant references to an "agency relationship," with no further development of that argument, could hardly put AUA or the District Court on notice of her "actual" and "apparent" authority arguments. Notably, the burden is on a plaintiff to prove such authority. *See Santos v. State Farm Fire & Cas. Co.*, 902 F.2d 1092, 1094 (2d Cir. 1990); *Zen Music, Inc. v. CVS Corp.*, 1998 WL 912102, at *3 (S.D.N.Y. Dec. 30, 1998).

Nor should this Court exercise its discretion to reach the merits of Appellant's new arguments. *First*, Appellant could have properly raised each of these arguments below, but did not; nor has she provided any reason for that failure. *Second*, nothing in the record shows that the Court's refusal to address an unpreserved argument on appeal will result in any manifest injustice. *Three*, the existence and scope of actual and apparent authority involves questions of fact, *see Garanti Finansal Kiralama A.S. v. Aqua Marine & Trading Inc.*, 697 F.3d 59, 71 (2d Cir. 2012), and would require this Court to make factual findings regarding, *e.g.*, whether the process server reasonably relied on MEA's or Ms. O'Brien's alleged apparent authority to accept service for AUA. All of these reasons militate against the Court exercising its discretion to resolve new arguments on appeal. (*See also supra*, 18-20.)

## 2.    Appellant's "Actual" Authority Argument Is Meritless

Even if the Court addresses Appellant's belated argument that MEA

had actual authority to accept service of process on behalf of AUA, the argument lacks any merit.

Actual authority, whether express or implied, "is the power of the agent to do an act or to conduct a transaction on account of the principal which, with respect to the principal, he is privileged to do because of the principal's manifestations to him." *Minskoff v. Am. Express Travel Related Servs.*, 98 F.3d 703, 708 (2d Cir. 1996) (quoting Restatement (Second) of Agency § 7 cmt. a (1958)). Whether there is actual agency "depends on the actual interaction between the putative principal and agent, not on any perception a third party may have of the relationship." *Itel Containers Int'l Corp. v. Atlanttrafik Exp. Serv.*, 909 F.2d 698, 702 (2d Cir. 1990).

*First*, there is no evidence that AUA granted actual authority to MEA to accept service of process for AUA. Indeed, both AUA and MEA submitted sworn declarations to the District Court that MEA does <u>not</u> have such authority. (*See supra*, 9-10.)[2]

*Second*, Appellant's alleged "evidence" of actual authority—"hundreds

---

2. Indeed, New York and federal law contain strict requirements for the appointment of an agent to accept service of process. *See, e.g.*, N.Y. CPLR § 308 (requiring written or other contractual designation or a power of attorney); *Perrotta v. Irizarry*, 430 F. Supp. 1274, 1276 (S.D.N.Y.), *aff'd*, 573 F.2d 1294 (2d Cir. 1977) (requiring actual appointment). Appellant has not pointed to any evidence of such designation or appointment.

of emails" from AUA to Appellant that list MEA as agents of AUA; the logo outside

MEA's office; MEA's correspondence to Appellant in which it apparently notified

Appellant that it was acting as agent for AUA; and Ms. O'Brien's alleged failure to

tell the process server that she was not accepting service for AUA—is simply not

relevant to whether AUA granted actual authority to MEA to accept process for

AUA. That is because whether AUA granted MEA actual authority turns on the

interaction between AUA and MEA, not on what Appellant perceived. *Itel*, 909 F.2d

at 702 (activities of purported principal that "might perhaps have been thought by

others to establish an agency relationship" could not give agent actual authority).

*Third*, Appellant's arguments on actual *and* apparent authority

mischaracterize the law of agency. Even if MEA were AUA's agent for certain

functions (*e.g.*, to interact with students for administrative purposes), that does not

mean MEA also had authority to accept service of process for AUA. *See Sikhs for

Just. v. Nath*, 893 F. Supp. 2d 598, 610 (S.D.N.Y. 2012) ("[T]he mere appointment

of an agent, *even with broad authority*, is not enough; it must be shown that the agent

had specific authority, express or implied, for the receipt of service of process.")

(quoting 2 Moore's Federal Practice ¶ 4.10 [4], at 4-174-75) (emphasis added); 1

Moore's Federal Practice ¶ 4.93 ("An agency relationship between parties for one

purpose does not automatically extend to the agency relationship for the purpose of

service of process."); *see also Medal Knitwear v. Ji Hoon Jung*, 2011 WL 6825374,

at *1–2 (S.D.N.Y. Dec. 28, 2011) (although plaintiff argued that "JYP has held itself out as Jung's 'agent' throughout the events underlying the complaint," and even assuming JYP acted as Jung's agent for his entertainment career, that did not satisfy the requirements of actual and apparent authority for accepting service of process).

*Fourth*, contrary to Appellant's contention, AUA was not required to communicate to Appellant the limitations of MEA's actual agency. Under New York law, "'[o]ne who deals with an agent does so at his peril, and must make the necessary effort to discover the actual scope of authority.'" *Itel*, 909 F.2d at 703 (quoting *Ford v. Unity Hospital*, 32 N.Y.2d 464, 472 (1973)). Appellant also speculates that the catch-all provision in the Services Agreement ("such other services [that] AUA and MEA may agree from time to time") may cover accepting process (App. Br. at 34). This argument is purely speculative, and belied by AUA and MEA's sworn declarations that MEA had <u>no</u> such authority.[3] Thus, Appellant's belated "actual" authority argument is meritless.

---

3. Appellant incorrectly states that AUA relied on the Services Agreement as "dispositive of the service issue." (App. Br. at 35.) AUA did not. (SA-131–33, 205–07 (AUA's improper service arguments; no mention of the agreement).) In any event, the Services Agreement simply highlights that AUA did not grant MEA the authority to accept process for AUA. (*See* App-80–82 (listing MEA's contracted services to AUA; no mention of accepting process).)

### 3. Appellant's "Apparent" Authority Argument Is Meritless

Apparent authority arises from the "written or spoken words or any other conduct of the principal which, reasonably interpreted, causes [a] third person to believe that the principal consents to have [an] act done on his behalf by the person purporting to act for him." *Minskoff*, 98 F.3d at 708 (quoting Restatement (Second) of Agency § 27) (internal quotation marks omitted). Apparent authority requires proof that (1) the principal was responsible for the appearance of authority in the agent to conduct the transaction in question, and (2) the third party reasonably relied on the appearance of authority in the agent. *Fletcher v. Atex, Inc*., 68 F.3d 1451, 1462 (2d Cir. 1995) (citing *Greene v. Hellman*, 412 N.E.2d 1301, 1306 (N.Y. 1980)).

In the context of assessing apparent authority for effecting proper service, the question is whether the process server reasonably relied on the principal's words or conduct to serve the purported agent. *See, e.g., Labarbera v. Giacomelli Tile, Inc.*, 2009 WL 1269741, at *1 (E.D.N.Y. May 6, 2009) ("courts in the Second Circuit and in New York have held that a corporation is sufficiently served where an employee of the corporation with apparent authority to accept service did so, *so long as the process server* diligently attempted to comply with the rules of service …") (emphasis added); *Prestige Cap. Corp. v. Fuber LLC*, 2017 WL 2558803, at *3 (S.D.N.Y. June 5, 2017) (denying default judgment because, while "service may be sustained where the employee has apparent authority to accept

service …, it is not clear that [the employee] conveyed [that authority] *to the process server*") (emphasis added); *Martinez v. Church of St. Gregory*, 261 A.D.2d 179, 180 (1st Dep't 1999) (affirming failure to serve where employee did not tell server he was authorized to accept service for defendant; "[n]or does it appear why the *process server* should have otherwise supposed that the receptionist was authorized to accept service of process") (emphasis added). It also is a plaintiff's burden to show "it was reasonable for the process server to infer that the recipient of process was authorized to accept service of process." *Zen Music*, 1998 WL 912102, at *3. Notably, neither of the cases Appellant cites for this argument have anything to do with service of process or a process server's reasonable reliance.

Here, Appellant's defective service of process on AUA does not meet the two requirements of apparent authority. *First*, the process server could not have reasonably relied on the logo outside MEA's office (reading MEA "Agents for" AUA) as evidence that he was effecting service on AUA. "If anything," the logo, as the District Court properly found, "support[ed] the conclusion that the location was MEA's office, not AUA's." (App-21–22.) A district court's factual findings are reviewed under the "clear error" standard. *Zervos v. Verizon New York*, *Inc.*, 252 F.3d 163, 168 (2d Cir. 2001). Appellant has not argued on appeal, nor can she, that there is any "clear error" in the District Court's finding that the logo showed this was MEA's office, not AUA's. Thus contrary to Appellant's contention,

Appellant's process server was not reasonably relieved of his duty of diligence in ensuring he was serving the right party. *See Herbert Constr. Co. v. Continental Ins. Co.*, 931 F.2d 989 (2d Cir. 1991) (duty of inquiry "amounts to an alternative way of asking" whether reliance on the existence of apparent authority was reasonable); *see also Zen Music*, 1998 WL 912102, at *3-4 (no proper service on CVS Corp. where process server left papers with a manager of a CVS store, run by CVS Corp.'s subsidiary, and there was no evidence the manager was authorized to accept such service or represented as such to the server).

  *Second*, both the logo outside MEA's offices and any alleged actions or inactions of MEA's employees on which the process server allegedly relied were words and actions of MEA, not AUA. However, words and actions of the agent, rather than the principal, do not create apparent authority. *See Fletcher*, 68 F.3d at 1462 (affirming no "apparent authority" because use of principal's logo was the act of the purported agent, not the principal).

  Appellant argues that during her dealings with AUA, AUA "listed" MEA on all their correspondence and never told her that MEA was not their agent. (App. Br. at 36.) *First*, that is not true. (*See, e.g.*, App-60 (AUA's dismissal letter).) *Second*, AUA's representations to the Appellant cannot cure the process server's defective service. Here, Appellant filed a Proof of Service and declaration from her process server, as well as photographs that he allegedly took. <u>None</u> of that shows

that the process server relied in any way on the alleged representations made by AUA to the Appellant or an instruction by Appellant that it was sufficient to serve MEA for AUA based on her own purported reliance on AUA's representations. *See Chow v. Kenteh Enters.*, 169 A.D.2d 572, 572-73 (1st Dep't 1991) (distinguishing cases where process server allegedly relies on "conduct, procedure or representation[s]" made by the person he serves from case where he relied on the instruction to simply serve process on a particular person). Rather, Appellant's evidence regarding her process server includes only the process server's conclusory statement that "[o]n October 8, 2019, [he] entered the building where American University of Antigua/MEA was located," and suggests that he relied on the logo outside MEA's offices (which should have alerted him that he was entering MEA's, not AUA's office), told the receptionist in MEA's offices he had "legal documents for American University of Antigua/MEA," and when Ms. O'Brien came out to the desk, he handed her the papers. (App-64–67.) Thus, AUA's representations to the Appellant are simply not relevant to the inquiry here.[4] In short, Appellant's belated

---

4. Even if AUA's representations to Appellant were relevant, they do not suffice to create an inference of "apparent authority" for accepting process. That AUA listed MEA as an agent or representative on some of its correspondence to Appellant, does not support a reasonable inference that MEA also was authorized to accept service of process for AUA. Appellant has pointed to nothing to show "apparent" authority in MEA to legally bind AUA, certainly not this broadly. *See Medal Knitwear*, 2011 WL 6825374, at *1–2 (although plaintiff argued that "JYP

"apparent" authority argument is also without merit.

For the reasons set forth in this Section I, this Court should affirm the District Court's dismissal of AUA for Appellant's failure to properly serve process on AUA.

## II. THE COURT ALSO CAN AFFIRM THE DISTRICT COURT'S DISMISSAL OF AUA ON ALTERNATE GROUNDS

While this Court has sufficient grounds to affirm the dismissal of the FAC as to AUA on the same grounds as the District Court, it also can affirm that dismissal on the additional and alternate grounds of lack of personal jurisdiction, *forum non conveniens*, and with regard to at least the ADA-claim, lack of the application of the ADA to the CCSE.

### A. The District Court Lacked Personal Jurisdiction Over AUA.

On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the "plaintiff bears the burden of establishing that the court has jurisdiction over the defendant." *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001) (citation omitted). The plaintiff must make "a *prima facie* showing by its pleadings and affidavits that jurisdiction exists.'" *Brown v. Showtime Networks*, 394 F. Supp. 3d 418, 429 (S.D.N.Y. 2019) (citations omitted). A *prima facie* showing requires

---

has held itself out as Jung's 'agent'," that did not create apparent authority for accepting service of process).

averment of non-conclusory facts, which "if credited, would suffice to establish jurisdiction over the defendant." *S. New Eng. Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 138 (2d Cir. 2010) (citation omitted). On a Rule 12(b)(2) motion, the court may consider evidence outside the pleadings. *See Sandoval v. Abaco Club on Winding Bay*, 507 F. Supp. 2d 312, 315 (S.D.N.Y. 2007).

A court may exercise personal jurisdiction over a defendant only where: (1) the defendant is subject to general or specific jurisdiction under the law of the forum state; and (2) the exercise of personal jurisdiction comports with constitutional due process. *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 224 (2d Cir. 2014). Here, Appellant has failed to make a *prima facie* showing of either requirement.

## 1.    The District Court Lacked General Jurisdiction Over AUA

A corporation is subject to general jurisdiction, consistent with constitutional due process, only (1) in its place of incorporation, (2) its principal place of business, or (3) in the very narrow "exceptional case," where the corporation's contacts with another forum are "so substantial . . . as to render the corporation at home in that State." *Daimler AG v. Bauman*, 571 U.S. 117, 139 n.19 (2014). Here, the District Court did not have general jurisdiction over AUA because AUA's place of incorporation and principal place of business is Antigua (FAC ¶ 12; SA-147 (Solomon Decl.) ¶ 3), and the FAC contains no allegations remotely

supporting an inference that this is an "exceptional case" where general jurisdiction may nonetheless be exercised over AUA. *See Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437, 447–48 (1952) (only Supreme Court case recognizing "at home" jurisdiction, where a foreign company's principal place of business was determined to be Ohio because its headquarters and operations had temporarily *moved* there from the Philippines due to wartime Japanese occupation). The FAC does not allege that AUA has abandoned and moved its Antigua-offices to New York. Nor can it.

Appellant has contended that AUA "regularly transact[s] business in New York State," (FAC ¶ 29), and also that the District Court should exercise general jurisdiction over AUA because "AUA has engaged in 'purposeful availment' of the benefits and privileges of New York Law," and "its affiliations with the State are so continuous and systematic as to render them at home." (SA-185–86.) However, "conclusory allegations are not enough to establish personal jurisdiction." *Megan v. Biocamp Laboratories*, 166 F. Supp. 3d 493, 496 (S.D.N.Y. 2016). Nor do these statements, even if true, confer exceptional jurisdiction over AUA. *See Daimler*, 517 U.S. at 137-38 ("[S]ubstantial, continuous, and systematic course of business," alone, is insufficient to render a corporation "at home" in a state.); *SPV Osus Ltd. v. Unicredit Bank Austria*, 2019 WL 1438163, at *3, *6 (S.D.N.Y. Mar. 30, 2019) (no general jurisdiction where plaintiff alleged that foreign defendants

"and/or their agents regularly transacted business in New York").

The FAC also alleges, without support, that the District Court has jurisdiction over AUA because AUA "has a principal United States office in New York City." (FAC ¶ 25; *see also id*. ¶¶ 1, 30.) This is insufficient to confer general jurisdiction over AUA. One, Appellant's assertion that AUA has a New York office is both conclusory and demonstrably false. (*See supra*, 6-7, 9-10.) Two, even if true, Second Circuit courts have found no general jurisdiction where a defendant had an office in New York (which, as here, was not defendant's principal place of business) and significantly more connections with New York than those alleged here. *See, e.g.*, *Gucci America, Inc. v. Weixing Li*, 768 F.3d 122, 135 (2d Cir. 2014) (no general jurisdiction over foreign bank that had four branch offices in New York); *In re Sargeant*, 278 F. Supp. 3d 814, 821 (S.D.N.Y. 2017) (that a foreign entity had one of its "primary business offices" in New York did not warrant exercising general jurisdiction over it).

Appellant also contended below, with no legal authority, that a forum selection clause (designating New York as the dispute-resolution forum) in the Services Agreement confers general jurisdiction over AUA. (SA-187.) But, Appellant is not a party to that agreement and cannot enforce the forum selection clause.

## 2. The District Court Lacked Specific Jurisdiction Over AUA

Nor did the District Court have specific jurisdiction over AUA. Specific jurisdiction is claim-specific. *See Goodyear Dunlop Tires Ops. v. Brown*, 564 U.S. 915, 919 (2011). The court could exercise specific jurisdiction over AUA for a particular claim only if doing so complies with (1) New York's long-arm statute and (2) constitutional due process. *See Brown*, 394 F. Supp. 3d at 434.

Appellant relies below on CPLR 302(a)(1) for purported long-arm jurisdiction over AUA. (SA-185.) For such jurisdiction to exist, (1) the defendant, directly or through an agent, must transact business within the state, and (2) plaintiff's claim must "arise from" that transaction. CPLR § 302(a)(1). The "arise from" standard requires that the plaintiff show there was an "articulable nexus" and "substantial relationship" between the transaction and the claim. *See Hill v. HSBC Bank plc*, 207 F. Supp. 3d 333, 339–40 (S.D.N.Y. 2016).[5]

---

5. Citing *Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168-69 (2d Cir. 2013), Appellant argued below that the "arise from" language requires only a "relatedness between the transaction and the legal claim." (SA-185). However, *Licci* does not sanction *any* kind of link. The "relatedness" must still be "an articulable nexus" or "substantial relationship," and not "merely coincidental." *Licci*, 732 F.3d at 164; *Licci v. Lebanese Canadian Bank*, 20 N.Y.3d 327, 340 (2012) (on certification to the New York Court of Appeals). *Licci* involved defendant's repeated use of a New York bank account to transfer funds in support of the very terrorist activity that was the actionable conduct in the case. 732 F.3d at 168-69.

To comport with constitutional due process "the defendant's suit-related conduct must create a substantial connection with the forum." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). This requires that the suit "arise out of or relate to the defendant's contacts with the forum." *Bristol-Myers Squibb Co. v. Superior Ct. of Cal.,* 137 S. Ct. 1773, 1780 (2017). The "arise out of" prong requires "either proximate or but-for causation" between the contacts and the suit-related conduct. *SPV Osus*, 2019 WL 1438163, at *6 (citing *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333 (2d Cir. 2018)). The "relate to" prong, which "incorporates real limits," requires a "strong 'relationship among the defendant, the forum, and the litigation.'" *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026-27 (2021) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)).

Here, Appellant's claims do not "arise from" any of AUA's alleged connections to New York; nor do they have a "substantial connection" with those alleged connections. Appellant's claims, therefore, fail both the long-arm jurisdiction and constitutional due process tests for specific jurisdiction.

Appellant's claims are based on the core allegations that AUA did not provide her "reasonable accommodations" for the CCSE, and AUA improperly dismissed her from the M.D. program. None of the decisions or conduct underlying those claims occurred in New York. Dr. Rice, based in Antigua, decided whether

and what accommodations to provide Appellant for the CCSE; Dr. Valtschanoff, AUA's Chief Proctor in Antigua, attempted to arrange a 2-day CCSE examination for Appellant and ultimately informed her that she would need to take the exam over one day; Appellant sat the CCSE, five times, in Virginia; the decision to dismiss Appellant for failure to meet academic requirements was made in Antigua; and Appellant suffered the alleged consequences of that decision in Washington, D.C. where she resides. (*See supra*, 7-9.) Thus, none of Appellant's claims arises from any alleged AUA (or MEA) transaction in New York; nor are they caused by or strongly related to any alleged occurrences there.[6]

Appellant's laundry list of AUA's purported New York-connections either were incidental to the decisions regarding whether and what accommodations

---

6. In *Ford Motor Co.*, the Supreme Court recently affirmed "related to" specific jurisdiction over an out-of-state defendant, Ford Motors, for plaintiffs' products liability claims where the accidents involving the Ford vehicles and leading to the claims occurred in the forum states, and plaintiffs were residents of, and suffered injuries in, those states. 141 S. Ct. at 1031. On the other hand, in *Bristol-Myers Squibb*, the Supreme Court reversed a finding of specific jurisdiction where, although Bristol Myers marketed the drug-at-issue in California and had research sites there, plaintiffs were not California residents, were not prescribed the drug in California and did not suffer their injuries there. *Ford Motor Co.*, 141 S. Ct. at 1031 (distinguishing *Bristol Myers*). With regard to the "related to" prong, this case is more like *Bristol Myers* than *Ford Motor Co.* Here, even if Appellant is correct that AUA had certain connections with New York, Appellant is not a resident of New York, the decisions of accommodation and dismissal were not taken in New York, and Appellant did not suffer her alleged injuries in New York.

to provide Appellant for the CCSE and to dismiss her, or, by and large, entirely unrelated to Appellant's claims.  Neither can confer specific jurisdiction.

Appellant alleges she had extensive communications with "AUA's personnel in New York City" regarding the CCSE and the setting-up of the accommodations for the exam; that "AUA from its NYC office" "made the accommodation arrangements with NBME, paid the fees, and prescribed the nature of the accommodation;" and Kristal Booth, an MEA employee, informed Appellant by email that Appellant had been dismissed from AUA and that Appellant would be receiving a formal letter of dismissal from AUA's Promotions Committee, and thus the "initial decision to terminate Plaintiff from AUA came from or through AUA's New York office."  (FAC ¶¶ 16, 30; SA-171, SA-185.)  Even if assumed to be true, the administrative actions described by Appellant are "merely coincidental" to the decision of what accommodations to provide Appellant—which per her *own* complaint and papers below, had to be made by Dr. Rice, based in Antigua—and whether to dismiss Appellant.  (*See supra*, 8-9.)  An MEA employee's administrative actions in arranging an accommodation which was considered and granted by AUA's Dr. Rice in Antigua, or communicating a dismissal decision made by AUA's Promotions Committee in Antigua, did not give rise to, nor are "strongly" related to Appellant's alleged injuries.  *See Walden*, 571 U.S. at 284 ("For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must

create a substantial connection with the forum State."). Moreover, administrative email and telephonic communications to and from New York that are incidental to the conduct underlying the claims cannot confer specific jurisdiction. *See, e.g.*, *Barrett v. Tema Dev. (1988), Inc.*, 251 F. App'x 698, 700 (2d Cir. 2007) (summary order) (no specific jurisdiction over breach-of-contract claim where contract was negotiated, executed and breached outside of New York, although plaintiff communicated from New York with defendant's employees, and met one of them in New York regarding the contract); *Scott v. ProClaim America, Inc.*, 2015 WL 3851243, at *4 (E.D.N.Y. June 22, 2015) (communications to and from New York regarding plaintiff's doctors' visits and informing him of his termination did not confer specific jurisdiction over plaintiff's disability discrimination claim where the employer was located, and made the termination decision, in Texas); *id.* (distinguishing case where the termination decision was made in New York).

The FAC also alleges that Appellant had "extensive" communications with Dr. Bell, AUA's Executive Dean of Clinical Services, whose emails include MEA's New York address in his signature block. (FAC ¶ 13.) Even accepting as true that Dr. Bell had these communications while in New York, Appellant's only alleged communications with him involve Dr. Bell directing Appellant to work with Dr. Rice, who is based in Antigua, regarding her request for accommodations, and extending her graduation deadline. (*Id.* ¶¶ 51, 58.) Neither communication gave

rise to Appellant's claims, nor created a substantial connection between Appellant's claims and New York.

Appellant's laundry list of other *alleged* New York connections—*e.g.*, that the "decision to admit Plaintiff to the medical school came from AUA's New York's administrative office;" Appellant attended an AUA-sponsored orientation in New York City; she completed her first clinical coursework as an AUA student in New York; Appellant paid her tuition to personnel in New York; Appellant exchanged "hundreds of emails" with her clinical coordinators, who were in New York; AUA is subject to the OCR's jurisdiction—even if accepted as true, have nothing to do with Appellant's specific claims. (*See* FAC ¶¶ 13, 15, 30, 31). Unrelated contacts with the forum state cannot create specific jurisdiction. *See Bristol-Myers Squibb*, 137 S. Ct. at 1782.[7]

Finally, the FAC incorrectly alleges that the District Court may exercise jurisdiction over AUA because AUA "has a principal United States office in New York City," and also that "AUA and its agent/MEA … regularly transact business in New York State." (FAC ¶ 25, 29.) Even assuming that these allegations are true,

_____

7. The FAC also alleges that because AUA is one of many educational and medical institutions in the global Manipal Group, it must be a "part of MEA." (FAC ¶ 23.) That inference has no legal basis. The fact that AUA might be part of the global Manipal group does not mean that it is the same legal entity as another institution in that group.

generalized contacts with the forum state cannot confer claim-specific jurisdiction. *See Bristol-Myers Squibb*, 137 S. Ct. at 1781 (a defendant's "general connections with the forum are not enough" to confer specific jurisdiction).

For the foregoing reasons, the District Court did not have specific jurisdiction over Appellant's claims, including those on appeal.[8]

### 3. Appellant Did Not Provide Any Bases for Jurisdictional Discovery

Jurisdictional discovery is warranted only where the plaintiff makes a "threshold showing" of jurisdiction. *Daval Steel Prod., a Div. of Francosteel Corp. v. M.V. Juraj Dalmatinac*, 718 F. Supp. 159, 162 (S.D.N.Y. 1989). Appellant did not do so here. Rather, Appellant argued below that she is entitled to jurisdictional discovery to serve FOIA requests on the federal and state governments to obtain applications for FAFSA loans and clinical clerkships, which might show that AUA has "an office" in New York. (SA-183–84.) However, as noted above, whether AUA has a New York office is not dispositive of the personal jurisdiction issue here. Nor is a speculative and unidentified "nexus" to the state regarding federal loans and accreditation sufficiently relevant to the claims to warrant claim-specific

---

8. The FAC also appears to rely on Rule 4(k)(1)(B) as grounds for asserting personal jurisdiction over AUA. However, "bulge jurisdiction" may be used to establish personal jurisdiction only over parties joined under Rules 14 or 19, not over an original defendant. *See* Fed. R. Civ. P. 4(k)(1)(B).

jurisdiction. Moreover, jurisdictional discovery is not a tool for an "unfounded fishing expedition." *See Togut v. Forever 21, Inc.*, 285 F. Supp. 3d 643, 648 (S.D.N.Y. 2018).

## B. The Claims Against AUA Should Be Dismissed On *Forum Non Conveniens* Grounds.

The Court can also affirm the District Court's dismissal of the FAC as to AUA on *forum non conveniens* grounds in favor of Antigua because this case does not belong in a New York court. To determine whether to grant a Rule 12(b)(6) motion to dismiss on these grounds, the court: (1) determines the degree of deference properly accorded to plaintiff's choice of forum; (2) considers whether the alternative forum proposed is adequate to adjudicate the parties' dispute; and (3) balances the public and private interests implicated by the choice of forum. *See Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 153 (2d Cir. 2005). Applied here, this three-factor analysis decidedly favors dismissal of this case in favor of Antigua.

### 1. Appellant's Choice of Forum Is Not Entitled to Deference

In determining the degree of deference afforded to plaintiff's choice, courts look at the plaintiff's "*bona fide*" connections to the forum state, and other factors of convenience, such as availability of evidence and witnesses. *Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 71 (2d Cir. 2003). Generally,

"a plaintiff's choice of forum is entitled to substantial deference." *Id.* at 70. That is not the case where, as here, a U.S. citizen brings suit in a district other than her home district. *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 71-73 (2d Cir. 2001).

Appellant and her claims do not have any "*bona fide*" connections to New York. *First*, neither AUA, nor Appellant, are located there (FAC ¶¶ 11, 12),[9] and the District Court has dismissed MEA—the only New York party—from the case. *Second*, while Appellant alleges a laundry list of ministerial, administrative and entirely unrelated conduct in New York, the key operative facts underlying Appellant's accommodation and dismissal claim did not occur there. (*Supra*, 7-9, 41-42.) The fact that Appellant's clinicians may reside in D.C. and that Appellant *may* designate a witness who works in NBME's Philadelphia office (SA-186) does not tip the balance in favor of New York. The primary witnesses—Dr. Rice, regarding Appellant's failure-to-accommodate claims and the Promotions and Appeals committees, regarding the dismissal claim—are based in Antigua. (*Supra*, 8-9.) Accordingly, Appellant's choice of forum should be given limited, if any, deference. *See Van Bourgondien-Langeveld v. Van Bourgondien*, 2010 WL 5464890, at *4 (E.D.N.Y. Dec. 29, 2010) ("little deference" owed to the plaintiffs'

---

9. As demonstrated by NYDOS public records (SA-152), of which the Court can take judicial notice on a Rule 12(b)(6) motion, *Simon v. Smith & Nephew, Inc.*, 990 F. Supp. 2d 395, 401 n.2 (S.D.N.Y. 2013), AUA does not have a New York office.

choice of forum because plaintiffs did not live there, only one of the two defendants lived there, "operative events" in the action took place in the Netherlands, and one key witness was located there).

### 2.    Antigua Is an Adequate Alternative Forum

An alternative forum is adequate if the defendants are amenable to service of process there, and if it permits litigation of the disputed subject matter, even if the legal relief available is not equally favorable. *Capital Currency Exch., N.V. v. Nat'l Westminster Bank PLC*, 155 F.3d 603, 609, 611 (2d Cir. 1998) (omitting citation); *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 250, 254 n. 22 (1981). Here, Antigua is an adequate alternative forum because AUA, the only proper defendant in this dispute, is an Antiguan school, and, therefore, amenable to service of process in Antigua, and Antigua's Disabilities and Equal Opportunities Act of 2017 affords relief for discrimination based on a disability.[10]

### 3.    Public and Private Factors Favor Dismissal in Favor of Antigua

The balance of public and private factors also favors dismissal of this case in favor of Antigua.  As to the public factors, Antigua has a stronger local

---

10. *See*
   http://legalaffairs.gov.ag/pdf/bills/DISABILITIES_EQUAL_OPPORTUNITIE
   S_BILL_2017-PV.pdf.

interest in the dispute since it relates to alleged discrimination by AUA, an Antiguan medical school, against one of its students.  New York, on the other hand, has no local interest in the dispute since New York's only connection to the case is MEA, which provides certain administrative services to AUA and against which no claim of specific misconduct has been made.  *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09 (1947) ("Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation.").  Private factors, such as the location of proof and key witnesses (*supra*, 47-48), also favor dismissal in favor of Antigua.[11]

## C.    The CCSE Is Not Covered by the ADA.

This Court also can affirm the District Court's dismissal, at least of Appellant's ADA claim, as to AUA on the additional ground that the CCSE is not an examination covered by the ADA.  The ADA requires disability accommodation by "[a]ny person that offers examinations or courses related to applications, licensing, certification, or credentialing for secondary or postsecondary education,

---

11. Other New York courts also have dismissed cases by U.S.-based AUA students against AUA based on *forum non conveniens* grounds, including that AUA's only "connection with New York was through [MEA], but [MEA]'s role was limited to administrative services."  *See Garcia v. AUA*, 156081/2012 (N.Y. Sup. Ct. Oct. 22, 2013) (SA-159); *Aina v. AUA*, 161 A.D.3d 508, 508-09 (2d Dep't 2018); *Alla v. AUA*, 965 N.Y.S.2d 469, 469 (1st Dep't 2013); *Patel v. AUA*, 104 A.D.3d 568 (1st Dep't 2013).

professional, or trade purposes." 42 U.S.C. § 12189. According to Appellant's own

allegations, the CCSE consists of "old exams" that medical schools, such as AUA,

use as practice exams to help their students prepare for the official USMLE Step 2

exam; the schools also use the CCSE score as part of students' grades. (FAC ¶ 21;

App. Br. at 15-16.) Thus, the CCSE is not an exam or course related to "applications,

licensing, certification, or credentialing" for any education or trade, and accordingly,

is not covered by the ADA.

## III. THE DISTRICT COURT PROPERLY DISMISSED THE FAC AGAINST MEA FOR APPELLANT'S FAILURE TO STATE A CLAIM

### A. Standard of Review

This Court reviews a district court's dismissal of a complaint pursuant

to Rule 12(b)(6) *de novo*. Although the Court "constru[es] the complaint liberally,

accepting all factual allegations in the complaint as true, and drawing all reasonable

inferences in the plaintiff's favor," *Chambers v. Time Warner, Inc.*, 282 F.3d 147,

152 (2d Cir. 2002), the complaint must plead "enough facts to state a claim to relief

that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

A claim has "facial plausibility when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the

Court affords "special solicitude" to a *pro se* plaintiff's complaint, the complaint

must still "meet the plausibility standard." *Rudaj v. Treanor*, 522 F. App'x 76, 77 (2d Cir. 2013) (summary order).

## B. The District Court Properly Dismissed the FAC as to MEA.

Despite having two bites of the apple, first the Complaint and then the FAC, Appellant has not alleged any wrongdoing by MEA, only AUA. As the District Court correctly noted, the FAC included almost exclusively jurisdictional allegations against MEA. (App-27.)[12] Appellant's failure to allege any wrongdoing by MEA is particularly remarkable because MEA identified this very deficiency in its motion to dismiss the Complaint. (SA-31.) The FAC, filed over a month later, still failed to allege <u>any</u> misconduct by MEA. Moreover, when MEA moved to dismiss the FAC for failure to state a claim (SA-134–35), Appellant did not even address the argument. (SA-161–94.) The District Court, therefore, correctly dismissed Appellant's claims against MEA. *See Gitzis v. Chen*, 2020 WL 1140422, at *2 (E.D.N.Y. Mar. 9, 2020) (dismissing *pro se* plaintiff's ADA complaint where plaintiff had not alleged any wrongdoing by defendant, so the court was "unable to

---

12. The allegations in the FAC that specifically reference MEA do not specify any misconduct by MEA. (*See, e.g.*, FAC ¶¶ 1, 9, 16, 18, 20, 23, 25, 29, 82, 88.) These allegations are either jurisdictional, *e.g.*, FAC ¶ 16 (MEA has a New York address); make assertions that MEA is an "agent" or "representative" of AUA, *e.g.*, FAC ¶ 23; or make conclusory statements that MEA is liable to Appellant, *e.g.*, FAC ¶ 82. None of these allegations attributes any specific misconduct to MEA.

'draw the reasonable inference [that these defendants are] liable for' any misconduct"), *appeal dismissed* (Jan. 12, 2021); *Patel*, 104 A.D.3d at 569 (in an action filed against AUA and MEA, dismissing the complaint against MEA because MEA's administrative services for AUA had nothing to do with the substance of the action).

On appeal, Appellant does not dispute that the FAC fails to allege any wrongdoing by MEA. Rather, Appellant argues, for the first time, that the District Court "plainly erred in prematurely dismissing MEA" because "AUA and MEA, LLC *may* have been engaged in a 'joint venture' or 'independent contractor' relationship with respect to the operation of the medical school." (App. Br. at 36-37 (emphasis added).) Appellant's entirely speculative argument is waived. It also is without merit.

### C. Appellant Waived Her Joint Venture and Independent Contractor Arguments.

Appellant never raised her "joint venture" and "independent contractor" arguments below, and should not be able to raise them for the first time on appeal. Nor should the Court exercise its discretion to reach the merits of these arguments. *First*, these arguments implicate questions of fact (*e.g.*, whether there was a joint venture between AUA and MEA, and whether MEA allegedly was making the decisions Appellant had thought AUA was making), and would require the Court to make findings of fact. *Second*, Appellant had ample opportunity to raise

each of these arguments below, and did not; nor has she provided any reason for that failure. Appellant insists that Appellees did not file the Services Agreement until after she had filed the FAC on January 14, 2020, and she, therefore, could not incorporate the independent contractor allegations into the FAC. (App. Br. at 39, 41.) That is false. Appellees filed the Services Agreement on December 9, 2019 with their original motion to dismiss. (SA-52–57.) *Third*, nothing in the record shows that the Court's refusal to address an unpreserved argument on appeal will result in any manifest injustice. All of these reasons militate against the Court's exercise of its discretion to review Appellant's newly-minted arguments. (*See supra*, 18-20.)

### D. Appellant's Joint Venture and Independent Contractor Arguments Have No Merit.

Appellant concedes that a joint venture requires a sharing of profit and loss between the entities. App. Br. at 37; *see also Itel*, 909 F.2d at 701. Indeed, a "mutual promise" to share in the profits and losses is an "indispensable essential of a contract of partnership or joint venture." *Dinaco, Inc. v. Time Warner, Inc.*, 346 F.3d 64, 67-68 (2d Cir. 2003) (quoting *Steinbeck v. Gerosa*, 151 N.E.2d 170 (N.Y. 1958)). Here, Appellant has not alleged, much less plausibly alleged, that there was a profit-loss sharing agreement between AUA and MEA with regard to the medical school. The FAC contains no such allegations. Rather, the Services Agreement, which Appellant references, clearly shows that MEA was a service provider for

AUA, and AUA paid it a service fee equal to MEA's costs for providing the services plus a percentage markup of that cost. (App-74–75 ¶¶ 1(a), 2(a).) In the absence of a profit-and-loss-sharing arrangement between AUA and MEA, Appellant has not, and cannot, plausibly allege the existence of a joint venture between AUA and MEA. *See Dinaco*, 346 F.3d at 67-68 (affirming that royalty agreement did not form a joint venture because there was no agreement to share profits and losses); *Itel*, 909 F.2d at 701-02 (affirming no joint venture where there was no indication of an agreement to share losses).

Appellant also argues that the District Court should not have dismissed the FAC as to MEA because this Court could find that MEA is an "independent contractor" under the Services Agreement. (App. Br. at 38.) However, MEA's status as an independent contractor makes no difference whatsoever to its alleged liability here. Indeed, it only emphasizes that MEA is a separate company from AUA, and Appellant was required to allege MEA's own wrongdoing, which she did not. Appellant's argument—that if MEA is an independent contractor, *then* it means that all the decisions she thought AUA was making regarding her clerkships and accommodation were in fact being made by MEA—makes no sense. Being an independent contractor does not transform AUA's conduct into MEA's conduct. Even now on appeal, Appellant has utterly failed to make a single non-conclusory and non-speculative allegation of misconduct against MEA. Appellant's sweeping

assertion that MEA might have been making decisions she thought AUA was making, has *nothing* to do with MEA being an independent contractor, and is entirely speculative. *Elias v. Rolling Stone LLC*, 872 F.3d 97, 107 (2d Cir. 2017) (affirming grant of motion to dismiss individual defamation claim because plaintiff's "speculative" allegations could not support "plausibility" of defendant's liability). Thus, even considering Appellant's belated arguments, the Court should affirm the District Court's dismissal of Appellant's claims as to MEA.

## IV.  THE COURT ALSO CAN AFFIRM THE DISTRICT COURT'S DISMISSAL OF MEA ON ALTERNATE GROUNDS

Although the Court has sufficient bases to affirm the dismissal of Appellant's claims as to MEA on the same grounds as the District Court, it can also affirm on the additional, independent grounds that the Rehabilitation Act and ADA do not apply to MEA here.  The Rehabilitation Act applies only to entities that receive U.S. federal funding.  *See* 29 U.S.C. § 794(a) (covering "any program or activity receiving Federal financial assistance").  MEA does not receive such funding, and the FAC does not allege otherwise.  (*See* FAC ¶¶ 72-82.)  As discussed above (*supra*, 50-51), the CCSE is not covered by the ADA.  Moreover, the FAC cannot state an ADA-claim against MEA because MEA did not offer the CCSE— AUA did.  *See* 42 U.S.C. § 12189 (applying the ADA to "[a]ny person that offers" certain examinations or courses).

## V.    THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN DECLINING *SUA SPONTE* LEAVE TO REPLEAD

This Court generally reviews a district court's denial of leave to amend for abuse of discretion, but it reviews determinations of futility *de novo*. *Balintulo v. Ford Motor Co.*, 796 F.3d 160, 164 (2d Cir. 2015). This Court has routinely found no abuse of discretion where, as here, the district court declines to grant leave to replead where plaintiff never sought such leave. *See, e.g.*, *Horoshko v. Citibank, N.A.*, 373 F.3d 248, 249-50 (2d Cir. 2004) (per curiam) (affirming district court's dismissal, and noting that *pro se* plaintiff's argument that "the District Court abused its discretion in not permitting an amendment that was never requested" was "frivolous"); *Cybercreek Ent., LLC v. U.S. Underwriters Ins. Co.*, 696 F. App'x 554, 555 (2d Cir. 2017) (summary order) (appellant's "failure [below] to request leave to amend alone supports the District Court's dismissal with prejudice"). Moreover, the District Court properly found that leave to replead was not warranted here, where it had already granted Appellant one opportunity to amend, and despite being on notice of Appellees' precise arguments in two motions to dismiss, Appellant had not indicated that she "possesses any additional facts that could cure the defects in her dismissed complaint." (App-28–29.) Nor has Appellant done so on appeal. Rather, Appellant has suggested in passing only that she could have amended her complaint based on the Services Agreement. (App. Br. 40-41.) However, the two affirmative arguments Appellant has offered based on that agreement cannot withstand a motion

to dismiss: Appellant's argument that the catch-all provision in the Services Agreement *could* be read to include accepting service of process is entirely speculative; and Appellant's argument that MEA was an independent contractor makes no difference whatsoever to the viability of her claims. *See Cybercreek*, 696 F. App'x at 555-56 (affirming motion to dismiss where plaintiff had not explained how it could amend the complaint to survive a motion to dismiss).

## CONCLUSION

This Court should affirm in its entirety the decision of the District Court granting Appellees' motion to dismiss.

Dated: New York, New York
       May 28, 2021

HUGHES HUBBARD & REED LLP

By: /s/ Robb W. Patryk
Robb W. Patryk
Amina Hassan
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 837-6000
Facsimile: (212) 422-4726
robb.patryk@hugheshubbard.com

*Attorneys for Appellees*

## CERTIFICATE OF COMPLIANCE

(1) This brief complies with the requirements of Federal Rule of Appellate Procedure 32(a)(7)(B)(i) and Local Rule 32.1(a)(4) because it contains 13,967 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

(2) This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14-point font.

Dated:  New York, New York
        May 28, 2021

HUGHES HUBBARD & REED LLP

By:  /s/ Amina Hassan

    Amina Hassan
    One Battery Park Plaza
    New York, New York 10004
    Telephone: (212) 837-6000
    Facsimile: (212) 422-4726
    Email:
    amina.hassan@hugheshubbard.com

*Attorneys for Appellees*

100674346

STATE OF NEW YORK   )                **AFFIDAVIT OF SERVICE**
                            )    ss.:    **BY OVERNIGHT FEDERAL**
COUNTY OF NEW YORK   )                **EXPRESS NEXT DAY AIR**

      I, Melissa Pickett, being duly sworn, depose and say that deponent is not a party to the action, is over 18 years of age and resides at the address shown above or at

      **On May 28, 2021**

deponent served the within:  **Brief for Defendants-Appellees**

      **Upon:**

**Debbie Ann Bromfield-Thompson**
**1405 Kennedy Street North West**
**Washington DC 20011**
**202-534-9164**

the address(es) designated by said attorney(s) for that purpose by depositing **2** true copy(ies) of same, enclosed in a properly addressed wrapper in an Overnight Next Day Air Federal Express Official Depository, under the exclusive custody and care of Federal Express, within the State of New York.

**Sworn to before me on May 28, 2021**

**/s/ Mariana Braylovskiy**                  **/s/ Melissa Pickett**
    *Mariana Braylovskiy*                  **Melissa Pickett**
 Notary Public State of New York
     No. 01BR6004935
  Qualified in Richmond County        **Job #  303135**
Commission Expires March 30, 2022